**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DERON McCOY, JR.,**

      **Plaintiff,**

      v.                                              **CASE NO. 17-3139-SAC**

**JAMES HEIMGARTNER, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

Plaintiff DeRon McCoy, Jr., is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this case should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I.   Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Although Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas, the events giving rise to his Complaint took place during his incarceration at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). Plaintiff names as Defendants: James Heimgartner, EDCF Warden; SORT Member Goad; First Sergeant Patterson; First Sergeant Carrell; and CO John Doe. Plaintiff sues each Defendant in their individual and official capacities. Plaintiff seeks relief in the form of nominal damages, compensatory damages, punitive damages, a declaratory judgment, and a permanent injunction directing Defendant Heimgartner and/or KDOC officials to amend the KDOC strip search policy.

Plaintiff alleges that on or about October 27, 2016, while waiting to be transported from

EDCF to the Reno County Detention Center, Plaintiff was escorted in handcuffs from his cell to one of the strip-out cages in B-1 Cellhouse by SORT Member Goad. After he was locked in the strip-out cage, Plaintiff's handcuffs were removed and he was directed by Goad to "strip-out." Plaintiff was very familiar with the strip-out procedure and began undressing and handing Goad his articles of clothing. After Goad searched Plaintiff's clothing, he directed Plaintiff to run his hands through his hair, show behind his ears, open his mouth, show his gums, lift his tongue, show his armpits, and to lift his "privates." Plaintiff complied with all of these requests. Defendant Goad then told Plaintiff to turn around, spread his buttocks, bend, squat and cough. Plaintiff obeyed the directive, bending over as much as the small strip-out cage would allow and squatting parallel to the ground. Defendant Goad stated that it was not good enough and directed Plaintiff to squat further down. Plaintiff complied again, bending over as much as he could and squatting further down. This caused Plaintiff to experience extreme pain in the form of sharp, shooting pains starting in his lower back and then shooting down his legs. Defendant Goad stated that he wanted to see Plaintiff fully squat with his "butt all the way to the floor." Plaintiff responded that he could not comply due to a back injury and described his back injury and medical restriction.

Defendant Patterson had been standing a few feet away and had been observing Plaintiff's strip search. When Defendant Patterson approached the strip-out cage, Plaintiff explained to him that his back injury prevented him from squatting all the way to the floor. Defendant Goad then directed Plaintiff to start the strip-search procedure over while Defendant Patterson watched. During the procedure, Defendant Patterson stated "come on you can drop it further than that." Plaintiff interpreted this statement as a sexual innuendo derived from a rap song by Snoop Dogg titled "Drop it Like It's Hot." Plaintiff immediately straightened up and turned around. Defendants Goad and Patterson were smiling. Plaintiff grabbed his clothing and began getting

dressed while yelling out to the other officers that he was being sexually harassed and there was a PREA violation.

After Defendants Goad and Patterson left the strip-out cage area Plaintiff yelled that he wanted a grievance form and a pencil. Defendant Patterson then brought the Plaintiff a grievance form and a golf pencil. When Plaintiff informed Defendant Patterson that he was going to write a grievance on Defendants Goad and Patterson, Defendant Patterson advised Plaintiff that an SST supervisor would be in route.

A short time later SST Member Carrell arrived and Plaintiff explained the situation. Defendant Carrell left and returned after speaking to Defendant Goad. Carrell indicated that he would have to stand by his fellow officer and would also require Plaintiff to squat fully down butt to the floor. Plaintiff again informed Carrell of his back injury and medical restriction that prevented him from performing such a maneuver. Plaintiff also told Carrell that Plaintiff was very familiar with the KDOC strip-search procedure and squatting all the way to the floor had never been a part of it. Carrell left and returned later to inform Plaintiff that he had spoken with medical and verified Plaintiff's back injury and medical restrictions. Carrell said he would require Plaintiff to perform the strip-search procedure one more time and that Plaintiff should squat down as far as he could. Plaintiff complied, squatting down as far as he could and once again felt sharp, shooting pain that started in his lower back and went down his legs. Plaintiff was then allowed to dress again.

Defendant Carrell and an unidentified SST Member then escorted Plaintiff to Admissions and Discharge ("A&D") at EDCF. Plaintiff was in constant observation of Defendant Carrell and the SST Member for the entire trip up until he was placed in an isolated single-man holding cell. Plaintiff was then taken out of handcuffs after he was locked in the cell. Defendant John Doe then

came to Plaintiff's holding cell and Plaintiff gave him his grievance for filing. Approximately 20 to 30 minutes later John Doe returned to the holding cell and told Plaintiff that he needed to perform the strip-search procedure once again. Plaintiff complained to John Doe that he had already been strip-searched four times and had been isolated from any other inmates and under the observation of correctional officers. John Doe then stated that it was policy that all inmates to be transported to another facility must be strip-searched before being transported from A&D and it didn't matter if he had been strip-searched before leaving the B-1 Cellhouse. Plaintiff complied with the strip search and was then transported to the Reno County Detention Center. Plaintiff was transported back to EDCF on November 1, 2016.

Plaintiff alleges that from October 27 to November 17, 2016, Plaintiff experienced extreme pain in his lower back extending down his legs to his feet, in the form of sharp shooting pains. Plaintiff also experienced tingling numbness in his legs every morning. Plaintiff also began to experience severe anxiety requiring counseling and prescription medication, and felt sexually degraded, humiliated, and fearful and paranoid that he would be sexually harassed or worse by the Defendants. Plaintiff received a disciplinary report for disobeying orders and interfering with official duties for "not fully squatting butt all the way to the floor" on October 27, 2016. Plaintiff was found not guilty at the disciplinary hearing.

