# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DERON MCCOY JR.,                              )
                                             )
          **Plaintiff,**                     )
                                             )
v.                                           )          **Case. No. 17-3139-SAC**
                                             )
JAMES HEIMGARTNER, *et al*.                  )
                                             )
          **Defendants.**                    )
_____)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON 2nd AMENDED COMPLAINT

**COME NOW** Defendants James Heimgartner, Jonethen Patterson, Austin Goad, William Riddle, and Troy Carrell, by and through their undersigned counsel, and in accordance with D. Kan. 7.1(a) and (b) and D. Kan. 7.6, submit this Memorandum in Support of their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, on the 2nd Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and 56(a). Defendants respectfully request that this motion be granted and that the Court enter an Order dismissing or granting Summary Judgment on Plaintiff's 2nd Amended Complaint.

Dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act prior to bringing suit under § 1983. Dismissal is also appropriate because the Eleventh Amendment bars all claims against Defendants in their official capacity. Furthermore, Plaintiff has failed to state a claim against Defendants in their individual capacities because they are entitled to qualified immunity. Finally, all claims against Defendant

Heimgartner should be dismissed due to the lack of direct personal participation in the acts allegedly giving rise to Plaintiff's causes of action.

In further support of Defendants' Motion to Dismiss, Defendants state as follows:

## I.    NATURE OF THE CASE AND MATTER BEFORE THE COURT

At the times relevant to this action, Plaintiff Deron McCoy Jr. was an inmate in the custody of the Kansas Department of Corrections (KDOC), housed in the B cell house at Eldorado Correctional Facility ("EDCF").   All Defendants are employees of the Kansas Department of Corrections (KDOC) and were at all relevant times employees of KDOC working at EDCF. All Defendants are sued in their official and individual capacities.

First, Plaintiff alleges that on October 27, 2016, Defendants Goad and Carrell violated his Eighth Amendment rights to be free from cruel and unusual punishment in that they required Plaintiff to repeatedly squat further than he felt was warranted during a strip search in the B cell house, causing Plaintiff to re-injure his back.   Plaintiff further alleges that Defendant Patterson failed to intervene and prevent Defendant Goad from requiring Plaintiff to squat further than he wanted during the strip search described above. Plaintiff makes no allegation about Defendant Riddle's strip search causing injury to his back in his Eighth Amendment Cause of Action. Finally, Plaintiff alleges that Defendant Heimgartner, by virtue of being warden of EDCF at the time of the incident, violated Plaintiff's Eighth Amendment rights by "developing, reviewing and implementing a policy that at EDCF that lead to the plaintiff's rights being violated." Plaintiff makes no allegations that Defendant Heimgartner personally participated in the incident on October 27, 2016. (Doc. 13, pp. 13-14).

Second, Plaintiff alleges that his Fourth Amendment rights regarding unreasonable search and seizure were violated by Defendants Goad, and Carrell when they made Plaintiff participate

in more than one strip search in B cell house. Plaintiff further alleges that Defendant Riddle violated his Fourth Amendment rights in requiring Plaintiff to again be strip searched in the admissions and discharge (A & D) area of EDCF subsequent to the strip search conducted by defendants Goad and Carrell in B cell house of EDCF. Again, Plaintiff alleges that Defendant Heimgartner, by virtue of being warden of EDCF at the time of the incident, violated Plaintiff's Eighth Amendment rights by "developing, reviewing and implementing a policy that at EDCF that lead to the Plaintiff's rights being violated." Plaintiff makes no allegations that Defendant Heimgartner personally participated in the incident on October 27, 2016. (Doc. 13, pp. 14-16).

Third, Plaintiff alleges that Defendant Goad violated his First Amendment rights to free speech by writing a disciplinary report (DR) on Plaintiff regarding the incident because Plaintiff told Defendant Goad that Plaintiff was going to file a grievance against Defendants Goad and Patterson for sexual harassment. At a subsequent hearing on the DR, the hearing officer found the Plaintiff not guilty. (Doc. 13, pp 16-17).

Finally, Plaintiff also alleges an Equal Protection Clause violation by Defendant Heimgartner by his developing, implementing and enforcing a policy, practice or custom that forces inmates in the B cell house at EDCF to be strip searched before leaving the B cell house, then be strip searched again at the A & D area of EDCF before they are transported from EDCF. Plaintiff asserts that this policy in not in effect at other KDOC facilities. (Doc. 13, pp. 17-18).

Plaintiff seeks nominal damages in the sum of $1, compensatory damages in the sum of $1,000,000.00, punitive damages in the sum of $5,000,000.00, a declaratory judgment that the acts and omissions violated the Plaintiff's rights, and a permanent injunction against the EDCF repeated strip search policy for inmates in the B cell house who are moved to the A & D area for transport. (Doc 13, p. 20).

As an aside, it is noted that in the "Nature of the Case" section of the 2nd Amended Complaint, Plaintiff alleges in paragraphs 17-20 (Doc. 13, pp. 6-7) that he was sexually harassed by Defendant Patterson. Plaintiff filed a PREA grievance relating to this allegation on March 10, 2017. (Doc. 13, Exhibit A). The grievance was fully investigated. After the investigation and review, the Plaintiff's PREA grievance was deemed to be unfounded. (Doc. 19, Sealed Exhibit H). Plaintiff's first amendment claim is the only claim made that references the grievance in any manner.

## II.      STATEMENT OF FACTS

For purposes of this Motion only, all well pleaded facts in the Plaintiff's Complaint are assumed to be true.  Defendants reserve the right to controvert and dispute any and all such facts, and present evidence to those alleged facts in any subsequent proceedings herein.

1.      On October 27, 2016, Plaintiff Deron McCoy, Jr. was an inmate in the custody of the Secretary of Corrections, housed at EDCF and was serving time from the convictions noted in the KASPER Profile.  (Doc. 19, Exhibit A).

2.      Plaintiff alleges that on October 27, 2016, he was residing in EDCF cell house B-1, which is the restricted housing (RH) cell house. Plaintiff was to be transported to Reno County for court proceedings in his case. Defendant Goad, pursuant to EDCF policy, escorted Plaintiff to a strip out cage. (Doc. 13, p 3). All inmates entering or leaving the RH cell house are to be strip searched as per EDCF policy. (Doc. 19, sealed exhibit C, p. 5).

3.      Plaintiff alleges that he was very familiar with the strip out procedure required by EDCF policy. (Doc. 13, p. 3).

