Ron McCoy. Jr #76894
.. Box 311
Jdeado. NS 67042

## The United States District Court
### For the District of Kansas

| | |
|---|---|
| ow McCoy. Jr, | ) |
| Plaintiff. | ) |
| | ) |
| | ) |
| | ) Case No. 17-3139-JWB |
| | ) |
| es Heingartner et al., | ) |
| Defendants | ) |

### Plaintiff's response to Defendants motion to Distriss or in the alternative motion for Summary Judgement

comes now the plaintiff Delas McCoy. Jr in a pose
tion in response to the defendants. Motion to distriss.
e plaintiff request this court not grant the defendants
ngartner, Riddle J. Patterson, and A. Gould motion to distriss
the plaintiff did properly exhaust his administrative
redies pursuant to P.L.R.A. eleventh amendment does not
all claims against Defendants in their official capacity,
e plaintiff has stated a claim against defendants in
ier official capacity, and they are not entitled to qualified
munity, and Defendant Heingartner personally participated
developing, reviewing, and implementing the step search
ocedure at E.D.C.F. for inmates in long-term seg and Restrictive
ousing.

## Certificate of Service

I Delron McCoy Jr hereby certify on this 17th day of July, 2018. I submitted the foregoing document to e-filing to Staff at P.D.CLP (VK.O.O.C) for e-filing in the U.S Dist Court for the Dist of Kansas.

Date: 7-17-18                    S/ Delron McCoy Jr

Deron McCoy Jr #76894
P.O Box 311
Eldorado KS 67502

The United States District Court
For the District of Kansas

Deron McCoy Jr,                    )
        plaintiff,                 )
                                   )
v.                                 )   Case No: 17-3139-JWB
                                   )
James Heimgartner, et al.,         )
        Defendants                 )

<u>Memorandum of Law In support of
Plaintiffs response to defendants
Dispositive motion</u>

    Comes Now the plaintiff Deron McCoy Jr pro se and
in support of his response to the defendants dispositive
motion and states the following:

I. Intro          Facts

    The plaintiff Deron McCoy Jr brought this action
pursuant to 42 usc §1983 for the violation of the
plaintiff's rights to not be subject to excessive
strip searches. strip searches that served no penological legitimate
purpose, cruel and unusually punishment. and for violation
of his equal protection rights. The defendants motion
fails and must be denied, as defendants do not enjoy qualified
immunity. the eleventh amendment does not bar claims
against defendants in thier official capacity. The plaintiff has
stated proper claims against defendants, and the plaintiff
did properly exhaust the administrative remedies available.

(1)

## II. Defendants Statement of facts

1. Uncontested.
2. Uncontested.
3. Uncontested.
4. Uncontested.
5. Uncontested.
6. Uncontested.
7. Uncontested.
8. Uncontested.
9. Contested. (Plaintiff yelled out P.R.E.A violations due to Defendants sexually harassing him during forced excessive strip searches).
10. contested. (The plaintiff properly preformed the strip search procedure the very first time).
11. Uncontested.
12. Uncontested.
13. Uncontested. (plaintiff also submitted initial grievance to defendant Riddle at that time.)
14. Uncontested.
15. Uncontested.
16. Uncontested.
17. Contested. (Defendant Heimgartner developed, reviewed and implemented the strip search policy and procedure at E.D.C.F that lead to the plaintiff being excessively strip searched and sexually harassed).
18. contested. (as to the extent that defendants purport that plaintiff should be subject to excessive strip searches and sexual harassdoue to his prior D.R history ).

(2)

19. Contested. The plaintiffs prior mental health issues regarding anxiety were in remission and defendants actions aggravated the plaintiffs mental health issues and made his anxiety worse.

20. Uncontested.

21. Contested. The plaintiff made numerous complaints by submitting medical slips and then verbally once he was being examined for said sick calls (see Exhibit B several sick call for neck, back shoulder pains 1-26-17 through 8-12-17).

22. Contested. The plaintiff verbally voiced his injuries to medical staff numerous times and also by sick call) see Exhibit B2 sick calls and plt affidavit.

23. Contested. The strip search procedure at C.D.C.F for inmates housed in restrictive housing serves no reasonable legitimate penological purpose for inmates being transported to court since any inmate that is being transported to court is strip searched prior to being transported).

24. Contested. The plaintiff filed a grievance prior to submitting the sexually harassment grievance.

25. Uncontested.

③

## III. Plaintiffs Statement of facts

1. On 10-27-2016 I resided at E.D.C.F central B-cellhouse Long-term seg. (plt aff dawit prgn 1 and plt complaint)

2. I currently reside at E.D.C.F central A2cellhouse General Population, where I have been in general pop since 1-29-18 (plt aff prah 2) and

3. On 10-27-2016 while awaiting transport to Reno County (Hutchinson) Detention Center, for a court hearing the follow events occurred and were committed by the named defendants (plt affdawit and plt complaint)

4. while going through the transport procedure in B-cellhouse at E.D.C.F central two S.S.T members approached my then celldoor. I did not know these S.S.T members names at that time. One was a male and the other a female. (plt aff prah 4 and plt complaint).

