IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DERON MCCOY JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 17-3139-JWB |
| | ) |
| JAMES HEIMGARTNER, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

James Heimgartner, Jonethen Patterson, Austin Goad, William Riddle, and Troy Carrell (the "defendants"), by and through Assistant Attorney General Natasha M. Carter, respectfully submit this Reply Memorandum in Support of Defendants' Motion to Dismiss, or in the Alternative, For Summary Judgment in accordance with Fed. R. Civ. P. 12 and D. Kan. R. 7.1(c). (Doc. No. 26). The Defendants respectfully request that their motion be granted and this action be dismissed, or alternatively, judgment be entered in their favor. Defendants state the following in support.

**ARGUMENTS AND AUTHORITIES**

This Court should grant the Defendants' Motion to Dismiss, or in the Alternative, For Summary Judgment because Plaintiff's claims are barred by Eleventh Amendment immunity and qualified immunity. Additionally, Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). *See* 18 U.S.C. § 1997e(a). Further, Plaintiff's retaliation and equal protection claims fail as a matter of law. Finally, Plaintiff fails to allege personal participation by Defendant Heimgartner.

## I. STANDARD OF REVIEW FOR MOTION TO DISMISS.

Defendants have previously briefed the standards for a motion to dismiss, and will not repeat them here. (Doc. 26 at 8-10). However, Defendants' reiterate that when, as here, a plaintiff is proceeding *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir.2001); *Accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir.1998) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). The liberal construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based". *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based". *Id.*[1]

## II. PLAINTIFF LACKS STANDING.

Article III, § 2 of the U.S. Constitution limits federal courts to the decisions of "Cases" or "Controversies." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Standing is the first requirement. *Id.*, at 64. "To qualify as a party with standing to litigate, a person must show,

---

[1] Mr. McCoy possesses extensive experience in federal court litigation as a *pro se* party. *See McCoy v. Miller*, 646 F. App'x 701, 702 (10th Cir. 2016); *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018); *McCoy v. Aramark*, No. 16-3027, 2018 WL 3957050 (D. Kan. Aug. 17, 2018); *McCoy v. KDOC*, No. 16-3239-SAC, 2018 WL 1726344 (D. Kan. Apr. 10, 2018); *McCoy v. Miller*, No. 12-03050-JAR-KGS, 2015 WL 5311616, (D. Kan. Sept. 11, 2015), aff'd, 646 F. App'x 701 (10th Cir. 2016); *McCoy v. Heimgartner*, No. 17-3014-SAC, 2018 WL 1083257 (D. Kan. Feb. 28, 2018); *McCoy v. Meyers*, No. 12-3160-CM, 2017 WL 1036155, at *1 (D. Kan. Mar. 16, 2017), aff'd in part, rev'd in part, 887 F.3d 1034 (10th Cir. 2018); *McCoy v. Burris*, No. 18-3077-SAC, 2018 WL 3708170 (D. Kan. Aug. 3, 2018). Many of his cases are appealed to the Tenth Circuit. A number of these cases had Mr. McCoy bring Fourth and Eighth Amendment claims against other parties in federal court. Incidentally, Plaintiff is not your typical *pro se* party and the "liberal construction" afforded a *pro se* party may not be appropriate in light of Mr. McCoy's past knowledge and experience. Plaintiff is an experienced litigator with more federal court experience than many licensed attorneys. Plaintiff seems determined, both here and in the past, to force his facts to comport with the limited jurisdictional parameters of the federal courts.

first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (quoting *Whitemore v. Arkansas*, 495 U.S. 149, 155 (1990)). Standing "demands that the litigant possess a 'direct stake in the outcome.'" *Id.* (citation omitted). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.*, at 67 (citing *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). As the Court stated in *Arizonans for Official English,* "[i]n litigation generally, and in constitutional litigation most prominently, courts in the United States characteristically pause to ask: Is this conflict really necessary?"

Plaintiff lacks standing to challenge the strip search policy in B cell house because he is no longer housed there. Plaintiff was transferred to general population on January 29, 2018. (Doc. 38 at 3, ¶ 2). Plaintiff is therefore limited to prospective declaratory and injunctive relief. Any order this Court could make regarding the strip search policy in B cell house would not affect Plaintiff, as he is no longer housed in B cell house and has stated no foreseeable timeframe in which he would return.

