# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DERON MCCOY, JR.,

       Plaintiff,

v.                                       Case No. 17-3139-JWB

JAMES HEIMGARTNER, et al.,

       Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on Defendants' motion to dismiss, or in the alternative motion for summary judgment. (Doc. 25.) The motion has been fully briefed and is ripe for decision. (Docs. 26, 38, 47.) Defendants' motion is GRANTED for the reasons stated herein.

## I.    Facts and Procedural History[1]

Plaintiff Deron McCoy, Jr. is an inmate in the custody of the Kansas Secretary of Corrections. On October 27, 2016, Plaintiff was housed at El Dorado Correctional Facility ("EDCF"). At the times relevant to this action, Plaintiff was housed in cell house B-1, which is the restricted housing (RH) cell house. Currently, Plaintiff is housed in general population. (Doc. 38 at 4.) Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. The court granted Plaintiff leave to proceed in forma pauperis. Plaintiff names as Defendants: James Heimgartner, EDCF Warden; SORT Member Austin Goad; First Sergeant Jonethen Patterson; First Sergeant Troy Carrell; and Correctional Officer William Riddle. Plaintiff sues each Defendant in their individual and official capacities. Plaintiff seeks relief in the form of nominal

---

[1] The facts stated herein are uncontroverted unless specifically noted as controverted.

damages, compensatory damages, punitive damages, a declaratory judgment, and a permanent injunction directing Defendant Heimgartner and/or KDOC officials to amend the KDOC strip search policy.

EDCF has several written policies regarding the transfer of inmates both within the facility and transferring out of the facility. Plaintiff is very familiar with the strip search procedure as he is subjected to frequent strip searches due to previously being housed in the RH cell house. Plaintiff states that he was strip searched each time he went outside to the segregation yard and returned to the RH cell house from the yard. The strip search policy requires all inmates leaving and entering the RH cell house to be strip searched. While housed at EDCF, Plaintiff's record shows a lengthy history of disciplinary issues. It includes, but is not limited to, the following disciplinary reports: having dangerous contraband, having less dangerous contraband, disobeying orders, insubordination, fighting, battery, possessing sexually explicit materials, unauthorized dealing or trade, use of stimulants, threatening or intimidation of other persons, and interference with cell operator's visibility. (Doc. 19, Exh. 1.)

On October 27, 2016, pursuant to a court order, Plaintiff was to be transported to Reno County for court proceedings. The EDCF policy required Plaintiff to be strip searched as he was leaving the RH cell house. (Doc. 19, Exh. C.) Defendant Goad took Plaintiff to a strip out cage. Goad searched Plaintiff's clothes after they were removed. Plaintiff's body parts were inspected pursuant to the policy. Part of the strip out procedure is for inmates to bend down, squat, spread their buttocks and then cough. (Doc. 19, Exhibit D, p. D-5). The policy does not indicate the depth an inmate is required to squat for successful completion of the search. Plaintiff attempted to perform this part of the search. After doing so, Plaintiff stood up and Goad stated that his squat was not good enough and that he needed to squat further down. Goad directed Plaintiff to redo

the squat. Plaintiff attempted to do it again and immediately felt a sharp pain in his lower back. Goad again told Plaintiff that he had not squatted low enough and needed to squat down to the floor. Plaintiff informed Goad that "that's not right" and that he couldn't squat as low as Goad wanted him since he had a back injury. (Doc. 38 at 7.) Plaintiff allegedly described the extent of his back injury. Defendant Patterson had been observing the strip search from outside the door. Plaintiff asked for assistance from Patterson in resolving the problem. Patterson stepped close to the door and Plaintiff explained his medical condition that kept him from squatting low to the ground. Patterson did not respond. Goad then instructed Plaintiff to perform the squat again. Plaintiff again attempted to squat down. While Plaintiff was squatting down, Plaintiff alleges that Patterson stated, "come on you can drop it further than that." Plaintiff immediately straightened and allegedly observed Patterson and Goad smiling. (Docs. 26 at 4-5; 38 at 5-9.)