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendant Goad forced him to twice perform a squat maneuver that caused Plaintiff extreme pain, and Defendant Patterson violated his rights by failing to intervene and by making a sexual innuendo. Plaintiff alleges that Defendant Carrell violated his rights by forcing him to do the squat maneuver a fourth time. Plaintiff also alleges that Defendants Goad, Carrell, and John Doe, violated his right to be free from unreasonable search

and seizure when they forced him to perform strip searches after he had already been properly strip searched. Plaintiff alleges that Defendant Heimgartner, Warden at EDCF, violated Plaintiff's rights by developing and implementing the strip search policy that requires inmates to be strip-searched before they leave the cellhouse and then once again prior to them leaving A&D.

Plaintiff alleges that Defendant Goad violated his First Amendment right to freedom of speech by writing a disciplinary report on Plaintiff in retaliation for Plaintiff filing a grievance on Defendants Goad and Patterson.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. An official-capacity suit is another way of pleading an action against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted). Sovereign immunity generally bars actions in federal court for damages against state officials acting in their official capacities. *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Plaintiff's claims for monetary damages against Defendants in their official capacities are subject to dismissal as barred by sovereign immunity.

### 2. Fourth Amendment Claims

Plaintiff alleges that the strip searches violated his Fourth Amendment right to be free from unreasonable searches. Although the Supreme Court has foreclosed any Fourth Amendment challenge to the search of a prison cell, the court "has recognized a qualitative difference between property searches and searches of a prisoner's person." *Dunn v. White*, 880 F.2d 1188, 1191

7

(10th Cir. 1989). The Supreme Court in *Bell v. Wolfish*, preserved a prisoner's privacy interest in the integrity of his own person, and applied a traditional Fourth Amendment analysis to a constitutional challenge by prisoners to personal body searches. *Dunn*, 880 F.2d at 1191 (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search of a pretrial detainee. *Bell*, 441 U.S. at 559. Factors to be considered in the balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted. *Id*. Given these considerations, *Bell* held that visual body-cavity strip searches without probable cause were reasonable in light of correctional security needs. *Id.* at 559–60; *see also Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (unpublished) (stating that "strip searches of prisoners are not per se prohibited") (citing *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (recognizing that prisoner strip searches must be "reasonably related to a legitimate penological interest" (emphasis omitted))).

Plaintiff challenges the KDOC's policy regarding strip searches for inmates being transferred to a different facility. "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Board of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 322–23 (2012). Plaintiff fails to allege the lack of a legally sufficient justification for the search, which was done in anticipation of his transfer from one facility to another. The Court in *Bell*:

> emphasized that "preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of convicted prisoners." . . . . "Prison officials must be free to take appropriate action to ensure the safety

8

> of inmates and corrections personnel . . . .  Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security."  . . . Thus, on issues of "internal order and discipline" or "institutional security," courts should accord "wide-ranging deference" to prison officials, unless there is "substantial evidence in the record to indicate the officials have exaggerated their response."

*Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 546–48) (internal citations omitted).  Plaintiff's Fourth Amendment claims are subject to dismissal for failure to allege sufficient facts to show a constitutional violation.

### 3. *Eighth Amendment Claims*

Plaintiff also alleges that the Defendants violated his right to be free from cruel and unusual punishment when they required him to attempt the squat maneuver during his strip search.  The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Plaintiff's claims are subject to dismissal for failure to allege that any defendant acted with deliberate indifference. The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm.

Plaintiff's allegations show that staff attempted to confer with each other and seek out a supervisor in attempting to resolve the situation. Although they continued to direct Plaintiff to attempt to squat during the search, they ultimately confirmed Plaintiff's back injury with medical staff and told him he need only squat as far as he could. Such allegations do not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment; and are, at most, grounds for a negligence claim in state court. *Id*.

Plaintiff's claim based on the perceived "sexual innuendo" resulting from Defendant Patterson stating "come on you can drop it further than that," does not rise to the level of a constitutional violation. "Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alavarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Ragland v. Romer*, 73 F.3d 374 (10th Cir.), *cert. denied*, 518 U.S. 1025 (1996) ("Courts have consistently held that acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."). Plaintiff's allegations do not suggest a show of deadly force, thus failing to create "terror of instant and unexpected death."

### 4. *First Amendment Retaliation Claim*

Plaintiff alleges that he received a disciplinary report in retaliation for filing grievances on Defendants Goad and Patterson. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

11

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir.2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of this claim. Plaintiff fails to allege that the Defendants' actions caused the Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Plaintiff allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

## VI. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein.[1]

---

[1] In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (17-3139-SAC) at the top of the first page of his Amended Complaint and he must name every defendant in the caption of the Amended Complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper Amended Complaint in which he (1) shows he has exhausted administrative remedies for all claims alleged; (2) raises only properly joined claims and defendants; (3) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (4) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an Amended Complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **January 22, 2018,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 22, 2018**, in which to file a complete and proper Amended Complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 22nd day of December, 2017.**

s/ Sam A. Crow
**Sam A. Crow**
**U.S. Senior District Judge**