4.      Part of the strip out procedure is for inmates to squat.  (Doc. 19, Exhibit D, p. D-5).

5.     Plaintiff alleges that after he squatted the first time, Defendant Goad asked him to squat again, stating that Plaintiff needed to squat further down. (Doc. 13, p. 4).

6.     Plaintiff alleges that while he was squatting the second time, he suffered extreme pain. (Doc. 13, p. 5).

7.     Plaintiff alleges that Defendant Goad then told him that he wanted Plaintiff to squat all the way to the floor. At that point, Plaintiff alleges that he reported an old back injury to Defendant Goad, that he had a medical restriction because of the back injury, and that he could not squat all the way to the floor because of the back injury. (Doc. 13, p. 5).

8.     Plaintiff alleges that he then called over to Defendant Patterson, who was nearby. Defendant Patterson asked that the search procedure start over. When the time came to squat, Plaintiff did so, again causing back pain. During the squat, Plaintiff alleges that Defendant Patterson asked him to "drop it further", which Plaintiff took offense to based on lyrics from a Snoop Dogg rap song that Plaintiff was familiar with. Defendants Goad and Patterson then left the strip out area. (Doc. 13, pp. 6-7).

9.     Plaintiff alleges that he then got partially dressed and started yelling about filing a grievance based on the Snoop Dogg lyrics to a rap song titled "Drop it Like It's Hot." Defendant Carrell came to the strip out area, gave Plaintiff the grievance form and a pencil, and left. (Doc 13, pp. 7-8).

10.     Defendants Goad and Patterson did not consider the strip search completed due to Plaintiff's failure to comply with the squat portion of the search. (Doc. 19, p. 2).

11.     Plaintiff alleges that Defendant Carrell returned and asked him to repeat the search procedure again so he could ensure that the strip search had been properly completed so that Plaintiff could be transported to Reno County for his court appearance. Defendant Carrell asked

Plaintiff to squat "as far as he could." Plaintiff did so, successfully completed the search procedure, and then got fully dressed, alleging he had more back pain as a result of this squat. The (Doc. 13, p. 9)(Doc 19, p. 3).

12.    Plaintiff alleges he was then transferred by Defendant Carrell and an unnamed officer to the A & D area of EDCF to be transported to Reno County. Plaintiff was locked in a holding cell in the A & D area. Defendant Carrell and the unnamed officer then left. (Doc. 13, p. 9).

13.    Plaintiff alleges that a short time later, Defendant Riddle, who works in the A & D area of EDCF, came by the A & D area holding cell. (Doc. 13, p. 9).

14.    Approximately 20-30 minutes later, Defendant Riddle then asked Plaintiff to submit to the strip search required for all inmates who are in the A & D area of EDCF and are about to be transported to another facility.  Plaintiff did so and does not allege any additional back pain associated with having to squat during this strip search. (Doc. 13, p. 10).

15.    The Plaintiff alleges he suffered extreme pain in his lower back extending down his legs to his feet in the form of shooting pains as well as tingling numbness in his legs during the period from October 27, 2016 to November 17, 2017. (Doc. 13, p. 10).

16.    The Plaintiff also alleges that he began to experience severe anxiety requiring counseling and anti-anxiety medication. (Doc. 13, pp. 10-11).

17.    There are no allegations by the Plaintiff that Defendant Heimgartner personally participated in or even knew about the October 27, 2016 incident until well after the fact.  (Doc. 13).

18.    Exhibit A to the Court ordered *Martinez* report is the Plaintiff's KASPER report. That report shows a lengthy history of Plaintiff's disciplinary problems within KDOC. There are

multiple incidents of Plaintiff including, but not limited to, having dangerous contraband, having less dangerous contraband, disobeying orders, insubordination, fighting, battery, possessing sexually explicit materials, unauthorized dealing or trade, use of stimulants, threatening or intimidation of other persons, and interference with cell operator's visibility. There is a reason that Plaintiff was being housed in the RH cell block of EDCF. (Doc. 19, Exhibit A).

19.    The medical records of Plaintiff are voluminous and show a host of serious ongoing mental health issues. These serious mental health issues, including anxiety, existed long before the October 27, 2016 incident, and continue to exist. There is no appreciable difference in Plaintiff's mental health as a result of the incident. (Doc. 19, Sealed Exhibit I).

20.    The Court ordered *Martinez* report shows that medical staff noted that Plaintiff had a pre-existing low back condition, which was diagnosed in 2014, and he was on lipoic acid, Tylenol, and Ibuprofen for that condition. (Doc. 19, Sealed Exhibit I).

21.    The Court ordered *Martinez* report shows that upon returning from his court date in Reno County, Plaintiff saw medical personnel numerous times and made no complaint of a back injury from October 27, 2016. Plaintiff was given a medical exam on November 23, 2016, and the medical provider found that the Plaintiff was within normal limits of body movement, with no signs of radiations of pain in back or lower extremities. (Doc 19, Sealed Exhibit I, pp. I-248-250).

22.    Plaintiff's medical records specifically show that on November 1, 2016, Plaintiff denied any injuries. (Doc. 19, Sealed Exhibit I, p. I-236). The medical records further show that on November 2, 2016, Plaintiff reported no concerns or needs. (Doc. 19, Sealed Exhibit I, p. I-238). The medical records further show that on November 8, 2016, Plaintiff refused treatment for his chronic conditions. (Doc. 19, Sealed Exhibit I, p. I-240). The medical records further show that

on November 10, 2016 and November 14, 2016, Plaintiff reported no concerns or needs. (Doc. 19, Sealed Exhibit I, pp. I-242 and I-245).

23.     The Court ordered *Martinez* report shows that all EDCF and KDOC strip search policies are in place for valid security purposes for the protection of inmates, the EDCF staff, and the public. All such policies apply to all inmates who are housed in the RH cell block and who come and go via the A & D area of EDCF. (Doc 19, Sealed Exhibit C, Exhibit D, and Sealed Exhibit F).

24.     Plaintiff's sexual abuse grievance relating to the October 27, 2016 incident was given to the unit team on March 10, 2017, approximately four and one-half months after the incident. (Doc. 13, p. 31).

25.     The disciplinary report (DR) filed by Defendant Goad against Plaintiff relating to the October 27, 2016 incident was filed on October 27, 2016. (Doc. 19, Exhibit E).