5. I had my legal box that needed to be transported with me to the Reno County Detention Center, all my other personal property had been packed out the night before on 10-26-2017. (plt aff prah 5 and plt complaint).

④

.he only other items in the cell were bedding.

The male J.S.T member grabbed my 15.5 x 12.75 x 9.5 legal box (after I was handcuffed) and carried it to the strip-out area. (Loft aff prgh 7)

The female J.S.T member then arrived with a rollable cart and placed my legal box on it and pushed the cart out the door without searching it. (Loft aff prgh 8)

After I was taken out of the handcuffs. The male S.S.T member (now identified as J.S.T member Good) directed me to "strip out". (Loft aff prgh 9)

.I was and am very familiar with the strap-search proceedure in K.D.O.C. Even more so.since when an inmate in longterm seg is going toor coming back from the seg yard he is strip-searched both times. (Loft prgh 10 and D.T complaint)

I began to undress and handed the clothing items to Defendant Good as I removed them from my body. (Loft prgh 11 and D.T complaint)

After I was completly undressed, I then waited for Defendant Good to tell me to begin the strip-search proceedure. (Loft prgh 12 and D.T complaint)

After Defendant ᵛGood completed the search of the clothing (which took way longer then normally). Defendant ᵍᵒᵒᵈ then

⑤

cted his attention to the and began to give me that directives pursuant to I.M.P.P 12-103 D.

arting with my ears, then opening my mouth visually inspecting as I did so, going through the strip-search procedure to the point of lifting my scrotum. (plt pargh 13 and plt complaint).

Defendant Goad then directed me to turn around so that my back faced towards him, Bent at the waist, spread my buttocks cheeks, squat and cough. (plt aff prah 14 and plt complaint).

I obeyed this directive by bending over as much as I could in the very small (approx 1/3 safe) strip-out cage. Spreading my buttock cheeks, squatting to the usually depth, and maybe where my buttock was close to a straight line and coughing. (plt aff prah 15 and plt complaint).

After I straighten back up to a erect standing position and then turned around till I was again facing defendant Goad. (plt aff prah 16 and plt complaint).

Defendant Goad then stated "Now thats not good enough, you need to squat further down". Defendant Goad then directed the plaintiff to again spread my buttock cheeks, bent, and cough. (plt aff prah 17 and plt complaint).

I again turned around untill my back was to Defendant Goad. I Bent at the waist, squatted further

⑧

in. As I did so I immediately felt a sharp, shooting in in my lower back emulating down my right Hock cheek down my right leg. and left leg (alt off. pgph. and plt complaint)

fendant Good then stated "No I want to see you ully squat butt all the way to the floor". while ointing down at the floor. (alt aff pgph 1a and plt complaint)

I then told "Now thats not right" and "that" I couldn't do it anyway do to my back "injury" I then went on to describe to defendant Good the extent of my back injury and my medical restrictions due to that back injury. (plt aff pgph 2a and plt complaint.

I then looked to my left at defendant J. Patterson who had been standing a few feet away and had been observing the strip-search of my person. (plt aff pgph 21 and plt complaint).

Knowing that Defendant J. Patterson was the then officer in charge (O.I.C) of B-cell house. In hopes that Defendant J. Patterson would help resolve the problem. I asked for his help in resolving the problem. (plt aff pgph 22 and plt complaint).

Defendant J.Patterson then stepped over to the strip-out cage door. I again explained the problem, my back injury, and my medical restrictions, that kept me from squatting until my butt touched the ground. (plt aff pgph 23 and plt complaint).

Defendant J.Patterson said nothing at that time.



Defendant Good then gave me directives to begin the complete strip-search from the beginning. (I disputed putting my fingers in my mouth due to me having touched my genitals and buttock cheeks and there was no sink to wash my hands. Defendant J. Patterson stood by and and watched as I followed the directive as given. (I absent my fingers in my mouth). (plt aff prgh 25 and plt complaint)

. When the strip-search of my person reached to the part which required me to bend, squat and crouch spread my buttock cheeks, and cough. I again bent at the waist (as much as possible), squatted as far as I could without being blinded by pain. I again felt extreme pain in the form of sharp shooting pains emanating in my lower back and down my buttock and legs, while coughing. (plt aff prgh 26 and plt complaint)

. While I was squatting, bent, spreading my buttock cheeks, and coughing. Defendant J. Patterson stated "come on you can drop 'it' further than that". (plt aff prgh 27 and plt complaint).

. I immediately recognized the saying of 'drop it' to be a sexual innuendo originally derived from the song titled 'drop it like it's hot" by rap artist 'Snoop Doggy Dogg'. The saying 'drop it' is also sung in R & B song. "Thats how I like it by R&B Artist" Bruno Mars (The verse goes "you and your (erotecli) term for buttocks) invited (so gone and get it to clapping (so 'drop it' for a playa (gone and drop it for a

4ya).(plt off pgph 26 and plt complaint).