In *Toevs v. Milyard*, 563 F. App'x 640, 645 (10th Cir. 2014), the Tenth Circuit Court of Appeals held that an inmate's claims were rendered moot by his transfer to a different cell house in the prison. There, the inmate was in incarcerated in Building 4-B when he commenced his civil rights action for declaratory and injunctive relief, challenging the housing-assignment policy. He was subsequently transferred to I-Pod. After the district court entered judgment against the inmate, he appealed. The Tenth Circuit held that the inmate's transfer to a different cell house within the facility rendered the case moot, holding "Transfer generally moots an inmate's claims of declaratory and injunctive relief. [Citation omitted]. Because [Plaintiff] now

only seeks injunctive relief, his claim that his time in Building 4-B denied him equal protection is moot. Moreover, his claim that he is at risk of being removed from I-Pod based on "staff's discretion" is too speculative to form the basis of injunctive relief. [Citation omitted]." *Id*.

The same applies to declaratory relief. In *Jordan v. Sosa*, the Tenth Circuit cited several cases in which a prisoner's transfer rendered the case moot, concluding "courts have routinely dismissed . . . penitentiary-specific conditions of confinement claims as moot." *Id.*, at 1027-28. As to the rationale for the dismissing such cases, the Circuit stated,

> [w]here the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief. Because a prisoner's transfer or release 'signal[s] the end of the alleged deprivation of his constitutional rights,' an entry of equitable relief in his favor 'would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.'

654 F.3d at 1027 (citations omitted).

Assuming Plaintiff had standing to seek declaratory and injunctive relief in the past, he has a continuing obligation to maintain his standing for that relief as the litigation continues. *See, e.g., Tyler v. Kansas Lottery,* 14 F. Supp. 2d 1220, 1225 (D. Kan. 1998) (dismissing a case seeking injunctive relief against the Kansas Lottery under the Americans with Disabilities Act where the Plaintiff had moved from Manhattan, Kansas to Wisconsin and the new facts were insufficient to demonstrate any imminent threat of harm justifying injunctive relief); *see generally, City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that although Plaintiff Lyons alleged that he had been subjected to a chokehold during a traffic stop five months before, Plaintiff failed to establish that he was likely to suffer future injury from the use of chokeholds by police officers – that there was not a real and immediate threat of this happening in the future, and thus, no jurisdiction existed for Plaintiff's §1983 claim).

Here, any judgment this Court could render on the Plaintiff's Complaint regarding the strip search policies in B cell house would not do anything for Plaintiff, as he is no longer housed in that cell block. The case must be dismissed for lack of standing. *Opala v. Watt*, 454 F.3d 1154, 1159 (10th Cir. 2006) (citing *Wyoming Sawmills, Inc. v. United States Forest Serv.*, 383 F.2d 1241 (10th Cir. 2004); *Glover River Org. v. United States Dept. of Interior,* 675 F.3d 251 (10th Cir. 1982)).

### III. PLAINTIFF ADMITTINGLY FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES BEFORE FILING SUIT UNDER § 1983 AS REQUIRED BY LAW.

Plaintiff admits he did not exhaust the prison grievance process. (Doc. 38 at 21-22). Rather, Plaintiff generally points to his PREA grievance and argues that should be sufficient.

Plaintiff's PREA complaint does not satisfy the prison grievances process, nor is it a substitute for those processes. *See Howard v. Rodgers*, No. 17-3019-DDC-TJJ, 2018 WL 3122175, at *4 (D. Kan. June 26, 2018) ([plaintiff's] reliance on PREA procedures is misplaced). *See Barringer v. Stanley,* No. 5:16-CV-17-FDW, 2017 WL 1028595, at *2 (W.D.N.C. Mar. 16, 2017) ("Plaintiff's initiation of an action under the PREA simply does not satisfy the requirements for exhaustion of administrative remedies under PLRA."); *Omaro v. Annucci,* 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("[T]he federal courts that have considered the issue have concluded that the PREA does not excuse an inmate's failure to exhaust his administrative remedies with respect to a claim of sexual misconduct."); *Lamb v. Franke,* No. 2:12-CV-00367-MO, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.")).