Plaintiff started yelling that he was being sexually harassed in the cell. Plaintiff requested a grievance form and a pencil. Patterson gave him a form. Plaintiff allegedly stated that he was going to write a grievance on Patterson and Goad. Defendant Carrell then arrived and asked what the problem was. Plaintiff explained that he had a preexisting back injury and could not squat fully to the ground. Carrell left the area and spoke with medical staff. Carrell verified that Plaintiff had a back injury and "medical restrictions." (Doc. 38 at 11.) The record reflects that Plaintiff's medical restriction states that he cannot climb stairs. (Doc. 36, Exh. C.) Carrell told Plaintiff that he would be required to perform the squat as far as he could go down. At that time, Defendants Goad and Patterson did not consider the strip search completed due to Plaintiff's failure to comply

with the squat portion of the search.[2]  (Doc. 19, p. 2).  Goad stated that Plaintiff barely bent his knees during the strip search.  (Doc. 19 at 2.)

Plaintiff complied with Carrell's request to again squat during the strip search and again felt extreme pain.  Plaintiff was then transferred by Carrell and an unnamed officer to the Admissions & Discharge ("A&D") area of EDCF to be transported to Reno County.  Plaintiff was locked in a single man holding cell in the A&D area.  Carrell and the unnamed officer then left.  Plaintiff states that the cell only contained a single bench seat and that there was "never an opportunity to obtain any contraband or any inmate around that could give [him] any contraband."  (Doc. 38 at 12.)  About 20 to 30 minutes later, Defendant Riddle, who works in the A&D area of EDCF, came by the holding cell.  Riddle told Plaintiff to submit to the strip search in accordance with EDCF policy.  EDCF policy requires all inmates being transferred from A&D to another facility to be strip searched before leaving the facility.  Plaintiff informed Riddle that he had already been subject to a strip search and that he had been under constant observation and isolated from other inmates in the interim.  Riddle told Plaintiff that it was EDCF policy and that he must be strip searched.  Plaintiff then complied with Riddle's request and does not allege any additional back pain associated with having to squat during this strip search.  (Docs. 26 at 6; 38 at 10-13.)

From October 27, 2016 to November 17, 2017, Plaintiff alleges he suffered extreme shooting pains in his lower back that extended down his legs to his feet as well as tingling numbness in his legs.  Plaintiff also alleges that he began to experience severe anxiety requiring treatment in the form of counseling and anti-anxiety medication.

---

[2] Plaintiff attempts to controvert this fact by stating that he fully performed the strip search on the first attempt. However, Plaintiff's affidavit states that he performed the squat as much as he could due to his back injury.  (Doc. 38 at 8.)  Plaintiff has not controverted the fact that Goad and Patterson did not consider the strip search completed.

On October 27, Goad filled out a disciplinary report stating that Plaintiff disobeyed orders and interfered with official duties after failing to comply with the strip search. Goad stated that Plaintiff "refused to give a full squat by barely bending his knees. This is an insufficient [sic] to the proper strip search procedure and creates a security risk if he were to be escorted." (Doc. 19, Exh. E at 1.) Plaintiff was served with a copy of the disciplinary report on November 21, 2016. (Doc. 19, Exh. E at 4.) A hearing on the disciplinary violation was held on November 28, 2016. Plaintiff testified that he "did squat as far as I could." (*Id.* at 14.) After hearing the testimony, the hearing officer found Plaintiff not guilty of the violations. The hearing officer stated as follows: "Based on testimony from the SST supervisor and the offender did attempt 3 or more times to perform the deep knee bend and squat. This hearing officer finds offender not guilty of the charges of disobeying orders. Offender not guilty of interference of official duties as the strip out process did [not] cause any substantiated delay." (*Id.*; *see also* Docs. 26 at 8; 38 at 13-14.)

Plaintiff's medical records show that Plaintiff had a pre-existing back condition that was diagnosed in 2014. Plaintiff was taking lipoic acid, Tylenol, and Ibuprofen for that condition. Plaintiff's medical records also show that Plaintiff had serious mental health issues including anxiety that existed before October 2016.[3] On November 1, 2016, Plaintiff denied any injuries. (Doc. 19, Sealed Exhibit I, p. I-236). The medical records further show that on November 2, 2016, Plaintiff reported no concerns or needs during a medical rounds visit. (Doc. 21, Sealed Exhibit I, p. I-238). On November 8, 2016, Plaintiff refused treatment for his chronic conditions. (Doc. 21, Sealed Exhibit I, p. I-240). On November 10, 2016 and November 14, 2016, Plaintiff reported no concerns or needs during the medical rounds visits. (Doc. 21, Sealed Exhibit I, pp. I-242 and I-245).