## III.     ISSUES PRESENTED

*A.     Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act prior to bringing suit under § 1983.*

*B.     The Eleventh Amendment bars all claims against Defendants in their official capacity.*

*C.     Plaintiff has failed to state a claim against Defendants in their individual capacities because they are entitled to qualified immunity.*

*D.     Plaintiff's claims against defendant Heimgartner should be dismissed due to lack of any direct personal participation in the acts allegedly giving rise to Plaintiff's causes of action.*

## IV.     STANDARD OF REVIEW FOR MOTION TO DISMISS

The Supreme Court clarified the standards for deciding a motion to dismiss in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Heublein v. Wefald*, 784 F. Supp. 2d 1186, 1193 (D. Kan. 2011) (citing *Iqbal* and *Twombly*). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.* (*quoting Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Twombly*, 550 U.S. at 555).

In making these specific factual allegations, a plaintiff must nudge his claims from "conceivable to plausible" to survive a motion to dismiss. *Khalik v. United Air Lines*, No. 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Twombly*, 550 U.S. at 570). "Plausibility" references the scope of allegations in a complaint: "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). In making this determination, a court must draw on its judicial experience and common sense. *Heublein*, 784 F. Supp. 2d at 1193. All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff, but conclusory allegations need not be considered. *Id.*

"This pleading requirement serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely

groundless claim.'" *Kansas Penn*, 656 F.3d at 1215 (*quoting Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)).

Courts do not assume the role of an advocate for the *pro se* litigant by, for example, constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Conor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009). A plaintiff's *pro se* status does not prevent this Court from dismissing invalid claims. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

## V.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Although Defendants contend that this case can and should be decided on a motion to dismiss, this case could also be resolved as a matter of summary judgment. Summary judgment is required under Rule 56 of the Federal Rules of Civil Procedure when pleadings, affidavits, and any discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To determine whether a genuine issue exists, courts will view evidence in the light most favorable to the nonmoving party and will accept only reasonable inferences. *See Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Further, any factual dispute must be not only genuine – "such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) – but also material, as determined by substantive law, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing

*Anderson*, 477 U.S. at 248). Where there is no genuine dispute of material fact regarding just one of the essential elements a plaintiff must prove, then summary judgment must issue in the defendant's favor. *See Sports Unlimited, Inc. v. Lankford Enterprises., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671).

## VI. ARGUMENTS AND AUTHORITIES

**A.      Plaintiff's Complaint against Defendants should be dismissed for Plaintiff's failure to exhaust his administrative remedies before filing suit under § 1983 as required by law.**

Under the Prison Litigation Reform Act ("PLRA"), prisoners bringing suit under § 1983 must exhaust all available administrative remedies before seeking relief in federal court. *Smith v. Rudicel*, 123 Fed. Appx. 906, 907 (10th Cir. 2005). The law plainly states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The statutory exhaustion requirement of § 1997e(a) is mandatory." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). The exhaustion requirement is also a total exhaustion requirement, and it applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and *whether they allege excessive force* or some other wrong." *Horton v. Ortiz*, 138 Fed. Appx. 104, 106 (10th Cir. 2005)(emphasis added). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but *it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion*." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910 (2007) (emphasis added).

The grievance procedure for Kansas state prisoners is described fully in Kansas Administrative Regulations §§ 44-15-102:

> K.A.R. § 44-15-102 requires an inmate to first seek "information, advice, or help on any matter" from the inmate's unit team. If the inmate does not receive a response from the unit team within ten days of submission, he may send a grievance report to the warden without unit team signatures. If the inmate receives a response but does not obtain a satisfactory solution to the problem through the informal process within ten days, he may complete an inmate grievance report form and submit it to a staff member to transmit to the warden. If he does not receive a satisfactory response from the warden after filing an appropriate report, the inmate may appeal to the Kansas Secretary of Corrections. [An inmate] may file a § 1983 claim only after this clearly delineated process of administrative remedy has been exhausted.

*Smith*, 123 Fed. Appx. at 907. Thus, the KDOC mandates a four-step grievance procedure available to its inmates: (1) an attempt at informal resolution; (2) a grievance report submitted to the appropriate unit team member; (3) submission of the grievance to the warden; and (4) submission of the grievance to the Secretary of Corrections. *Barnett v. Kansas*, No. 16-3008-SAC-DJW, 2016 WL 3618655, at *3 (D. Kan. July 6, 2016). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." *Id.* (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

Plaintiff did not exhaust all available administrative remedies for the claims in this action before seeking relief in federal court. Here, Plaintiff submitted a "Sexual Abuse Grievance" pursuant to the Prison Rape Elimination Act (PREA) on March 10, 2017, some four and a half months after the incident. (Doc 13, Exhibit A). The grievance was fully investigated. After the investigation and review, the Plaintiff's PREA grievance was deemed to be unfounded. (Doc. 19, Sealed Exhibit H). Plaintiff's first amendment claim is the only claim made that even references the grievance in any manner. Plaintiff never filed a grievance for the causes of action set forth in

this case. As such, Plaintiff has clearly failed to comply with the PLRA's requirement for total exhaustion of administrative remedies, and therefore, Plaintiff's Complaint is subject to dismissal as a matter of law.

   **B.    The Eleventh Amendment bars all claims against Defendants in their official capacity.**

   "The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . it is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "[I]t is well established that the Eleventh Amendment precludes suits in federal court seeking retroactive declaratory or monetary relief from state officials acting in their official capacities." *Allen v. Zavaras*, 474 F. App'x. 741, 743-44 (10th Cir. 2012). As employees of the State and the Kansas Department of Corrections during the time in question, Defendants share the State's immunity for suits against them in their official capacities. *Jones v. Courtney*, 466 F. App'x 696, 698 (10th Cir. 2012). Because they share the State's immunity from suit, Plaintiff's official capacity claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). A narrow exception to sovereign immunity has been carved out under the *Ex parte Young* doctrine, which holds that private litigants may seek prospective injunctive relief against a state official for ongoing violations of federal law in federal court. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167–68 (10th Cir.2012).

   In this case, Plaintiff has failed to make sufficient allegations that would support a plausible claim for prospective relief, which would fall under *Ex parte Young*. "A declaratory judgment is meant to define legal rights and obligations of the parties in anticipation of some future conduct,

not simply proclaim liability for a past act." *Lawrence v. Kuenhold,* 271 F. App'x 763, 766 (10th Cir. 2008). Here, Plaintiff seeks millions in monetary relief and "declaratory judgement that the acts and omissions *violated* plaintiff's rights." (Doc. 13, p. 20). Accordingly, Plaintiff seeks a retroactive declaration of wrongdoing and monetary relief against Defendants, and therefore, the Court should dismiss his claim against Defendants in their official capacity.