. I KNOW as a fact that the saying 'Drop it' is a
saying a' Man states to a woman (as a sexual
innuendo) when he wants her to girate her buttocks
while bending over and moving her buttocks from a
squatting position until there buttocks nearly touches
the ground. The term only has sexual meaning
when used in the manner Defendant Patterson did.
(plt off pgph 2a and plt complaint).

1. Then I immediately straightened up to a standing position
and turned around and faced Defendant Good and
Defendant J. Patterson. (plt off pgph 30 and plt complaint).

1. I observed that both Defendant Good and Defendant J.
Patterson were smiling very widely. I then grabbed
the clothing that had already been searched by Defendant
Good off of the port hole in the strip-out cage door,
and began to get dressed while yelling out that
I was being sexual harassed, P.R.E.A violation.
(plt off pgph 31 and plt complaint).

2. Defendant Good and Defendant J. Patterson quickly
stopped smiling and quickly left the strip-out cage
area out of my view. (plt off pgph 32 and plt complaint).

3. After a couple of minutes I then began to yell
out, so that I could be heard requesting a
grievance form and a pencil. Defendant J. Patterson

brought me a grievance form and a golf pencil.
(Plt. aff prgh 33 and plt complaint)

1. I then told Defendant J. Patterson that I was
going to write a grievance on him and Defendant
Good. Defendant J. Patterson then advised me that
a s.s.T supervisor would be in route. (Plt aff prgh 34
and plt complaint).

55. A short time later a s.s.T member arrived
who identified himself as s.s.T supervisor Carrell
and asked me what the problem was. (Plt aff prgh
35 and plt complaint).

36. I then explained the problem with the strip-search
directives given by Defendant Good. concerning
the directive for me to squat fully to the floor
buttocks to the ground and the full extent of my
back injury, that kept me from doing such a
manner. (Plt aff prgh 36 and plt complaint).

37. Defendant Carrell then left the strip-out cage
area and I used the wall of the strip-out cage
as a surface to fill out the grievance form against
Defendant Good and Defendant J. Patterson to completion
(Plt aff prgh 37 and plt complaint).

38. Defendant Carrell returned a short-time later and
told me that he had spoken to defendant Good
and that he (Defendant Carrell) would have to stand
by his fellow officer and would also require me



to squat fully down butt to the floor. I again told defendant carrell that I had a back injury and medical restrictions that keep me from performing such a maneuver due to them causing me extreme pain. (pit off prgh 38 and present complaint).

. I further told defendant carrell that I am very familiar with the strip-search policy for K.D.O.C and that fully squatting buttocks all the way to the floor has never been a part of the K.D.O.C strip-search procedure. Defendant carrell then left the strip-out cage area again. (pit off prgh 3a and pit complaint).

9. When defendant carrell again returned he informed me that he had spoken with medical and verified my back injury and medical restrictions, yet he would still require me to perform the strip search procedure again and to squat down as far as I could. I once again felt extreme pain in my lower back, sharp shooting pains that went down my buttocks and legs. I was then allowed to dress again (after completing the strip search absent putting my fingers in my mouth) squatting at the same depth I did for the initially strip-search. (pit off prgh 40 and pit complaint).

1. Defendant carrell and a unidentified S.s.T member then escorted me to admissions and discharge (A&D) at E.D.C.F in handcuffs. (pit off prgh 41 and pit complaint)



during that time I was in constant observation by Defendant Carrell and the unidentified I.S.T member all the way until I placed in a single man cell, that only had a bench seat in it. One of my arms (at the bicep) was also held from B-cellhouse to A&D. (plt aff pgh 42 and plt complaint)

Once I was placed in the single man cell and the door closed the handcuffs were removed through the food port in the door. There was never any opportunity to obtain any contraband or any inmate around that would give me any contraband. (plt aff pgh 43 and plt complaint)

1. A short time later defendant Riddle who works at S.D.C.F (A&D) came past the holding cell I was then in. I then submitted the grievance to defendant Riddle for filing. (plt aff pgh 44 and plt complaint).

. Approx 20-30 min later Defendant Riddle then approached the cell door of the holding cell and told me that he (Riddle) would need me to again perform the strip-search procedure. I then explained to Defendant Riddle that I had just been strip searched four times and had been under constant observation and isolated from any other inmates the entire time frame. (plt aff pgh 45 and plt complaint).