Further, Plaintiff's complaint should be dismissed with prejudice because allowing Plaintiff another attempt to exhaust would be futile as the time for filing a grievance on these

claims has expired. *See Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017), <u>cert. denied,</u> 138 S. Ct. 180, 199 L. Ed. 2d 106 (2017) (plaintiff's claim dismissed with prejudice for failing to exhaust administrative remedies because allowing plaintiff to refile would have been futile given the time period for filing a grievance had expired).

**IV.   THE ELEVENTH AMENDMENT BARS ALL CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY.**

For the reasons stated in the Defendants' Motion, Defendants are entitled to Eleventh Amendment Immunity in their official capacities. Further, as with Plaintiff's Complaint, Plaintiff's Response fails to make sufficient allegations that would support a plausible claim for relief under *Ex parte Young*.

**V.   PLAINITIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITES BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

Plaintiff has not met his burden of demonstrating that the strip search in this case violated Plaintiff's constitutional rights, or that the right to be free from a strip search on these facts was clearly established. Defendants are entitled to qualified immunity on Plaintiff's claims and incorporate the arguments in Defendants' Motion. Further, Defendants' state the following in support.

   *a.   Plaintiff has not met his heavy two-part burden to overcome Defendants' assertion of qualified immunity.*

"Qualified immunity 'protects governmental officials from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." ' " *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ). When a defendant asserts a qualified-immunity defense at summary judgment, the

plaintiff is required "to shoulder" a heavy two-part burden to survive the defendant's assertion. *1121 *Cox*, 800 F.3d at 1245. First, "[t]he plaintiff must demonstrate on the facts alleged ... that the defendant violated his constitutional or statutory rights." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Second, the plaintiff must demonstrate "that the right was clearly established at the time of the alleged unlawful activity." *Id.*; *Perry v. Durborow*, 892 F.3d 1116, 1120–21 (10th Cir. 2018).

The burden shifting nature of an assertion of qualified immunity was recently emphasized in *Matthews v. Bergdorf*, 889 F.3d 1136 (10th Cir. 2018). In *Bergdorf*, the Tenth Circuit reversed a district court because "The district court's approach constituted error because it shifted the burden to the [defendants'] . . . to establish their entitlement to qualified immunity." *Id.* at 1144. The Court noted that in responding to defendants assertion of qualified immunity, "the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason." *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "Every named Plaintiff ha[s] the burden of adequately pleading every element of his or her claim . . . ." *Id.* at 1145. Then for a plaintiff to get past qualified immunity the "'record must clearly demonstrate that the plaintiff has satisfied . . . [her] heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" *Id.* (*quoting Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

In other words, Defendants are entitled to qualified immunity unless Plaintiff can show not only that their actions actually deprived him of a federally secured right but also that Defendants had fair warning their own actions were unconstitutional under the Eighth or Fourteenth Amendments. Plaintiff's Response simply recites the elements of the claims from his

7

Complaint. This is not enough. Plaintiff has come forward with no evidence that would meet his heavy burden to demonstrate Defendants are not entitled to qualified immunity. Plaintiff cannot meet either prong and therefore, qualified immunity applies.

### b. *Plaintiff concedes the law was not clearly established*.

Plaintiff concedes there is no Supreme Court or Tenth Circuit case law establishing that the strip searches were unreasonable in the situation the Defendants confronted – requiring Plaintiff to be stripped search when leaving B cell house and entering A&D, or requiring Plaintiff to fully squat to complete the strip search procedure.

Despite his concession that there is no law on point on either issue, Plaintiff's Response cites to *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). (Doc. 38 at 28). *Jean-Laurent* does not support Plaintiff's claims that he is constitutionally entitled to determine the number of strip searches he will be subjected to or how far down he should have to squat. Rather, the issue in that case was the nature of the force used during a strip search that wasn't conducted during routine security measures at the prison. *Jean-Laurent* did not hold that routine strip searches within a facility were unconstitutional.

Further, even if *Jean-Laurent* was on point, it would not clearly establish the law in this case. District court cases and cases from other circuits are "incapable of clearly establishing the law." *Rife v. Jefferson*, No. 17-7037, 2018 WL 3660248, at *4 (10th Cir. Aug. 2, 2018) (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ("[D]istrict court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards...."); *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("[W]e can

disregard district-court decisions cited by the [plaintiff], which can be persuasive on the merits of a constitutional claim but cannot clearly establish what the law is.").