---

[3] Plaintiff attempts to controvert this statement by stating that his condition was in remission. Plaintiff does not cite to any medical records to support this medical statement.

Plaintiff attempts to controvert this medical evidence by asserting that he had sick calls for back and shoulder pain. Those calls, however, were allegedly made beginning January 26, 2017. (Doc. 38 at 3.)

On March 10, 2017, Plaintiff filed a sexual abuse grievance relating to the October 27, 2016 incident. Plaintiff's grievance was determined to be unfounded. On May 8, 2017, Plaintiff's grievance was reviewed by Defendant Heimgartner who determined that no further action is necessary. On May 21, 2017, Plaintiff appealed to the Secretary of Corrections. On May 30, 2017, the appeal was denied. (Doc. 13, Exh. A.)

Plaintiff filed this action on August 15, 2017. (Doc. 1.) Judge Crow screened Plaintiff's complaint and entered an order requiring Plaintiff to show cause why the complaint should not be dismissed as it failed to state a claim. (Doc. 4.) Alternatively, Judge Crow allowed Plaintiff to amend. Plaintiff filed an amended complaint and later received authorization to file a second amended complaint. (Doc. 12, 13.) The court ordered the Kansas Department of Corrections to file a *Martinez* report regarding the allegations in Plaintiff's amended complaint. (Doc. 6.) On March 27, 2018, the *Martinez* report was filed. (Doc. 19.)

On May 8, Defendants moved to dismiss or, in the alternative, for summary judgment. (Doc. 25.) Plaintiff filed a response brief on July 18, after receiving an extension. (Doc. 38.) Additionally, Plaintiff filed exhibits in support of his second amended complaint. (Doc. 36, 37.) The exhibits include sick call requests, Plaintiff's medical restriction regarding stair climbing, and an affidavit. (Doc. 36.) The affidavit is essentially a verbatim recitation of the facts set forth in Plaintiff's response. (Doc. 36, 38.) Defendants filed a reply brief on August 30.

On October 31, this court notified the parties that it was treating the motion as one for summary judgment as both parties referenced materials outside the pleadings. (Doc. 58.) The

court provided Plaintiff with an opportunity to amend his response and include additional exhibits. Plaintiff did not file a supplemental brief in response to the court's order. Therefore, the motion is now ripe for decision.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

As noted previously, Plaintiff is proceeding pro se. A pro se litigant's pleadings are to be liberally construed and held to a less stringent standard than pleadings by represented parties. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court does not become an advocate for the pro se litigant, and "will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). "Plaintiff's pro se status, in and of itself, does not prevent this Court from granting summary judgment." *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214-15 (D. Kan. 2006) (citing *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

### III. Analysis

Plaintiff's second amended complaint sets forth several claims against Defendants under 42 U.S.C. § 1983. Plaintiff alleges that Defendants' actions violated his Fourth Amendment rights to be free from unreasonable searches, his Eighth Amendment right to be free from cruel and unusual punishment, his First Amendment rights by retaliating against him for filing a grievance, and the Equal Protection Clause for different treatment of prisoners.

Defendants move for summary judgment on all claims. The arguments will be addressed in turn.

### A. Exhaustion

Prisoners are required to exhaust administrative remedies before bringing suit. 42 U.S.C. § 1997e(a). Exhaustion pursuant to § 1997e(a) requires "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim ... for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). There are two aspects of the exhaustion requirement. They are: (1) "the administrative grievance must have alleged the same facts as the court complaint;" and (2) "the plaintiff must follow the prison's grievance procedures." *Williams v. Wilkinson*, 659 F. App'x. 512, 514 (10th Cir. 2016) (citing *Woodford*, 548 U.S. at 90–91).