### C. Plaintiff has failed to state a claim against Defendants in their individual capacities because they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine also protects officials from "costly and harassing litigation" that would "potentially inhibit officials in performing their official duties." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001). Further, qualified immunity issue should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

When a defendant raises qualified immunity as a defense, a plaintiff must allege facts plausibly showing a violation of his constitutional right, and must further show that the constitutional rights was clearly established at the time of the violation. *Columbian Fin. Corp. v. Stark*, 811 F.3d 390, 396 (10th Cir. 2016). However, if a plaintiff fails to satisfy either part of the inquiry, a court must grant the defendant qualified immunity. *Medina*, 252 F.3d at 1128.

Here, Defendants are entitled to qualified immunity because Plaintiff's allegations fail to establish that: (1) Defendants violated his constitutional rights, and (2) that these rights were clearly established at the time of the conduct.

### 1. Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

Once a defendant pleads qualified immunity, the plaintiff bears the burden of showing no immunity is warranted. *See Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277-78 (10th Cir. 1998). In other words, Defendants Goad, Carrell, Riddle, and Heimgartner are entitled to qualified immunity unless Plaintiff can show not only that Defendants' actions actually deprived him of a federally secured right, but also that Defendants had fair warning their actions were unconstitutional. Because Defendants did not, in fact, cause a deprivation of Plaintiff's rights – much less a clearly established right – Defendants have qualified immunity from Plaintiff's claims and are entitled to summary judgment.

In his claim, Plaintiff appears to allege that, in addition to multiple searches, the Defendants violated Plaintiff's Fourth Amendment rights because Defendants' motive during the searches was "a sexual innuendo direved [sic] from a rap song performed by "snoop dog" titled "drop it like it's hot'" and not any legitimate penological interest. However, Plaintiff's allegations are not consistent with the facts. Defendants were following established protocol of moving inmates in and out of B cell house and A & D. (Doc. 19, Sealed Exhibit C). Defendants are entitled to qualified immunity on this claim.

> a. *The strip searches were reasonable.*

The Fourth Amendment prohibits only unreasonable searches. *Carroll v. United States*, 267 U.S. 132, 147, 45 S. Ct. 280 (1925). "Though inmates have no legitimate expectation of privacy in their cells," courts have found they do retain a limited "privacy interest in the integrity of their own persons" although it "must yield to the penal institution's need to maintain security[.]" *Cameron v. Hendricks*, 942 F. Supp. 499, 502 (D. Kan. 1996); *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). Thus, the "traditional Fourth Amendment prohibition against unreasonable searches extends to personal body searches of inmates." *Id.* Accordingly, to succeed on his Fourth

Amendment claim, Plaintiff must show that Defendants' visual body search of his person was unreasonable.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861 (1979). To determine whether a strip search is reasonable under the Fourth Amendment the court must balance "the need for the particular search against the invasion of personal rights that the search entails." Id. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Farmer v. Perrill*, 288 F.3d 1254, 1259-60 (10th Cir. 2002) (quoting *Bell*, 441 U.S. at 559) (emphasis omitted). There is no requirement Defendants use the "least restrictive alternative." *Farmer*, 288 F.3d at 1259-60. The court is more wary of strip searches performed by officials of the opposite sex of the inmate. *See Jones v. Harrison*, 864 F. Supp. 166, 168-69 (D. Kan. 1994).

The Court must balance "the significant and legitimate security interests of the institution against the inmates' privacy interests." *Bell*, 441 U.S. at 522. "Because a penal institution 'is a unique place fraught with serious security dangers' where the '[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence,' visual body-cavity searches may be conducted without probable cause." *Id.* As a result, strip searches may be valid if "reasonably related to legitimate penological interests." *Farmer*, 288 F.3d at 1260.

"[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Cameron*, 942 F. Supp. at 503 (quoting *Pell v. Procunier*, 417 U.S. 817, 823, 94 S. Ct. 2800 (1974)). Moreover, "on issues of 'internal order and discipline' or 'institutional security,' courts should accord '*wide ranging deference*' to prison

officials, unless there is '*substantial evidence* in the record to indicate the officials have exaggerated their response.'" *Id.* (quoting *Bell*, 441 U.S. at 547-48) (emphasis added).

Many of the inmates housed in the RH cell block are violent or are potential victims of violence. Others, such as Plaintiff in this case, have repeatedly and seriously violated prison disciplinary rules and have indicated an inability or unwillingness to integrate safely with the general prison population. Plaintiff's disciplinary record shows violations including, but not limited to, having dangerous contraband, having less dangerous contraband, disobeying orders, insubordination, fighting, battery, possessing sexually explicit materials, unauthorized dealing or trade, use of stimulants, threatening or intimidation of other persons, and interference with cell operator's visibility. Thus, there is nothing unreasonable about a strip search policy specifically designed for inmates assigned to the B cell house.

Plaintiff's claim fails because the strip searches were reasonable and because he cannot present any evidence to show that Defendants' response to the security threat posed by Plaintiff's status as an offender placed in B cell house was exaggerated. First, the strip searches of Plaintiff were reasonable. They were conducted in furtherance of a legitimate penological interest in institutional security. Inmates in B cell house and the A & D area are strip searched pursuant to the applicable EDCF Post Order – strip searches are required when any inmate comes into or leaves the B cell house or A & D area. (Doc. 19-3, Sealed Exhibit C; Doc. 19-4, Sealed Exhibit F). This requirement is triggered even when inmates are allowed into the B cell house yard for yard time. The strip search requirement applies to all inmates housed in the B cell block. The reasons for this requirement are obvious, to protect the safety of the inmates and officers housed and working in the B cell block. The strip searches were conducted in a private area designated

for searches, out of sight of other inmates. (Doc. 13, at 8). No persons of the opposite sex were present during the searches.

Nothing about either search was unreasonable. KDOC IMPP 12-103D contains the requirements for a properly conducted strip search at KDOC facilities. (Doc. 19, Exhibit D). To successfully complete a strip search, all required components of the strip search must be completed. Plaintiff was not subjected to "excessive strip searches." He was asked to complete two proper searches per KDOC policies. *Id*. According to the *Martinez* Report, Plaintiff was escorted to the B cell house strip out area and was strip searched without incident. (Doc. 19 at 2). Then, in preparation for his transport to Reno County for a court hearing, Plaintiff was strip searched in the A & D area. *Id*. Defendant Goad began the second strip search. *Id*. The first attempt at this search was uneventful until Plaintiff did not want to fully squat as directed by Defendants. *Id*. Plaintiff protested and Defendant Patterson, who is not named in this claim, then participated in the continuation of the search. *Id*. Later, Defendant Carrell conducted another attempt at completing a proper search, at which time Plaintiff successfully completed the second search. *Id*. It should be noted that there is a slight variance between the facts alleged in the Plaintiff's Complaint and the *Martinez* Report regarding where the problems in the strip search occurred. The Plaintiff alleges that the problems occurred in the first strip search in the cell house and the *Martinez* Report states that the problems occurred in the second strip search in the A & D area. For purposes of legal analysis, the variance is not material.