. Defendant Riddle then told me it was policy that all inmates that are being transported to another

(14)(12)

facility must be strip-searched before leaving A&D. and that it didn't matter if I had been strip-searched before leaving B-1 cellhouse (at E.D.C.F). I then submitted to defendant RIDDLES directives and submitted to the strip-search procedure (absent putting my fingers in my mouth due to not being able to wash my hands) and got dressed in a orange jumpsuit. I squatted to the same depth as the initial strip-search and the strip-search conducted by defendant CORRELL. (plt aff prgrph 46 and plt complaint)

7. The Reno county, KS deputy sheriff then arrived and transported me to the Reno County, Detention center in Hutchinson, KS by van. (plt aff prgh 47 and plt complaint)

.8. On November 1, 2016 I was transported back to E.D.C.F from the R.C.D.C. (plt aff prgh 48 and plt complaint)

9. From 10-27-2016 ~ 11-17-2017 I began feeling more extreme pain in my lower back and going down my buttock and legs in the form of sharp shooting pains. I also began experiencing tingling numbness in my legs every morning. These pains and symptoms were constant during this time frame and only began after the first strip-searches I was forced to perform by the defendants. (plt affidavit prgh 49 and plt complaint)

~~10. In response to~~
10. The pain in my lower back and down my legs before 10-27-2016 was almost in remission and only caused me extreme pain in the morning and if I stood or sat for too long a period of time. (plt aff prgh 50 and plt complaint)

(15)

- I also began to experience severe anxiety. I was prescribed anti-anxiety medication (Buspar). I also had to go to counseling by mental health staff at S.W.C.F and HCIP for treatment of anxiety (plt affidavt pgph 51 and plt complaint)

2. I had been previously diagnosed with anxiety but prior to 10-27-2016 it was in remission and I did not require medication for treatment. As of the date of me writing this I NO longer require anti-anxiety medications. (plt aff pgph 52 and plt complaint)

3. While awaiting to get a response back on the grievance I wrote on defendant Goad and defendant J. Patterson. I instead received a D.R that was written by defendant Goad. I received the D.R on or about 11-20-2016. (plt aff pgph 53 and plt complaint).

4. The D.R. written by defendant Goad was written for allegedly disobeying orders and interference with official duties. for me not fully squatting buttocks all the way to the floor (touching the floor) (plt aff pgph 54 and plt complaint).

5. The I.M.P.P. for offender and facility searches (12-103D) (111.)(2)(d) only requires a inmate to squat all the way to the floor until his/her buttocks touches the floor. (plt aff pgph 55 and plt complaint)

- As a result of the D.R written by defendant Goad the faced the loss of his incentive level, loss of

(16)

vileges (commisary, telephone privileges, yard restrictions).
Ciplinary segregation, loss of good-time, and was
used for release from long-term segregation due
the pending DiR. (plt aff prgh 56 and plt complaint).

The disciplinary infractions alledged to have been
committed by me which were written by Defendant Goad
were falsified in attempt to neglide his and Defendant
J. Patterson actions in sexually harassing me by
strip-searching me 4 times (one immediately followed
by another. Further as the DiR hearing officer
found I "attempted to squat all three times
to the depth given". (plt aff prgh 57 and plt complaint)

The then DiR hearing officer found me not guilty
on both alleged infractions "Due to lack of
preponderance of evidence" which was conducted
on 11-28-2016. (plt aff prgh 58 and plt complaint)

The policy/procedure implemented at E.D.C.F requires
inmates who are in Restrictive Housing to be stripped
searched before they leave B-cellhouse and then
once again immediately after they arrive at A&D
in restraints, even though the inmate is in constant
observation, (and even having there bicep grasped all the
way to A&D) and then placed in a single man
cell and never get any, nor is there any oppurtunity
for a inmate to get any contraband. (plt aff prgh 59
and plt complaint).

(15)

20. I have been transported to other from N.C.F, L.C.F, E.D.C.F, & H.C.F's Restrictive housing units to other K.D.O.C facilities during prison terms I've served in the past. (plt aff pgrh 60 and plt complaint).

21. At each of the three facilities that I was transported from R.H. I was not required to be strip-searched, but once before being placed allowed to board the K.D.O.C bus in the case of L.C.F and H.C.F, or once before leaving assigned seg cell in the case of N.C.F. (plt aff pgrh 61 and plt complaint).

22. Inmates at E.D.C.F central General Population are only strip searched once upon arriving at A&D, before being allowed to board the K.D.O.C bus for transport. (plt aff pgrh 62 and plt complaint).

23. I.M.P.P 12-103D (III) (A) provides "strip searches of offenders shall be approved by the shift supervisor or higher authority and conducted by an officer trained and qualified in search procedures (plt aff pgrh 63 and plt complaint).

24. I.M.P.P 12-103D (I) provides "The offender shall be allowed to dress, as soon as possible, following the search. (plt aff pgrh 64 and plt complaint).

25. K.A.R 3 44-15-204 (H)(3) provides "voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate by staff for

(18)

sons unrelated to official duties, including peering
an inmate who is using the toilet in the inmates
11 to perform bodily functions; requiring an inmate
, expose the inmates buttocks, genitals, or breast; or
viewing images of all or part of an inmates naked
body or of an inmate performing bodily functions
plaintiff act ouvt his plaintiff exhibit to his complaint)

. K.A.R 44-15-204 (u) (A·B) States 'sexual harassment
means either of the following': (A) Repeated and
unwelcome sexual advances, request for sexual favors
or verbal comments, gestures, or actions of a
derogatory or offensive sexual nature by one
inmate directed to another or (B) repeated verbal
comments or gestures of a sexual nature to an
inmate by a staff member, contractor, or volunteer,
including demeaning reference to gender, sexually
suggestive or derogatory comments about body or
clothing, or obscene language or gestures.
(pit aff pagh u and pltf complaint).