As the Tenth Circuit has recognized, cases may be fact-dependent such that "general statements of the law are not inherently capable of giving fair and clear warning" to a government official for purposes of qualified immunity. *Stewart v. Beach,* 701 F.3d 1322, 1330 (10th Cir. 2012) (quoting *United States v. Lanier,* 20 U.S. 259, 271 (1997)). In *Stewart v. Beach,* the inmate argued his First Amendment rights were violated when prison officials would not allow him to board a bus for security reasons because his Rastafarian hairstyle made it impossible to comb through his dreadlocks prior to boarding a prison bus. *Id.*, at 1326. The Circuit affirmed Judge Robinson's formulation of the issue as "whether it was clearly established that [Beach and Wilson] violated Stewart's First Amendment free exercise right by requiring him to cut his hair for security reasons." *Id.*, at 1327, 1330. Stewart had argued that was too narrow, and the definition should have been "the right to reasonably exercise one's religion in prison." *Id.* The Circuit agreed that Judge Robinson's formulation of the issue was not too narrow, citing Supreme Court case law that "the right allegedly violated must be established, not as a broad proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* (quoting *Reichle v. Howards,* 566 U.S. 658, 132 S. Ct. 2088, 2094 (2012)).

Notably, since *Stewart v. Beach* and *Reichle v. Howards* the United States Supreme Court has continued along the path defined in *Reichle* holding that if there is ambiguity in the situation confronted by the government official, qualified immunity applies. As the Court stated, "[w]e have repeatedly told courts . . . not to define clearly established law at a high level of generality," an inquiry which "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted); *Kisela v.*

*Hughes,* 138 S. Ct. 1148, 1152 (2018). To be clearly established, "the existing precedent must have placed the statutory or constitutional question **beyond debate**." *Kisela,* at 1152 (quoting *White v. Pauly*, 580 U.S. \_\_\_, 137 S. Ct. 548, 551 (2017) (per curiam)) (emphasis added). This is consistent with the long-stated holding that qualified immunity for public officials protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)); *accord Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017).

Under the protective standard afforded to government officials under qualified immunity, Defendants are entitled to dismissal because no clearly established law put Defendants on notice that their alleged actions were unconstitutional. The §1983 claims against Defendants must be dismissed.

### c. *Defendants were not deliberately indifferent to Plaintiff's serious medical needs*.

As Plaintiff concedes throughout the Complaint and Response, he suffered from a low back injuries long before the incident alleged in Plaintiff's Complaint. The record reflects that in 2016, Plaintiff had at least thirteen documented encounters with medical providers. (Doc. 19-9, Ex. I at 137, 176, 180, 219, 236, 247, 257, 653-54, 656-59). Of those thirteen encounters, only six were after the alleged incident in Plaintiff's Complaint. (*Id*. at 236, 247, 257, 657-59). Of the six requests for medical care after the alleged incident, Plaintiff refused services on three occasions. (*Id*. at 657-59). On November 1, 2016, five days after the alleged incident, Plaintiff was examined after returning from a court appearance. During his medical intake process Plaintiff denied any injuries. (*Id*. at 236). On November 23, 2016, less than one month after the alleged incident, Plaintiff's medical classification was noted as "mild medical problems, may handle most work assignments." (*Id*. at 247). On December 22, 2016, medical providers noted

Plaintiff had no limitations on employment and was capable of independent daily life. (*Id*. at 257). Plaintiff's only restriction on his living unit assignment was "no stair climbing." (*Id*. at 247). Notably, missing from the restrictions on work or living unit assignments is squatting or residing on the top bunk as Plaintiff claims in his Response. (Doc. 38 at 29).

In 2017 and 2018, Plaintiff was seen by medical professionals on numerous occasions, primarily for issues unrelated to this case. On January 28, 2017, Plaintiff was seen by Dr. Sayeed for "chronic pain in neck and shoulders from "old injuries." (Doc. 19-9, Ex. I at 279). Plaintiff listed his pain score as "4". (*Id*.). Plaintiff made no mention of re-injuring his back just a few months prior during a strip search. On February 13, 2017, Plaintiff was again seen by Dr. Sayeed for chronic neck and shoulder pain. (*Id*. at 303). Dr. Sayeed noted "Onset: gradual without injury. Severity level is mild. Duration: 6 months. Location of pain is lower back and neck. There is no radiation of pain. The patient describes the pain as an ache. The patient denies aggravating factors. Symptoms are relieved by pain meds/drugs and requesting Tramadol for pain relief." (*Id*.). At that visit Plaintiff also requested longer cuff links due to injury to his neck. (*Id*.). Dr. Sayeed noted "[a]dvised patient very clearly that we were not going to change the length of his cuff. There was no indication for that at this time. Patient was also advised that there was no indication for MRI or addition of Tramadol to his medical regime at this point…no medical indication to recommend extra link cuffs. Explained we do not recommend for "comfort". Offender left stating he was going to contact his attorney." (*Id*. at 306).