Defendants claim that Plaintiff has failed to exhaust his claims because his grievance was filed pursuant to Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 *et seq.*, and did not raise the issues that are set forth in his second amended complaint. (Doc. 26 at 12.) The KDOC requires that all inmates avail themselves of the grievance procedure set forth in K.A.R. § 44-15-102 which includes four steps. First, an inmate must attempt informal resolution. Second, the inmate submits

a grievance report to the team member. Third, the inmate then submits the grievance to the warden. Finally, the inmate appeals to the Secretary of Corrections. *Barnett v. Kansas*, No. 16-3008-SAC-DJW, 2016 WL 3618655, at *3 (D. Kan. July 6, 2016). Defendants argue that Plaintiff's grievance was a PREA complaint and that such a complaint does not satisfy the prison grievance process. (Doc. 47 at 5.) Defendants cite to *Howard v. Rodgers*, No. 17-3019-DDC-TJJ, 2018 WL 3122175, at *4 (D. Kan. June 26, 2018), in support of their position. In *Howard*, the court determined that although the plaintiff argued that he followed procedures under PREA, the plaintiff failed to establish those facts. The court also cited other decisions that stated PREA's procedures do not excuse the failure to exhaust. *See id.*

In this case, although Plaintiff filed a grievance that he indicated was a "sexual abuse grievance", the uncontroverted facts show that he fully exhausted that grievance as set forth in K.A.R. § 44-15-102.[4] Plaintiff's grievance was submitted to the team member, submitted to the warden and then appealed to the Secretary of Corrections. Therefore, the court finds that Plaintiff's grievance filed in March 2017 has been fully exhausted as required under the regulation.

In addition to that grievance, Plaintiff alleges that he filed a grievance in October 2016. Plaintiff, however, has not established that he fully exhausted that grievance as he has only alleged that he submitted an initial grievance. Therefore, the allegations in the October 2016 grievance[5], to the extent they were different than the allegations in the March 2017 grievance, have not been exhausted.

Defendants also argue that Plaintiff did not raise the claims at issue in this action in his grievance submitted in March 2017. As stated, the grievance must have alleged the same facts as

---

[4] Plaintiff utilized the regular grievance forms in filing his grievance. Plaintiff, however, hand wrote "sexual abuse grievance" on the top of the Kansas Department of Corrections Inmate Grievance Form. (Doc. 19, Exh. G at 5.)
[5] Plaintiff makes no attempt to set forth the contents of the grievance allegedly filed in October 2016.

the complaint. *Williams*, 659 F. App'x. at 514. Plaintiff's grievance sets forth all of the allegations regarding the strip searches on October 26, 2017. Plaintiff's grievance, however, does not allege that the disciplinary action initiated by Goad was done in retaliation for his grievance. Therefore, EDCF was never on notice that Plaintiff believed that the disciplinary action was done in retaliation for filing his grievance. *See Cleveland v. Harvanek*, 607 F. App'x 770, 772–73 (10th Cir. 2015). Plaintiff's First Amendment retaliation claim against Goad is therefore subject to dismissal for failing to exhaust his administrative remedies.

Defendants' motion for summary judgment on Plaintiff's First Amendment claim is granted for failure to exhaust administrative remedies. The court finds that all other claims alleged in the second amended complaint have been exhausted.

## B. Qualified Immunity

Defendants move for summary judgment on the basis that they are entitled to qualified immunity on Plaintiff's constitutional claims. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### i.    Fourth Amendment

Plaintiff alleges that the strip searches violated his Fourth Amendment right to be free from unreasonable searches. A strip search of an inmate may implicate both "Fourth Amendment privacy interests and Eighth Amendment Cruel and Unusual Punishment concerns." *Harris v. Rocchio*, 1997 WL 787185, *2 (10th Cir. Dec. 24, 1997); *see also Hayes v. Marriott*, 70 F.3d 1144, 1146-47 (10th Cir. 1995). Plaintiff has alleged claims under both Amendments.

Plaintiff contends that Defendants Goad, Patterson and Carrell violated his Fourth Amendment right to be free from unreasonable searches by requiring Plaintiff to complete multiple strip searches. Plaintiff further contends that Defendant Riddle violated Plaintiff's Fourth Amendment right by strip searching him again in A&D.

Although the Supreme Court has foreclosed any Fourth Amendment challenge to the search of a prison cell, the court "has recognized a qualitative difference between property searches and searches of a prisoner's person." *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989). The traditional Fourth Amendment prohibition against unreasonable searches extends to personal body searches of inmates. *Cameron v. Hendricks*, 942 F. Supp. 499, 502 (D. Kan. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search of a pretrial detainee in *Bell*.[6] Factors to be considered in the balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted. *Bell*, 441 U.S. at 559. In *Bell*, the Supreme Court held that visual body-cavity strip searches without probable cause were reasonable in light of correctional security needs. *Id.* at 559; *see also Leek v. Miller*, 698 F.