Plaintiff's allegation that Defendants were requesting him to do something similar to "dropping it" is conclusory, and the Court is not required to take Plaintiff's mere speculation, conjecture, or surmise at face value. *Iqbal*, 556 U.S. at 678; *Southway*, 149 F. Supp. 2d at 1274. Furthermore, Plaintiff's allegations bely the facts: Defendants have specific protocols to follow

when inmates are moved in and out of B cell house and the A & D area. Accordingly, the Court should grant summary judgment in Defendants favor.

Second, Plaintiff cannot show that there is "substantial evidence" in the record to indicate that Defendants exaggerated their response. The Court should grant "wide ranging deference" that the course of conduct taken by Defendants was reasonable. The evidence shows that Defendants' response was exactly the response called for per KDOC policies. Plaintiff was being moved from the B cell house to the A&D area. Both of these things triggered a requirement for Plaintiff to be strip searched. (Doc. 19-3, Sealed Exhibit C; Doc. 19-4, Sealed Exhibit F). Thus, the Court should grant wide ranging deference to Defendants' decision to conduct the searches.

Plaintiff's bare allegations that this search was conducted for prurient reasons and not for legitimate penological ones, are mere speculation, conjecture, or surmise which are belied by the evidence. The Court should grant summary judgment in Defendants' favor.

> *b.* *Plaintiff cannot show that any clearly established law would have put Defendants on notice that the searches violated Plaintiff's rights.*

In order to overcome these Defendants' qualified immunity, Plaintiff must show not only that they actually violated Plaintiff's federally secured rights, but also that they were on notice that these actions were constitutional deprivations – that an "objectively reasonable officer[] could not have thought the [conduct] constitutionally permissible[.]" *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007); *see also Avery v. Anderson*, 94 F. Appx. 735, 739 (10th Cir. 2004). To make this showing, Plaintiff must demonstrate "that there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Horstkoetter*, 159 F.3d at 1278 (internal citation and quotation marks omitted).

Furthermore, determining whether a particular right was clearly established is a narrowly tailored, context-specific exercise. Nearly every right, when viewed with sufficient generality, can be considered clearly established. *White v. Pauly*, 137 S. Ct.548, 552 (2017) ("[T]he clearly established law must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.") (internal citations and quotation marks omitted). Thus, for the purposes of qualified immunity, "clearly established" means that the precise contours of a right are so well-developed that every reasonable official would have unquestionably understood whether his or her particular conduct was lawful. *See Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Consequently, if it is *debatable* whether a violation occurred, then the purported right at issue was not clearly established, and the defendant is entitled to qualified immunity. *al-Kidd*, 563 U.S. at 741.

Plaintiff has identified no law that clearly establishes that conducting a strip search when entering and exiting restricted housing or before being transported is an exaggerated response in violation of the Fourth Amendment. *See Jones v. Harrison*, 864 F. Supp. 166, 169 (D. Kan. 1994) (second strip search was reasonable as was conducted according to IMPP provisions and was related to the need to maintain order). Other circuits have upheld strip searches of inmates in restricted housing. *See e.g., Rickman v. Avaniti*, 854F.2d 327 (9th Cir. 1988) (upholding strip searches each time inmates in segregation left cells for any reason); *Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987) (approving visual body cavity search each time segregation inmate enters or leaves cell); *Goff v. Nix*, 803 F.2d 358 (8th Cir. 1986) (approving strip search and visual body cavity search each time inmate left maximum security area), cert denied, 484 U.S. 835 (1987). Nor are

Defendants aware of any case law that clearly establishes that a single, allegedly sexually harassing comment somehow renders a reasonable search conducted with legitimate penological interest unreasonable.

Additionally, it would not have been clear to a reasonable official that Defendants' conduct was unlawful in the situation they confronted. Plaintiff was being removed from B cell house and was required to submit to a strip search per KDOC policies. He was also required to submit to a second search in the A&D area prior to being transported for his court appearance. Defendants had no reason to think these strip searches would be an exaggerated response. And given that Defendants had legitimate penological reason to search Plaintiff, Defendants could not have known whether a single, allegedly sexual comment would render the entire search unreasonable.

Therefore, Defendants Goad, Carrell, Riddle, and Heimgartner are entitled to summary judgment for two reasons. First, there is no evidence to suggest there was a constitutional violation at all. Second, Plaintiff has not pointed to any authority suggesting that an objectively reasonable officer would have known the Constitution prohibited their conduct in this specific instance on October 27, 2016. *Reichle*, 566 U.S. at 664; *Gross v. Pirtle*, 245 F.3d 1151, 1155-56 (10th Cir. 2001). In addition, qualified immunity protects against mistakes – whether of law, fact, or both – so long as the mistake was reasonable. *al-Kidd*, 563 U.S. at 743 (affording "breathing room to make reasonable but mistaken judgments" and acknowledging that qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law"). Consequently, even if Defendants Goad, Carrell, and Riddle were mistaken in any way, e.g., in allegedly making Plaintiff squat further than he wanted to given his claimed back condition or in conducting a second search, this alleged mistake would have been reasonable.

Defendants are entitled to qualified immunity because it would not have been clear to a reasonable officer that the searches were unlawful. The Court should dismiss Plaintiff's Fourth Amendment claim or, in the alternative, grant summary judgment in Defendants' favor.

**2. Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.**

The Eighth Amendment protects inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. The primary concern of the drafters was to outlaw torture and other barbarous methods of punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Supreme Court has, therefore, concluded that this amendment imposes on the government only a minimal "obligation to provide medical care for those who it is punishing by incarceration" so as to prevent the infliction of wanton suffering as a form of punishment. *Id.* at 103-04. Accordingly, a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment only if he is deliberately indifferent to an inmate's serious medical needs. *Id.*

To establish that Defendants Goad, Patterson, and Carrell were deliberately indifferent, Plaintiff must prove both an objective and a subjective element. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). To establish the objective component, Plaintiff must show that he suffered a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834(1994); *Estelle*, 429 U.S. at 106.

To establish the subjective component, Plaintiff must show that Defendants Goad, Patterson, and Carrell "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety[.]" *Farmer*, 511 U.S. at 837.