7. I am a straight heterosexually Jewish male. It
is disrespectful to my beliefs to be humiliated,
demeaned, in a attempt to demasculize me observe
by the defendants Lumon they did when they.
made homosexual advances, comments, and actions
when they forced me to submit to excessive strip
searches. (pit aff pagh u7 and ptf complaint).

II Standard for Motion to Dismiss.

Initially "stating a claim requires a complaint with enough factual matter taken as true to suggest the required element." Bell vs Atlantic, 700 U.S. at 576. This does not impose a probability requirement at the pleading stage: but instead simply calls for enough fact to raise a reasonable expectation that discovery will reveal the necessary element". In analyzing the court will accept as true all well-pleaded facts and will draw from them all reasonable inferences from those facts in favor of the plaintiff. see. Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir 2006). The court will also liberally construe the pleading of a pro'se plaintiff "see Jackson v. Pheacy Inc, 952 F.2d 1160, 1161 (10th Cir 1991)" liberally construing a pro se plaintiffs complaint means that. If the court can reasonably read the pleadings to state a valid claim. on which the plaintiff could prevail it should do so despite the plaintiffs failure to cite proper legal authority, his confusion of various legal theories his poor syntax and sentence construction, or his unfamiliarility with pleading requirements Hall v. Bellmon 935 F.2d at 1110.

Next a Motion to dismiss under 12 (b) Fed R.Civ.P. is analyzed by the court under the same sufficiency standard that the court screens a pro se prisoners complaint for at the start of the action before the complaint is served on the defendants.

(18)

, determining whether dismissal is appropriate under § 1915 (e)(2)(B). A plaintiff complaint will be analyzed by the court under the same standard as a Rule 12(b)(a) motion to dismiss see _Kay v. Bemis 500 F.3d 1214, 1217-18 (10th Cir 2007)._

## II Arguements and Authorities

• Plaintiff did properly exhaust his administrative Remedies pursuant to the P.L.R.A prior to bringing suit under § 1983.

Initally the plaintiff asked for and completly filled out a regular grievance on 10-27-16 and submitted it to defendant Riddle (before being transported to RCDC) when plaintiff returned from court on November 1, 2016 he was awaiting to get a response from that grievance. Instead on 11-20-2016. The plaintiff received a O.R. The plaintiff never got any response from that grievance.

On 3-10-17 the plaintiff submitted a sexual abuse grievance pursuant to K.A.R-44-15-204 (b)-(g) for the actions of defendants Heingartner, Riddle, A. Good, and J. Patterson, and Correll.

K.A.R 44-15-204 (a) counted" (a)(4) Provides (1) There shall be no time limits for submission of a grievance regarding an allegation of sexual abuse.

Since the plaintiff initially submitted a grievance prior to his departure to RCDC for court on 10-27-2016

(19)

and got no response and further since K.A.R
44-15-204 (a)(4) states that there is no time limit
for submitting a sexual abuse grievance then
the plaintiff timely and properly exhausted his
administrative remedies. The sexual abuse grievance
was accepted and processed by K.D.O.C. S.D.C.F. Staff.
The plaintiff appealed the wardens decision to the
secretary of corrections and then timely filed this
civil action. (See Exhibit A)

   wherefore defendants issue fails and the plaintiffs
claims must proceed through as he properly exhausted
his administrative remedies before bringing this
action.

B. The Eleventh amendment does not bar all claims
   against defendants in their official capacity.


  Although the Eleventh Amendment may bar money
damages against defendants in their official capacity
it does not bar the declatory and injustive relief
against the defendants. The Eleventh amendment
also does not bar the §1983 claims against the
defendants in their individual capacity.

  The plaintiff is not only seeking monetary damages
against the defendants. He is also seeking declatory
and injustive relief. "Declatory relief that the acts
and omissions contained in this complaint violated
plaintiffs rights" and "permenent injunction directing
Heimgartner and /or other k.n.o.c official to amend
C.D.C.F policy that has inmates in seg.(Restrictive housing)
being strip searched before leaving their respective

cellhouse L currently only B-cellhouse ~~and the house~~ and part of cellhouse) then once again when they reach A&D at C.D.C.F (when said inmate is being transferred) and had been under S.S.T observation and escort during that time).

"Complaint against prison official who had prisoner placed in punitive regregation was not barred merely because § 1983 suits may not seek money damages or retrospective relief against States or State officials acting in their official capacities. Since § 1983 does not prohibit suits for injuctive or declaratory relief Morgan v. Glenthorpe D.R.I 1992 785 F.supp 205.

Since plaintiff seeks declatory and injuctive relief against defendants the eleventh Amendment does not bar all claims against defendants and their agruement fails.

C. Plaintiff has stated a claim against the defendants in their individual capacity and they are not intitled to qualified immunity.