Similarly, on September 13, 2017, Plaintiff was seen by Dr. Sayeed for chronic shoulder and back pain. Plaintiff advised the physician his back pain resulted from an "altercation with police officers in 2011." (*Id*. at 494). Plaintiff made no mention of a re-injury to his neck or back due to a strip search conducted in 2016. On January 29, 2018, Plaintiff was transferred to El

11

Dorado Correctional Facility ("EDCF"). During his medical intake process Plaintiff denied any injuries. (*Id*. at 632).

Here, Plaintiff has produced no evidence that his pre-existing back injury was exasperated in any way by the October 27, 2016 strip searches. Rather, the record clearly reflects that Plaintiff's care for his chronic back pain has remained consistent with the treatment he was receiving before the incident in question. Plaintiff was seen by medical providers after the alleged incident on multiple occasions and made no mention of re-injuring his back. Plaintiff cannot show that he suffered a series medical need. Even if he could somehow show that his medical need was series, Defendants were not deliberately indifferent to those needs. As Plaintiff concedes, once Defendants verified the medical issues, Defendants modified their request to "squat as low as you can." (Doc. 38 at 13). Defendants are entitled to qualified immunity on this claim.

### d. *Plaintiff concedes the alleged sexually harassing exchange was minimal with no physical contact.*

Plaintiff's Response fails to respond to Defendants' argument that the alleged sexually harassing comments and gestures made by the Defendants do not rise to the level of a constitutional violation. Plaintiff alleges in his Complaint and Response that Defendant Patterson stated "come on you can 'drop it' further than that." (Doc. 38 at 10). Plaintiff also alleges Defendants Goad and Patterson were smiling as part of their alleged sexual harassment. (*Id.* at 11). However, Plaintiff concedes in his Response "Defendant Goad and Defendant J. Patterson *quickly stopped smiling* and *quickly left the strip-out cage*." (*Id.*). (emphasis added). Plaintiff does not allege Defendant Patterson made this statement more than once or had physical contact with Plaintiff at any point. "It was not clearly established in this Circuit at the time that verbal abuse during a strip search that involved no physical contact constitutes an Eighth Amendment

violation" *Smith v. Trapp*, No. 14-3220-JAR-JPO, 2018 WL 587230, at *5 (D. Kan. Jan. 29, 2018), reconsideration denied, No. 14-3220-JAR-JPO, 2018 WL 3145429 (D. Kan. June 27, 2018).

For the reasons previously stated in Defendants' Motion and not controverted in Plaintiff's Response, Defendants are entitled to judgment in their favor.

## VI. PLAINTIFF'S FAILS TO STATE AN EQUAL PROTECTION CLAIM.

Plaintiff contends that his Equal Protection rights were violated by the strip search policies in B Cell House and A&D at EDCF.

The Equal Protection Clause prevents governmental decisionmakers from treating differently persons who are, in all relevant aspects, alike. *Neal v. McKune*, No. 11-3155-JTM, 2013 WL 1446791, at *6 (D. Kan. Apr. 9, 2013). "In order to successfully state an equal protection claim, 'a plaintiff first must demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Neal*, 2013 WL 1446791, at *6.

To make a viable equal protection claim, Plaintiff must show he was treated differently from those who were "similarly situated" to him and the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (internal citations omitted). The inmate and the group of people he compares himself to must be similarly situated "in all relevant aspects." *Neal v. McKune*, 2013 WL 1446791, at *6 (D. Kan. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985)). The Tenth Circuit has found "clearly baseless" the "claim that there are other inmates who are similar in every relevant aspect." *Fogle*, 435 F.3d at 1261

13

In *Templeman v. Gunter*, an inmate in segregation made a similar equal protection claim, contending that his equal protection rights were violated when he was not treated the same as similarly situated inmates when he was transferred to administrative segregation. 16 F.3d 367, 371 (10th Cir. 1994). Noting that the plaintiff-inmate had failed to allege he was treated differently because of any suspect class, the Court found "he therefore must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Id*. (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)).