---

[6]  This court has utilized the *Bell* test in evaluating strip searches of convicted prisoners. *See Noriega v. Cummings*, No. 95-3292-JTM, 1998 WL 289055, at *6–7 (D. Kan. May 7, 1998).

App'x 922, 926 (10th Cir. 2017). "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 322–23 (2012).

<u>Search at RH cell house</u>.  Plaintiff's first claim under the Fourth Amendment asserts that the strip search at the RH cell house was unconstitutional because Plaintiff was required to perform the search four times.  Plaintiff does not argue that a strip search upon his leaving the facility was unnecessary or unjustified.  *See Noriega v. Cummings*, No. 95-3292-JTM, 1998 WL 289055, at *6–7 (D. Kan. May 7, 1998) (finding prison policy subjecting prisoners to strip search upon leaving and entering segregation to be reasonable based on legitimate penological interests.)  Nor does he argue that the squat and cough policy is somehow unreasonable.  The Supreme Court has recently acknowledged that this type of procedure is reasonable and designed to uncover contraband:

> Petitioner acknowledges that correctional officers must be allowed to conduct an effective search during the intake process and that this will require at least some detainees to lift their genitals or cough in a squatting petition. These procedures, similar to the ones upheld in *Bell*, are designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.

*Florence*, 132 S. Ct. at 1520.

Plaintiff, however, contends that Goad and Patterson's actions in making him repeat the strip search procedure were unreasonable.  The record, however, clearly shows that Goad and Patterson had grounds to believe that Plaintiff had not properly complied with the strip search procedure because he did not squat to the proper depth.  Turning to the factors, the court finds that the search was reasonable.  With respect to conducting the search, Plaintiff was being searched as he was leaving the RH unit, which was a secured housing unit.  Clearly, there is a security interest in ensuring that prisoners who are being transferred to another unit do not have contraband.

Plaintiff's disciplinary record shows that Plaintiff has been found to have "dangerous contraband" on prior occasions. (Doc. 19, Exh. A at 5.) Moreover, the search was conducted by a male prison guard. Other than the presence of a second male guard, there is no indication that the searches were performed in public. Rather, Plaintiff was in a cell that was specifically designated as a strip out cage. Therefore, the remaining issue is whether repeated requests to squat render the search unreasonable.

The Supreme Court has emphasized that

preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of convicted prisoners… Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel…Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee...the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (internal citations omitted).

Therefore, with respect to issues involving "internal order and discipline" or "institutional security," courts should accord "wide-ranging deference" to prison officials, unless there is "substantial evidence in the record to indicate the officials have exaggerated their response." *Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 547–48) (internal citations omitted). Based on the uncontroverted facts, Goad and Patterson did not believe that Plaintiff had properly completed the search. Plaintiff does not properly dispute this fact. Plaintiff contends that he had a medical excuse that prevented him from complying with Goad's requests. The record shows that Goad was requiring Plaintiff to "squat parallel to [the] ground" in order to comply with the strip search and to alleviate security concerns. (*See* Doc. 19, Exh. E at 1, 14.) Plaintiff does not state that he squatted to the depth required by Goad but instead continues to offer medical excuses as to why he could not comply. (*See* Doc. 19, Exh. E (disciplinary testimony) and G (grievance)). Moreover,

although Plaintiff claimed that he had a back injury, there is no evidence to support a finding that Plaintiff had a medical restriction regarding his ability to squat. The only medical restriction pertained to climbing stairs. (Doc. 36, Exh. C.) The Supreme Court has held that it is reasonable to require prisoners "to expose their body cavities for visual inspection as a part of a strip search…" *Bell*, 441 U.S. at 558. Therefore, the decision to require Plaintiff to properly complete the strip search procedure to ensure legitimate safety concerns was reasonable. Contrary to Plaintiff's assertions, Plaintiff was not subjected to four strip searches but only one strip search in this particular instance. In completing that single search, Plaintiff was required to repeat the squat maneuver several times because he failed to perform it properly.

Defendant Carrell's actions also did not violate Plaintiff's Fourth Amendment rights. At the time Carrell arrived, he was informed that Plaintiff had not properly completed the squat. Carrell verified Plaintiff's medical records and then asked Plaintiff to complete the squat as far as he was able to. This request was reasonable in light of legitimate penological interests of ensuring that the prisoners have been sufficiently searched prior to leaving the facility.