To establish a constitutional violation, the medical condition suffered by an inmate must be "sufficiently serious," such that failure to treat it would rise to the level of a constitutional violation. *See Farmer*, 511 U.S. at 834; *see Estelle*, 429 U.S. at 103-04. A medical need is

sufficiently serious if it is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or "has been diagnosed by a physician mandating treatment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

      a.  *Plaintiff cannot show that Defendants were deliberately indifferent to his medical needs*.

Plaintiff's claim fails because his condition was not objectively serious. Plaintiff had on-going complaints of lower back pain for approximately two years at the time of the incident. He was receiving over the counter pain medication for the condition. It was not readily apparent at the time of the incident and Defendants Goad, Patterson, and Carrell were not aware of it. It wasn't until after he didn't want to squat low enough for Defendant Goad that Plaintiff first mentioned his injury. He also mentioned it to Defendants Patterson and Carrell. (Doc. 13). More importantly, the Plaintiff's medical records conclusively show that Plaintiff was not, in fact, bothered by his back enough to mention it to EDCF medical personnel during a number of medical visits subsequent to the incident. Upon his return from Reno County on November 1, 2016, Plaintiff claimed that he had no injuries. (Doc. 19, Sealed Exhibit I, p. I-236). Plaintiff reported on November 2, 2016, that he had no concerns or needs. (Doc. 19, Sealed Exhibit I, p. I-238). On November 8, 2016, Plaintiff refused treatment for his chronic conditions, including his back condition. (Doc. 19, Sealed Exhibit I, p. I-240). Plaintiff's medical records further show that on November 10 and 14, 2016, Plaintiff again reported no concerns or needs. (Doc. 19, Sealed Exhibit I, p. I-242 & 245). Plaintiff was given a medical exam on November 23, 2016, and the medical provider found that Plaintiff was within normal limits of body movement, with no signs of radiations of pain in his back or lower extremities. (Doc. 19, Sealed Exhibit I, pp. I-248-250). Plaintiff's Complaint, when viewed with the undisputed medical records, fails to meet

his burden to establish that he had a serious medical need or that the incident on October 27, 2016 made his condition any worse.

Nor does the Complaint provide any factual basis for a finding that the old back injury was exacerbated by the strip search. The injury was not "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" as required for an Eighth Amendment claim. *Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).* Examples of sufficiently obvious conditions have included visibly necrotizing tissue, *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001), and a highly symptomatic cardiac event, *Sealock v. Colorado*, 218 F.3d, 1205, 1208 (10th Cir. 2000). Here, Plaintiff claimed the squatting was causing back pain, but he failed to mention it to Defendant Riddle during the A & D area strip search and, more importantly, never mentioned it during the numerous medical appointments he had in the weeks following the incident, where he would have had the opportunity for treatment had he actually had extreme back pain.

The Eighth Amendment does not impose upon government actors a duty to discern unapparent medical needs. Defendants are entitled to dismissal based upon the allegations of the Complaint or summary judgment based upon the additional evidence provided in the *Martinez* Report.

Plaintiff's Complaint also fails to set forth any factual basis for suggesting or finding that Defendants Goad, Patterson, or Carrell acted with the requisite state of mind. *See Farmer*, 511 U.S. at 834. Deliberate indifference requires "a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interest or safety[.]" *Farmer*, 511 U.S. at 835. To satisfy this element, Plaintiff must prove that these Defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable

measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). In other words, Defendants Goad, Patterson, and Carrell cannot be liable under the Eighth Amendment unless they knew of and disregarded "an excessive risk to [plaintiff's] health or safety"; they must have been not only "aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed]," but must also have *actually drawn the inference*. *Farmer*, 511 U.S. at 838 (observing that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" in violation of the Eighth Amendment).

Here there is nothing in the Complaint or in the record to suggest that Defendants Goad, Patterson, and Carrell knew of any substantial risk of harm to Plaintiff from asking him to follow protocol and squat further than he wanted to as part of the required strip search. In fact, based upon Plaintiff's own Complaint, there is no evidence to suggest that Defendant's Goad, Patterson, and Carrell should have been aware of any serious medical risk to Plaintiff, especially when Plaintiff had been satisfactorily treating his back condition with over the counter medications for a period of two years. There is no reason to think that Defendants should have taken Plaintiff's word for the alleged severity of his claimed injuries in this situation.

Plaintiff's claim entirely fails to plead a plausible claim that the Defendants were deliberately indifferent to his needs. Upon learning of the possible medical restriction, Defendant Carrell checked the status of Plaintiff's medical restrictions and confirmed he did have a back injury. After confirming the restriction, Defendants' modified their request to "squat as low as you can." (Doc. 13 at 13). The Complaint fails to demonstrate that Defendants Goad, Patterson, and Carrell subjectively knew of and disregarded a risk of harm to Plaintiff.

b. *Plaintiff cannot show that any clearly established law would have put Defendants on notice that their request for Plaintiff to squat during the searches violated Plaintiff's rights.*

In order to overcome these Defendants' qualified immunity, Plaintiff must show not only that they actually violated Plaintiff's federally secured rights, but also that they were on notice that these actions were constitutional deprivations – that an "objectively reasonable officer[] could not have thought the [conduct] constitutionally permissible[.]" *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007); *see also Avery v. Anderson*, 94 F. Appx. 735, 739 (10th Cir. 2004). To make this showing, Plaintiff must demonstrate "that there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Horstkoetter*, 159 F.3d at 1278 (internal citation and quotation marks omitted).

Plaintiff has identified no law that clearly establishes that Defendants Goad, Patterson, and Carrell violated the Constitution by any of their alleged actions in this case, *i.e.*, telling Plaintiff he needed to squat further down than he wanted to during the strip search, particularly when Plaintiff's alleged back issues were not readily apparent and he repeatedly denied back pain and refused treatment after the alleged incident. Defendants' alleged actions did not violate clearly established law.

Therefore, Defendants Goad, Patterson, and Carrell are entitled to summary judgment for two reasons. First, there is no evidence to suggest there was a constitutional violation at all. Second, Plaintiff has not pointed to any authority suggesting that an objectively reasonable officer would have known the Constitution prohibited their conduct in this specific instance on October 27, 2016. *Reichle*, 566 U.S. at 664; *Gross v. Pirtle*, 245 F.3d 1151, 1155-56 (10th Cir. 2001). When there is any debate as to whether a violation occurred, qualified immunity applies.