Intrally the defendants are sued pursuant to § 1983 in their official and individual capaceitves. Defendants are by law unable to assert the affirnative defesse of qualified immunity for the claims against them in their official capacity. ("Immunity from suit under § 1983 extends to public servants only in their individual capacities") Board of county cotics Wabaunsee County, Kans v. Umbehc, U.S. Kan, 1996 .116 5.ct 2342, 518, U.S 668, 175 L.ed. 2d 843

(21)

In the event that defendant Berry is attempting to assert that she is immune from suit in her official capacity, that defense is by law not available to her in her official capacity.

Defendants Heimgartner, J. Patterson, A. Good, Riddle, and Correllk are also not entitled to qualified immunity in their official capacity for the following reasons:

1. the strip searches were not reasonable and Drew:

After the plaintiff properly performed the strip search process "while "squatting to the proper depth as required by K.D.O.C policy. Defendant A. Good then forced the plaintiff two additional times to perform the strip search procedure (one time where defendant J. Patterson observed while making sexual innuendos). After plaintiff had advised these defendants that he had medical restriction and back injuries, and had already properly performed the strip search procedure.

When the plaintiff begins to yell out that he had a P.R.e.A violation and asked for a grievance. He was then approached by defendant Correll who does after also being made aware of the problem. Again forced the plaintiff to perform the strip search procedure. And the plaintiff performed the squatting process to the same depth he had initially when first strip searched by defendant A. Good. Defendant Correll (the 5/5# supervisor) found the strip search process was properly followed by the plaintiff. The plaintiff

(24)

was then taken to A.C.D at (C.D.C.F) and placed in a Single-Mens holding cell. The plaintiff was then once again forced to submit to another Strip-search by defendant Riddle. After the plaintiff informed defendant Riddle that he had just been Strip-searched several times before being brought to A.C.D and hadn't had a opportunity to obtain contraband from anyone. These four additional strip searches by the defendants were not valid as they were not reasonably related to legitimate penological interests.

"Strip searches may be valid if "reasonably related to legitimate penological interest". Farmer v. Perr. II. 288 F.3d at 1260

"Courts must consider the scope of the particular intrusions, the manner in which it is conducted. The justification for initiating it, and the place in which it is conducted" Farmer 288. F.3d 1254, 1259-60 (10th cir. 2002)

The four additional strip searches were not valid for the following reasons.

The plaintiff performed the strip search procedure properly the first time so the request that the plaintiff perform the strip search over again 3 times by defendants before leaving B cellhouse and then once again before leaving A.C.D. cell.

The reasoning by defendants that the plaintiff had to squat all the way butt touching the floor is not required by K.D.O.C policy I.m.p.p 12.103D(III) (F)(d.)

(25)

provides in part "The offender shall be required to"
(B) squat".

Nowhere in any policy does it state that a offender shall be required to squat fully to the floor nor touch there buttocks to the floor.

Defendants consistent attempts to force the plaintiff to squat untill his buttocks touched the floor leven after being made aware of medical restrictions and potential risk to the plaintiff) were not reasonable related to legitimate penological interests. which is infact true

It is clear that the defendants purposille actions were to degrade, humilitate, dehumanize and sexual harass the plaintiff. This is further shown by the fact that defendant J. Patterson made a sexually innuendos while attempting to force the plaintiff to touch his butt to the floor, and also by the fact that these the defendants were smiling while they did so.

Lastly K.A.R .44-15-204 (4) (3) provides "voyearism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate by staff for reasons unrelated to official duties, including peering at an inmate who is using a toilet in the inmate's cell to perform bodily functions, requiring an inmate to expose the inmates buttocks, genitals, or breast; or taking images of all or part of an inmates naked body or of an inmate performing bodily functions,

K.A.R 44-15-204 (4) (B) provides sexual harassment means either of the following (B) repeated verbal comments or gestures of a sexual nature to an inmate by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing. or obscene language or gestures

Since squatting fully to the floor until causes a offender

(24)

Buttocks touches the floor is not what I.M.PP
12-103 D requires the strip searches were not
reasonable, when the defendant forced the plaintiff
to attempt to do so and further since everytime
the plaintiff could not do so made him start

the strip search procedure over again. The
last strip search of the plaintiff by defendant
Riddle also was not reasonable as the plaintiff had
already been strip-searched four times prior to
arriving at A+D, had been in constant observance
by defendant cattell and a unidentified S.S.T member,
had not had any opportunity to obtain any type
of contraband, was isolated from any other offenders,
and in restraints.

   Wherefore the four strip searches of the plaintiff
where not reasonable and violated the plaintiffs
constitutional rights

11. The Law is clearly established that the type of
    searches conducted by the defendants violates
    a offenders and the plaintiffs rights.