Plaintiff alleges no facts showing how he was similarly situated to segregation inmates in other KDOC facilities. Plaintiff does not allege he was treated differently based on any suspect class. Nor does plaintiff allege any facts that show that the strip search policies at EDCF were "not reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 Plaintiff alleges disparate treatment based solely upon his classification status in segregation. These allegations, without more, are mere conclusory statements and therefore Defendant Heimgartner is entitled to judgment in his favor.

Further, even had Plaintiff stated a claim and established the violation of a constitutional right, that constitutional right was not clearly established such that Defendant Heimgartner is entitled to qualified immunity on Plaintiff's Equal Protection claim based on the above caselaw.

## VII. PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Response simply reiterates the same facts he stated in his Complaint. Plaintiff has produced no evidence showing how it could be possible for Defendant Goad's Disciplinary Report, written on October 27, 2016, to have been in retaliation for a PREA complaint filed over four months after the Disciplinary Report was written. For the reasons previously stated in Defendants' Motion, Defendants are entitled to Judgment in their favor.

## VIII. DEFENDANT HEIMGARNTER IS ENTITLED TO DISMISSAL, OR JUDGMENT IN HIS FAVOR, BECAUSE PLAINTIFF FAILS TO ALLEGE PERSONAL PARTICIPATION.

Defendant Heimgartner is entitled to dismissal because he did not personally participate in the violations of Plaintiff's rights alleged in his Complaint.

Pursuant to § 1983, a named defendant must have personally participated in the deprivation of a plaintiff's constitutional rights to sustain individual liability for that defendant. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). There is no concept of strict supervisor liability under § 1983. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted). Supervisory liability "must be based upon active unconstitutional behavior" and "more than a mere right to control employees." *Id.* at 1153. A supervisor is not liable under § 1983 unless an "affirmative link" exists between the constitutional deprivation and the supervisor's personal participation. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). It is not enough to simply show that a defendant's employees engaged in behavior which violated the constitutional rights of another—"a deliberate, intentional act by the supervisor to violate constitutional rights" must be shown. *Jenkins*, 81 F.3d at 994-95. Further, "the denial of…grievances alone is insufficient to establish personal participation." *Grissom v. Werholtz*, 524 F. App'x 467, 475 (10th Cir. 2013).

Plaintiff does not allege that Defendant Heimgartner personally participated in or directed any of the violations of which he complains. Plaintiff complains of the strip search policies in B Cell House and A & D, and that Defendant Heimgartner did nothing in response to Plaintiff's grievances. The policies of which Plaintiff complains were conducted in furtherance of a legitimate penological interest in institutional security. Plaintiff has provided no facts alleging Defendant Heimgartner personally participated in the alleged unconstitutional violations.

Further, even if the responses provided by Warden Heimgartner's office to Plaintiff's grievance created an affirmative link, the Tenth Circuit has held the denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir.2009); *see also Allen v. Reynolds*, 475 Fed. Appx. 280, 284 (10th Cir. 2012) (notice of dispute given to prison warden does not show his personal participation in unconstitutional conduct). Accordingly, Defendant Heimgartner is entitled to dismissal.

        Respectfully Submitted,

        OFFICE OF ATTORNEY GENERAL
        DEREK SCHMIDT

By:    s/ Natasha Carter
        Natasha M. Carter, No. 26074
        Assistant Attorneys General
        120 SW 10th Ave., 2nd Floor
        Topeka, KS 66612
        Phone: 785-296-2215
        Fax: 785-291-3767
        Nastasha.Carter@ag.ks.gov
        *Attorney for Defendants*

# **CERTIFICATE OF SERVICE**

This is to certify that on this 30th day of August, 2018, the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which sent notice of electronic filing to the following:

Jeff Cowger
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Jeff.Cowger@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above was served via first-class mail, postage prepaid to:

Deron McCoy, Jr., #76894
El Dorado Correctional Facility
PO Box 311
El Dorado, KS 67042
*Pro se Plaintiff*

            s/ Natasha Carter
            Natasha Carter, No. 26074
            Assistant Attorney General