Moreover, even if the actions violated Plaintiff's Fourth Amendment rights, Plaintiff has not shown that this right is clearly established. Plaintiff has failed to identify any authority from the Tenth Circuit or the Supreme Court that states that an officer has violated a prisoner's Fourth Amendment right by requiring the prisoner to repeat a search until it is completed correctly . *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018) ("Ordinarily, to establish that a proposition of law is clearly established in this circuit, the plaintiff must rely on an on-point precedent of this court or the Supreme Court or a clear consensus of a significant number of fellow circuit courts.")

Therefore, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim pertaining to the searches conducted upon leaving the RH cell house is granted.

Search at A&D.  Plaintiff also challenges the strip search performed by Riddle when Plaintiff left A&D.  KDOC's policy requires inmates to be searched upon leaving A&D.  Essentially, Plaintiff claims that being subjected to two searches, one leaving the RH cell house and another one leaving A&D, is unreasonable and violates his Fourth Amendment rights.  Plaintiff brings this claim against Riddle and Heimgartner.  Plaintiff's claim against Heimgartner is based upon his role as a supervisor and will be addressed separately.

Defendants argue that the strip search at A&D was reasonable because it was done according to the policy and that the prison has a legitimate penological interest in security.  Plaintiff does not dispute that there is a legitimate interest in security concerning prisoners who are transferred but contends that the second search was not reasonable because he had already been searched and had been under constant supervision at A&D or confined in a single cell.  Therefore, according to Plaintiff's reasoning, that justification is not sufficient to warrant a second strip search as the concerns regarding security would have been addressed in the first search.  It is also important to note that the second search was conducted in a single cell in the presence of Riddle.  There are no facts to suggest that any other inmate witnessed the strip search.  Nor do the facts suggest that the search was improper in the way it was performed.

A regulation, or policy, is valid if it is reasonably related to legitimate penological interests.  *Dunn*, 880 F.2d at 1194.  The maintenance of institutional security is an "essential goal[] that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees."  *Bell*, 441 U.S. at 546.   The argument here is whether the policy, as applied to Plaintiff who was already subjected to one search, is "an unnecessary or unjustified response to problems of jail security."  *Florence*, 566 U.S. at 323.  Plaintiff has failed to introduce any facts in the record that would support a finding that Riddle's enforcement of the policy is an unnecessary

or unjustified response to a legitimate interest in security concerns. There is no dispute that the prison has an interest in security when transporting a prisoner to another facility. *See Shapiro v. Rynek*, 212 F. Supp. 3d 990, 996 (D. Colo. 2016) ("the Court does not doubt the particular need for safety when transporting prisoners outside the walls of the prison."); *see also Daughtery v. Harris*, 476 F.2d 292 (10th Cir. 1973).

The question is whether that legitimate interest is eliminated when an inmate has been subjected to a search and then searched a second time after being transported to a different building in the prison. Riddle was not involved in the first search and there are no facts that support a finding that Riddle had a discussion with any of the defendants involved in the first search. Riddle did not come into contact with Plaintiff until after Plaintiff had been left in the cell by Carrell. Plaintiff's statement of facts state that he was in the cell for 20 or 30 minutes after this occurred. The uncontroverted facts do not support a finding that an objective officer in Riddle's position knew that Plaintiff could not have obtained contraband. Plaintiff's statement merely stated that he told Riddle that he had been isolated from other inmates. This court must "must defer to the judgment of correctional officials unless the record contains **substantial evidence** showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence*, 566 U.S. at 323. Given the facts here, the court finds that the second strip search did not violate Plaintiff's constitutional rights. The search was conducted privately and not in the view of other inmates. There is no evidence that Riddle physically touched Plaintiff or abused him. There is no evidence that Riddle had knowledge that Plaintiff could not have obtained contraband at some point between the two searches. Therefore, the second strip search was not an unnecessary response to the legitimate interest of security at the prison and in transferring Plaintiff to another facility.

What Plaintiff is really suggesting is that the prison's search policy should be re-written to preclude repeated searches when a prisoner has not been in contact with other inmates or sources of contraband. While that might be a reasonable policy, it would place substantially higher burdens on prison staff to monitor inmates between searches to ensure that no potential existed for the inmate to obtain contraband. It would also place additional burdens on prison staff to inquire of other staff members to determine whether a search is required or excused by lack of opportunity to acquire contraband. Plaintiff has failed to meet his burden to show that the policies at issue in this case are so unnecessary or unjustified as to overcome the deference due correctional officials in ensuring the safety and security of the prison.