*Reichle*, 566 U.S. at 669-70. In addition, qualified immunity protects against mistakes – whether of law, fact, or both – so long as the mistake was reasonable. *al-Kidd*, 563 U.S. at 743 (affording "breathing room to make reasonable but mistaken judgments" and acknowledging that qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law"). Consequently, even if Defendants Goad, Patterson, and Carrell were mistaken in any way, e.g., in allegedly making Plaintiff squat further than he wanted to given his claimed back condition, this alleged mistake would have been reasonable. This would not be enough to overcome the presumption of qualified immunity.

      c. *The brief verbal exchange Plaintiff alleges occurred during one of the strip searches, without any physical contact, cannot be cruel and unusual punishment.*

To assert an Eighth Amendment claim, Plaintiff must satisfy a two-prong test: 1) the conduct alleged must be "objectively, 'sufficiently serious[;]'" and 2) Defendants had a sufficiently culpable state of mind or was "deliberately indifferent" to plaintiff's safety. *Farmer*, 551 U.S. at 834. *First*, under the objective component, plaintiff must show that he was subjected to official conduct or physical force that rose to the level of cruel and unusual punishment, as not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 10. The Eighth Amendment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.* at 9-10. *Second*, to satisfy the subjective component of the Eighth Amendment test, Plaintiff must allege sufficient facts to show that Defendants acted with "deliberate indifference," which requires "a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interest or safety[.]" *Farmer*, 511 U.S. at 835.

The Eighth Amendment prohibits cruel and unusual punishment and encompasses an inmate's "constitutional right to be secure in her [or his] bodily integrity and free from attack by

27

prison guards." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotations marks and citation omitted). "The right to be secure in one's bodily integrity includes the right to be free from sexual abuse." *Id.* Thus, while *verbal* sexual harassment is insufficient to state a claim under the Eighth Amendment, the Eighth Amendment protects inmates from sexual assault. *Barney v. Pulsipher*, 143 F.3d 1299, 1310-11, n. 28 (10th Cir. 1998).

Courts have consistently found that allegations of sexually harassing comments or gestures are insufficient to give rise to a constitutional violation. *See Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *1-2 (10th Cir. Oct. 16, 2000) (unpublished) (finding that a defendant's alleged suggestive touching and exposure of her breasts to the plaintiff were not sufficiently serious to invoke the Eighth Amendment, despite plaintiff's allegations of emotional distress); *Adkins v. Rodriguez*, 59 F.3d 1034, 1036-37 (10th Cir. 1995) (finding that defendant's conduct in entering plaintiff's cell at night to watch plaintiff sleep and comment on her "nice breasts" when she awoke while "outrageous and unacceptable conduct" was not sufficiently serious to state an Eighth Amendment claim); *Barney*, 143 F.3d at 1310-11, n. 28 (allegations of severe verbal sexual harassment insufficient to state a claim under the Eighth Amendment); *Williams v. Anderson*, No. Civ.A. 03-3254-CM, 2004 WL 2282927, at *3 (D. Kan. September 7, 2004) (allegations that defendant verbally harassed defendant, including making sexually degrading remarks to and about him and rubbing plaintiff's face sheet on his groin area and telling plaintiff to "suck his dick" were not sufficient to state a claim under the Eighth Amendment). Such conduct simply does not rise to the level of a constitutional violation.

Here, Plaintiff claims that Defendant Patterson made sexual innuendos to him by saying "come on you can drop it farther than that." (Doc. 13 at 7; 11). When Plaintiff turned around to address the Defendants he "observed that both Defendant Goad and Defendant Patterson were

smiling." (Doc. 13 at 12). Plaintiff does not allege that Defendants Goad or Patterson ever touched him in any way. Even taken as true, these allegations simply do not reach constitutional proportions. A single sexually harassing remark and gesture is not sufficiently serious to state a claim under the Eighth Amendment. Because the alleged conduct is not sufficiently serious to rise to the level of cruel and unusual punishment, the Court should dismiss Plaintiff's Eighth Amendment claim.

### 3. Plaintiff fails to state a retaliation claim on which relief may be granted.

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Banks v. Katzenmeyer*, 645 Fed. Appx. 770, 772 (10th Cir. 2016). Thus, in order to state a First Amendment retaliation claim, Plaintiff must allege: (1) that he was engaged in a constitutionally protected activity; (2) that Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Defendants' adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct. *Id.*

> a. *Plaintiff has not shown a causal connection between his PREA complaint and the disciplinary action.*

The Court should dismiss Plaintiff's retaliation claim because he has not shown a causal connection between his PREA complaint and the issuance of the Disciplinary Report (DR). Although corrections officials may not retaliate against an inmate for engaging in a protected activity, an inmate "does not become inoculated from the normal conditions of confinement" "[s]imply by engaging in a protected activity." *Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1117 (D. Wyo. 2014), *aff'd.* 603 F. Appx. 665 (10th Cir. 2015). "Thus, a prisoner alleging retaliation must prove that *but for* the retaliatory motive, the incidents he claims were retaliatory … would not have taken place." *Id.* (emphasis added). "In addition, an inmate must allege *specific facts* showing

retaliation because of the exercise of the prisoner's constitutional rights." *Id.* (emphasis added). Mere conclusory allegations that retaliatory motives were the "but for" cause will not suffice. *Banks*, 645 Fed. Appx. at 772.

The court has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Strope v. Cummings*, 381 Fed. Appx. 878, 883 (10th Cir. 2010). "[E]ven outside the prison context, temporal proximity per se is insufficient to show that the stated explanation for a challenged action is pretextual." *Id.* (citing *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009)). "[G]eneric and unspecified allegations" noting the temporal proximity of the claimed retaliation to the protected activity are "insufficient to satisfy the 'but for' requirement." *See Banks v. Katzenmeyer*, 645 Fed. Appx. 770, 772 (10th Cir. 2016) ("generic and unspecified allegations that [defendant] filed her claim after [plaintiff] filed his grievance were insufficient to satisfy the 'but for' requirement"; plaintiff's assertion that claim was "fabricated" and "[b]ogus" could not be used "to infer that [defendant] would not have filed it absent a retaliatory motive").

Here, Plaintiff's claim should be dismissed because it fails to properly allege that "but for" his exercise of a constitutionally protected activity, the Disciplinary Report (DR) report would not have been issued. The DR made by Defendant Goad could not have been in retaliation for Plaintiff's March 10, 2017 PREA grievance – Defendant Goad filed the DR on October 27, 2016, over four months before Plaintiff would file his PREA grievance. *See Peterson v. Shanks*, 149 F. 3d 1140, 1144 (D. Kan. 1998) (Plaintiff's placement in segregation could not have been in retaliation for his suit filed against the warden when his placement in segregation occurred *three months prior* to the filing of the suit) (emphasis added).