   Although there may not be any factually identical
cases to this facts outlined in the plaintiff 2nd
Amended complaint. The law is clearly established
that strip searches may only be valid if they are
reasonably related to legitimate penological interests.
Farmer v. Perrill 288 F.3d at 1360.
   Tyler however is a factually identical case out of the

(25)

2) Clr W.Y) that case is Jean-Laurent v. Wilkson

et al. , 2012 ~~ddd~~ U.S ADD Lexis 2651 (a) coc N.Y. Feb. 9, 2012)
540 F.supp 2d 701 , 2008 U.S Dist Lexis 50592

In that case summary judgement was denied
since general issues of material fact existed regarding
whether Jean-Laurent was under constant supervision
by defendants and to what proximity he was to other
inmates so as to determine whether he could have
acquired contraband. (After correctional officers strip
searched ~~twice~~ a inmate twice)." The court noted
that the verbal and physical abuse that allegedly
accompanied the second strip search could support a
reasonable finding that the search was designed to harass
and intimidate"

Similarly in this current action the plaintiff who was
subject to a ~~distance~~ strip-search where he ~~was~~
properly performed the strip-search procedure the first
initial time when defendant A. Good strip search ordered him.
the plaintiff was then forced to perform the strip search
procedure a subsequently four-times again after
the first strip-search by defendant could ~~be searched~~
During this time ~~were~~ ~~while~~ the plaintiff was under constant
supervision by 5.s.T members and locked in single man cells
(First Bo cellhouse then A&D). ~~Further the plaintiff was~~
The plaintiff was further verbally abused ~~while there~~ ~~were~~ in
the form of sexual innuendos (by defendant J. Patterson)
while the defendants forced him to perform three additional
strip searches under the theory that the plaintiff
was to squat fully to the floor until his buttocks
touched the floor, when the I.m.P.P only requires
that a offender squat and the K.A.R 44-15-204
puts defendants on notice that it is sexual harassment
to make sexually suggestive or derogatory comments about
body, or clothing, or obscene language or gestures
(see Exhibit B K.AR. 44-15-2040).

(2©)

since the four consecutive strip-searches served no Legitimate penological purpose as the plaintiff had already performed the strip-search procedure properly the first time and had been under constant supervision by s.s.t and e.d.c. staff the entire time and completly isolated from other inmates. Then the defendants were put on notice that such unreasonable searches were not permissable and that such conduct violated the plaintiffs rights.

II. Defendants do not enjoy qualified immunity on plaintiffs Eigth Amendment claim.

As discussed above, defendants do not enjoy qualified immunity in their official capacities.

Defendants do not enjoy qualified immunity in their individual capacities for the following reasons:

1. Defendants were deliberatly indifferent to Plaintiffs objectively serious medical conditions.

The plaintiff has been continuously being treated for low back syndrom which has been diagnozed as degenertive disc syndrom from a back injury (as well as other injuries) that the plaintiff suffered at the hands of defendants in a unrelated case. The plaintiff has been given pain medication and treatment and while the pain had never fully gone away it had been to a bearable level (when not standing for long periods or sitting for long periods). The plaintiff also had medical restrictions that stated that he was not to squat, go upstairs, or be on top bunk.

The plaintiff even verbally told the defendants of these medical problems and restrictions yet the defendants still forced the plaintiff to perform acts that caused him extreme pain, twice after they themselves had verified with medical at C.D.C.F. the seven sick calls that plaintiff has submitted as exhibits are evidence of the additional pain and aggravations the plaintiff began to suffer immediately after the defendants forced the plaintiff

(27)

to attempt to squat fully to the floor untill his buttocks touched the floor. Plaintiff did not refuse his chronic care treatment for his back as at that time cocizons back via 9.d.C.F would not treat plaintiffs back injury as chronic care. The fact that the defendants knew of defendants medical conditions due to the plaintiff verbally telling them and then themselves verifying with medical that the plaintiff had a medical condition shows that the defendants knew the plaintiff was faced with a substansial risk of harm if he was forced to squat when his medical condition and medical restrictions shows that he should be kept from doing any action close to squatting yet they forced him to anyways under treat of a D.R.

1.1 The law was clearly established that the defendants request that the plaintiff perform a squat/bend maneuver that caused him extreme pain violated plaintiffs rights.

Although there may be no factually identical cases to the facts outlined in the plaintiffs second amended the law is clearly established that a defendant could not know of and disregard a excessive risk to a plaintiffs health or safety, then when a plaintiff has suffered a sufficiently serious medical need.

The plaintiff verbally told the defendants that he had a medical condition in the form of a back injury (degenerative disc diecese) and medical restrictions that kept him from squatting to the floor. Yet defendants carrcell and J. Patterson ignored the plaintiff and forced him to squat. Defendant carrcell even verified the plaintiff medical conditions and medical restriction but yet still forced the plaintiff to squat causing the plaintiff to experience extreme pain and worsening the plaintiffs medical injury. See Farmer v. brennan 511 u.S. 825, 834 (1994) and Estelle v. Gamble, 429 u.S. 97, 102 (1976).

"Defendants are deliberately indifferent to a plaintiffs serious medical needs when they "knew of and disregard an excessive risk to [his] health or safety". Farmer 511 U.S. at 857 and plaintiff must have "suffered a "sufficiently serious need" Farmer 511 U.S. 825, 834 [1994]" (emphasis added)

Since it is so the law was clearly established that the defendants actions violated the plaintiffs rights.