Moreover, even if the second strip search violated Plaintiff's Fourth Amendment rights, the court finds that Plaintiff has not shown the right to be clearly established. In order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) (quoting *V–1 Oil Co. v. Means*, 94 F.3d 1420, 1423 (10th Cir.1996)).

Defendants cite to *Jones v. Harrison*, 864 F. Supp. 166, 169 (D. Kan. 1994), for the proposition that a second strip search is reasonable when conducted pursuant to regulation and related to the need to maintain order. (Doc. 26 at 20.) *Jones* is somewhat different from this case. In *Jones*, the prisoner was strip searched once prior to leaving one facility. The prisoner was then transported to another facility. While at that new facility, the prisoner was strip searched prior to being placed in segregation. Additionally, the prisoner had "a leadership role in planning a

potentially violent prison disruption, and he had been transferred with a number of inmates." *Id.* The facts in *Jones* are not sufficiently similar to this case as there were additional facts in the record beyond a general interest in maintaining security. However, *Jones* would not put an officer on notice that more than one strip search is an unreasonable response to a prison's legitimate interest in security concerns under the circumstances of the instant case.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1251 (10th Cir. 1999) (quotations omitted). The right at issue here is whether a prisoner may be subjected to more than one strip search, conducted in private, which is based on security concerns when being transferred between different housing units and to a different facility, when the officer is informed by the prisoner that he was in isolation in the intervening time period.

Plaintiff has identified one case, *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012), in support of his position that this right is clearly established. The facts in *Jean-Laurent* involved both strip searches and the use of excessive force, not a policy of strip searching due to transfers. Moreover, the case does not support a finding that the right at issue in this case was clearly established in this Circuit. The Tenth Circuit has previously held that a strip search prior to releasing prisoners to the United States Marshal did not violate the prisoners' Fourth Amendment rights because of the security concerns at the penitentiary. *Daughtery*, 476 F.2d at 294-95.

Although this case was pre-*Bell*, it was cited with approval in *Bell*. *Bell*, 441 U.S. at 560 n.41. The Tenth Circuit has also held that a prisoner may not be subjected to a non-private strip search without sufficient security justification and a justification for a public search. *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002). The Tenth Circuit has also held that "a detainee who is not placed in the general prison population cannot be strip searched if the searching officer does not at least have reasonable suspicion that the detainee possesses concealed weapons, drugs, or contraband." *Archuleta v. Wagner*, 523 F.3d 1278, 1286 (10th Cir. 2008).

Plaintiff has cited no authority to show that it would be clear to an officer in Riddle's position that his conduct was unlawful in conducting the strip search. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (When a § 1983 defendant raises the defense of qualified immunity on summary judgment, plaintiff has the burden of showing that the official violated a constitutional or statutory right; and that the constitutional or statutory right was clearly established when the alleged violation occurred.) None of the authority cited above would have put Riddle on notice that subjecting Plaintiff to a second strip search was unlawful. The search was conducted in private, Plaintiff is a prisoner and not a detainee, the prison has a legitimate interest in security concerns when transferring prisoners, and Riddle's only information concerning whether Plaintiff had interacted with other prisoners came from Plaintiff himself.

Therefore, Riddle's motion for summary judgment on the basis of qualified immunity is granted.

ii.      **Eighth Amendment**

Plaintiff also alleges that Defendants violated his right to be free from cruel and unusual punishment when they required him to repeatedly attempt the squat maneuver during his strip searches at the RH cell house. Plaintiff contends that Defendants were deliberately indifferent to

his medical needs and the searches resulted in additional injury to his back and caused anxiety. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). At this time, the undisputed facts show that Plaintiff did have a preexisting low back injury that required medication and treatment.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1304-05 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). The test requires that Defendants "possess an actual consciousness of a risk to prisoner health and safety." *Toevs v. Milyard,* 563 F. App'x 640, 645 (10th Cir. 2014).