The facts are undisputed that Defendant Goad filed the DR on October 27, 2016, the date of the incident with Plaintiff. (Doc. 19, Exhibit E). Plaintiff's PREA sexual abuse grievance relating to the October 27, 2016 incident was given to the unit team on March 10, 2017, approximately four and one-half months after the incident. (Doc. 13, p. 31). In fact, Plaintiff's PREA sexual abuse grievance even referred to Defendant Goad's DR and the outcome of the DR. On its face, Plaintiff's First Amendment claim fails. A DR filed October 27, 2016 simply cannot, as a matter of law, be filed in retaliation for a grievance filed four and one-half months after the DR was filed. At the point Defendant Goad filed his DR, he had no idea if the Plaintiff was going to file a grievance or not. It is factually impossible for Defendant Goad's DR filing to be a retaliatory act for Plaintiff's subsequent grievance filing. To be retaliatory, the actions of Defendant Goad would need to occur **after** the protected speech by the Plaintiff. Because Plaintiff failed to allege specific, objective facts from which it could plausibly be inferred that Defendant Goad's conduct was retaliatory, the Court should dismiss Plaintiff's claim.

### 4. Plaintiff fails to state an Equal Protection claim.

Plaintiff contends that his Equal Protection rights were violated by Defendant Heimgartner "developing, implementing, and enforcing a policy, practice, and custom at EDCF that operates in a manner where inmates who are housed in segregation at EDCF are forced to be stripped searched before leaving the cell house…the other inmates at all the other facilities are not required to be stripped searched before leaving segregation cell houses." (Doc. 13 at 22-23).

The Equal Protection Clause prevents governmental decision makers from treating differently persons who are, in all relevant aspects, alike. *Neal v. McKune*, No. 11-3155-JTM, 2013 WL 1446791, at *6 (D. Kan. Apr. 9, 2013). "In order to successfully state an equal protection claim, 'a plaintiff first must demonstrate that he has been treated differently from

others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Neal*, 2013 WL 1446791, at *6.

Plaintiff has provided no factional basis for his claim – he has provided no evidence that prisoners in restricted housing at other facilities aren't strip searched in fashions similar to those at EDCF. As previously stated, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Twombly*, 550 U.S. at 555).

In a similar case, *Leatherwood v. Rios*, 705 Fed.Appx. 735, 738 (10th Cir. 2017), the Tenth Circuit found that the warden of Lawton Correctional Facility did not violate the Equal Protection Clause when an inmate had to pay higher prices at the Lawton Correctional Facility commissary than similarly situated inmates at commissaries in DOC-operated prisons. There, the inmate commenced a civil rights action for violation of his equal protection rights, challenging the pricing and availability of commissary items in his facility versus items in commissaries of other similarly situated prisons. After the district court entered judgment against the inmate, he appealed. The Tenth Circuit held that the inmate failed to allege defendants had the requisite authority over the pricing of commissary items offered at the other similarly situated prisons and without this authority, the defendants could not have treated the inmate differently from similarly situated inmates in similarly situated prisons.

Here, even if Plaintiff had alleged sufficient facts to support his claim, Defendant Heimgartner has no authority over what strip search procedures are conducted in other facilities and Plaintiff does not allege that he was treated differently than other similarly situated inmates within EDCF. Defendant Heimgartner is entitled to dismissal on this claim.

**D.** **Defendant Heimgartner is entitled to dismissal because Plaintiff's Complaint fails to allege facts showing Defendant Heimgartner personally participated in any alleged violation of his civil rights.**

Defendant Heimgartner is entitled to dismissal because Plaintiff's Complaint fails to allege that he personally participated in a constitutional violation. Plaintiff asserts counts under the First and Fourteenth Amendments against Defendant Heimgartner for "developing, reviewing, and implementing a policy at EDCF that lead to… inmates being strip-searched before they leave there cell-house then again strip-searched immediately up arriving at EDCF A&D building." (Doc. 13 at 21).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citation omitted); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). "'Allegations of personal participation, like all other factual averments, must be specific, not conclusory.'" *Hachmeister v. Kline*, No. 12-3263-SAC, 2013 WL 237815, at *3 (D. Kan. Jan. 22, 2013). "It is likewise well-established that supervisory status alone does not create § 1983 liability." *Hachmeister*, 2013 WL 237815, at *3. "Rather, there must be 'an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher*, 587 F.3d at 1069. There are no allegations of any kind in the Complaint that Defendant Heimgartner personally participated in either strip search of Plaintiff on October 27, 2016. Plaintiff includes Defendant Heimgartner in this claim on the bare allegation that he developed, reviewed and implemented a policy at EDCF that lead to Plaintiff's rights being violated. (Doc. 13, p. 21). There are no allegations of any kind that set forth the process by which EDCF Post Orders and KDOC IMPP's are developed, reviewed and implemented. Such a bare allegation devoid of any facts is not enough to support a plausible claim that Heimgartner

personally participated in the alleged deprivations of Plaintiff's constitutional rights.

Even if the responses provided by Warden Heimgartner's office to Plaintiff's grievance created an affirmative link, the Tenth Circuit has held the denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir.2009); *see also Allen v. Reynolds*, 475 Fed. Appx. 280, 284 (10th Cir. 2012) (notice of dispute given to prison warden does not show his personal participation in unconstitutional conduct). Accordingly, Defendant Heimgartner is entitled to dismissal.

WHEREFORE, Defendants James Heimgartner, Jonethen Patterson, Austin Goad, William Riddle, and Troy Carrell pray that the Court enter an Order dismissing Plaintiff's Complaint, or, in the alternative, grant Summary Judgment to them, and for such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Dennis D. Depew
Dennis D. Depew, KS Sup. Ct. No. 11605
Deputy Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel:  (785) 368-8426; Fax:  (785) 291-3767
Email:  dennis.depew@ag.ks.gov

*Attorney for Defendants:*
*James Heimgartner, Jonethen Patterson, Austin*
*Goad, William Riddle, and Troy Carrell*

## CERTIFICATE OF SERVICE

   I hereby certify that on this 8th day of May, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court, and that on this same date, I mailed the foregoing *via* first class U.S. Mail, postage prepaid, addressed to:

Deron McCoy Jr. #76894
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042

         /s/ Dennis D. Depew
         Dennis D. Depew
         Deputy Attorney General
         Office of Attorney General
         Derek Schmidt