III. ~~Plaintiff does state a claim for retaliation against the defendants for filing a grievance to and filing a grievance to and filing a grievance~~

III. Plaintiff does state a valid retaliation claim on which relief may be granted.

The plaintiff immediately after being ~~verbally~~ sexually harassed asked for and was given a grievance form by defendant J. Patterson, the plaintiff told defendants J. Patterson and A. Good that he was going to write a grievance on them for a P.R.E.A violation for sexual harassment. In response and in retaliation for threatening to and writing the grievance on 10-27-16 defendant A. Good wrote the plaintiff a D.R in retaliations for the plaintiff protected activity of filing a grievance. This is further shown since defendant Good wrote the D.R for the plaintiff not "fully" squatting butt fully to the floor". When this is not required by B.I.D.C or C.W.C.F Policy. Their could be no other reason for the writing of the D.R. except for retaliations. The plaintiff had attempted 3 or more times to attempt the deep knee bend which is further supported by the findings of the D.R hearing which the plaintiff was found not guilty of the D.R infractions. Had the plaintiff not threatened to file a P.R.E.A grievance on the defendants

(21)

AND further complained then defendant Goad would have not wrote a D.I.R. The plaintiff initially wrote a grievance on 11-27-2016 on defendant Goad and submitted it to defendant Riddle, that same day defendant Goad wrote a D.R on the plaintiff based upon facts that did not support any D.I.R. infraction.

Therefore the plaintiff has stated a retaliation claim upon which relief may be granted.

IIII. Plaintiff does properly state a Equal Protection claim.

E.D.C.C is the only K.D.O.C facility that requires a Inmate(s) who are in restrictive housing to be strip-searched prior to leaving their respective cellhouse and then once again once he arrives at H.U before being transported.

The Equal Protection Clause prevents governmental decision makers from treating differently those who are in all relevant aspects alike. Neal v. McKune 2013 W-L 144891 at *1 (D. Kan. Aug 6, 2013)

The plaintiff has been transferred out to and from HNDF, NCF, L.C.F, and C.D.C.F, but while also being housed in restrictive housing at said facilities. E.D.C.F is the only facility that requires offenders to be strip searched prior to leaving to see cellhouse and then once again before they are transported. H.C.F, H.C.F, and L.C.F only require inmates who are in restrictive housing and are being transferred to be strip-searched after they have arrived at A.&D, and prior to being transported.

Since the inmates at the other facilities of K.D.O.C Restrictive housing are all subject to the same damp.p and policy and procedures then the plaintiff is similarly situated to the inmates at the other K.D.O.C facilities when the plaintiff was forced to be strip searched before leaving B cellhouse and then once again

(32)

before he was being transferred then he was treated differently then the inmates housed in restrictive housing at N.C.F, L.C.F, and M.C.F. thus the plaintiff Equal Protection rights were violated. and ~~defendants~~ defendants are not entitled to dismissal on this claim.

~~Claim~~ XIII Defendant Heimgartner personally participated in developing, reviewing, and implementing the E.D.C.F strip-search procedure for Restrictive housing at E.D.C.F.

The plaintiff constitutional right to be free from unreasonable searches was violated when the plaintiff was forced to ~~disrobe~~ strip-searched before leaving Restrictive housing (B-cell house) at E.D.C.F on 10-27-16 and once again once he was at A&D. This procedure is only in place at E.D.C.F and said policy and procedure was developed, reviewed and implemented into policy, practice, and custom at E.D.C.F by defendant Heimgartner this is evident by defendant Heimgartner's signature on the B-cell house post orders & general orders ~~custom~~ for E.D.C.F. Had defendant Heimgartner Not signed the policies into effect then the ~~both~~ other named defendants would Not have been allowed to even consider strip-searching the plaintiff ~~consequently~~ After already being properly strip-searched. Therefore defendant Heimgartner personally participated in developing, implementing and reviewing the ~~strip~~ strip-search policy at E.D.C.F.
Further this defendant was put on notice when the plaintiff filed his grievance yet defendant Heimgartner did nothing to act to correct the unconstitutional act. ~~cause~~ General orders and Post orders cannot be approved without the review and implementing by signature of the Warden of a K.D.O.C facility.

(31)

## Conclusion

For all the reasons contained within the plaintiff second amended complaint and all the foregoing and since the plaintiff second amended complaint has already been screened for the same standard as a motion to dismiss before it was even served upon the defendants the plaintiff request the defendants motion be denied and nothing be taken from the plaintiff by way of defendants motion.

Respectfully submitted.

_Dellon Alley Jr_
Dellon Alley Jr #70899
P.O Box 311
Eldorado, KS 67042

## Certificate Of Service

I Dellon Alley Jr hereby certify that on this Friday of July 2018 I submitted the foregoing to EDCF staff so that the same foregoing responsive motion could be e-filed in the US Dist court for the Dist of KS.

_S/ Dellon Alley Jr_

(32)