The undisputed facts show that Defendants did not have knowledge of an excessive risk to Plaintiff's health. The facts clearly show that Plaintiff did not have a medical restriction limiting his ability to squat. Moreover, there is no indication in the record that Plaintiff's injury was so obvious that Defendants were aware of the risk to his health during the strip search. Although Plaintiff complained that he had a back injury, Plaintiff has failed to introduce any evidence that he in fact had a restriction that limited him from squatting. The only restriction in the record indicated that he was limited in stair climbing. Once Plaintiff's back injury was confirmed by Carrell, Plaintiff was only required to squat as low as he could go. Additionally, the record clearly shows that Plaintiff made no medical complaint in the few months following the strip search.

An Eighth Amendment claim must "involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). These allegations do not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment. *See Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (to violate the Eighth Amendment, strip search must involve abuse or unnecessary force). Plaintiff has failed to show that Defendants acted with the requisite state of mind.

Plaintiff also asserts an Eighth Amendment claim based on the perceived "sexual innuendo" resulting from Defendant Patterson stating, "come on you can drop it further than that." Plaintiff contends that the statement, in connection with the repeated requests to squat, are sexual harassment in violation of the Eighth Amendment. "Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alavarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats

and verbal taunts do not violate the Eighth Amendment."); *Ragland v. Romer*, 1996 WL 1797, *2 (10th Cir. Jan. 3, 1996), *cert. denied*, 518 U.S. 1025 (1996) ("Courts have consistently held that acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."). Plaintiff's allegations do not suggest a show of deadly force, thus failing to create "terror of instant and unexpected death."

Even if Plaintiff could show that Patterson's conduct was objectively serious enough to constitute an Eighth Amendment violation, Plaintiff has failed to show that such violation was clearly established in this Circuit. *See Smith v. Trapp*, No. 14-3220-JAR-JPO, 2018 WL 587230, at *5 (D. Kan. Jan. 29, 2018), *reconsideration denied*, No. 14-3220-JAR-JPO, 2018 WL 3145429 (D. Kan. June 27, 2018) (Plaintiff failed to show that verbal abuse during a strip search without physical contact constituted an Eighth Amendment violation.)

### iii.    Equal Protection

With respect to Plaintiff's Equal Protection claim, Plaintiff contends that Heimgartner has violated his rights by treating prisoners housed in restrictive housing different than those prisoners housed in restrictive housing at other KDOC facilities. Essentially, Plaintiff argues that he has been housed at other KDOC facilities at different times. During those times, Plaintiff was only subjected to a single strip search when he was moved from the restrictive housing unit to the A&D unit before transport. (Doc. 38 at 16.) Plaintiff argues that by treating prisoners at other facilities differently, Heimgartner, who drafted the policies, has violated his Equal Protection rights.

Heimgartner contends that he is entitled to qualified immunity on this claim as Plaintiff has failed to establish that he has any control over the other KDOC facilities. While Plaintiff has set forth facts supporting different treatment at other facilities, Plaintiff has failed to allege any facts in his second amended complaint or in his response to Defendants' motion that Heimgartner has

authority in other KDOC facilities. In the absence of allegations that Heimgartner had any authority over strip search procedures in other KDOC facilities, Heimgartner cannot have violated the Equal Protection clause. *Leatherwood v. Rios*, 705 F. App'x 735, 738–39 (10th Cir. 2017).

Therefore, Defendants' motion for summary judgment on Plaintiff's Equal Protection claim is granted.

## C. Heimgartner

Heimgartner moves for summary judgment on the basis that he was not personally involved in the strip searches.

A plaintiff may succeed in a § 1983 suit against a defendant-supervisor by showing the following: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199–1200. Because the court has determined that Plaintiff's constitutional rights were not violated by the prison's policies allegedly implemented by Heimgartner, Plaintiff cannot establish the last two elements.

Therefore, Heimgartner's motion for summary judgment on the basis of qualified immunity is granted.

## D. Official Capacity Claims

Defendants move for dismissal of the official capacity claims on the basis that the claims are barred by the Eleventh Amendment. Claims for monetary damages against a state official in his official capacity are construed as claims against the State and are therefore barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The remaining claims

against Defendants in their official capacities are dismissed as Plaintiff failed to show a constitutional violation on those claims.

### IV. Conclusion

Defendants' Motion to Dismiss, or in the alternative motion for summary judgment. (Doc. 25) is GRANTED.

**IT IS SO ORDERED** this 7th day of January, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE