# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: 5:17−cv−03139−JWB−KGS

McCoy (ID 76894) v. Heimgartner et al
Assigned to: District Judge John W. Broomes
Referred to: Magistrate Judge K. Gary Sebelius
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 08/15/2017
Date Terminated: 01/07/2019
Jury Demand: Plaintiff
Nature of Suit: 555 Habeas Corpus (Prison Condition)
Jurisdiction: Federal Question

**Plaintiff**

**DeRon McCoy, Jr.**
*76894*

represented by **DeRon McCoy, Jr.**
76894
EL DORADO Correctional
Facility−Central
PO Box 311
El Dorado, KS 67042
Email: KDOC_court_file_edcf@ks.gov
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Defendant**

**James Heimgartner**
*Warden, El Dorado Correctional*
*Facility, in his individual and official*
*capacity*

represented by **Dennis D. Depew**
Office of Attorney General − Kansas
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612−1597
785−368−8426
Fax: 785−291−3767
Alternative Phone:
Cell Phone: 620−332−7180
Email: dennis.depew@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 11605*
*Bar Status: Active*

**Defendant**

**(fnu) Goad**
*S.O.R.T. Member, El Dorado*
*Correctional Facility, in his individual*
*and official capacity*

represented by **Dennis D. Depew**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 11605*
*Bar Status: Active*

**Defendant**

**(fnu) Patterson**
*First Sergeant, El Dorado Correctional
Facility, in his individual and official
capacity*

represented by **Dennis D. Depew**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 11605*
*Bar Status: Active*

**Defendant**

**(fnu) Carrell**
*First Sergeant, El Dorado Correctional
Facility, in his individual and official
capacity*

represented by **Dennis D. Depew**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 11605*
*Bar Status: Active*

**Defendant**

**(fnu) Riddle**
*Correctional Officer, El Dorado
Correctional Facility, in his individual
and official capacity*

represented by **Dennis D. Depew**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 11605*
*Bar Status: Active*

**Interested Party**

**Kansas Department of Corrections**

represented by **Jeffrey L. Cowger**
Kansas Department of Corrections −
Topeka
714 SW Jackson, Suite 300
Topeka, KS 66603
785−296−1964
Fax: 785−296−0014
Alternative Phone:
Cell Phone:
Email: jeff.cowger@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14431*
*Bar Status: Active*

**Joni S. Cole**
El Dorado Correctional Facility
PO Box 311
El Dorado, KS 67042
913−322−2007
Fax: 316−322−2018
Alternative Phone:
Cell Phone: 316−322−2007
Email: jonisuz@gmail.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number: 24798*
*Bar Status: Active*

**Linden G. Appel**
325 SW Yorkshire Road
Topeka, KS 66606
785−228−9304
Fax: 785−207−6097
Alternative Phone: 785−228−9304
Cell Phone:
Email: carpediem78@cox.net
*TERMINATED: 10/23/2018*
*LEAD ATTORNEY*
*Bar Number: 09519*
*Bar Status: Retired*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/15/2017 | 1 | | COMPLAINT filed by Plaintiff DeRon McCoy, Jr. (Attachments: # 1 Exhibit A) (smnd) (Entered: 08/15/2017) |
| 08/15/2017 | 2 | | MOTION for Leave to Proceed in forma pauperis by Plaintiff DeRon McCoy, Jr. (referred to Magistrate Judge David J. Waxse) (Attachments: # 1 Inmate Account Statement) (smnd) (Entered: 08/15/2017) |
| 08/18/2017 | 3 | | ORDER ENTERED: Plaintiff's motion for leave to proceed without prepayment of fees 2 is granted because plaintiff's trust fund account statement shows that he has insufficient funds to pay an initial partial filing fee. Notwithstanding this grant of leave, plaintiff is required to pay the full amount of the filing fee and is hereby assessed $350.00. Plaintiff is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of plaintiff shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10.00 until the filing fees are paid. 28 U.S.C. § 1915(b)(2). The clerk is to transmit a copy of this order to plaintiff, to the finance office at the institution where plaintiff is currently confined, and to the court's finance office. Entered by Magistrate Judge David J. Waxse on 08/18/17. Mailed to pro se party DeRon McCoy, Jr. by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 08/18/2017) |
| 10/03/2017 | | | MINUTE ORDER terminating referral to magistrate judge. Magistrate Judge David J. Waxse no longer assigned to case. Signed by deputy clerk on 10/3/17. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(cs) (Entered: 10/03/2017) |
| 12/22/2017 | 4 | | MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE ENTERED: Plaintiff is granted until January 22, 2018, in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed. Plaintiff is also granted until January 22, 2018, in which to file a complete and proper Amended Complaint |

| | | |
|---|---|---|
| | | to cure all the deficiencies. Signed by U.S. Senior District Judge Sam A. Crow on 12/22/17. Mailed to pro se party Deron McCoy, Jr. by regular mail. (smnd) (Entered: 12/22/2017) |
| 01/24/2018 | <u>5</u> | MOTION to Amend <u>1</u> Complaint by Plaintiff DeRon McCoy, Jr. (Attachments: # <u>1</u> Amended Complaint) (smnd) (Entered: 01/24/2018) |
| 01/26/2018 | <u>6</u> | ORDER ENTERED: Plaintiff's Motion to Amend <u>5</u> is granted. The clerk of the court shall prepare waiver of service forms pursuant to Fed. R. Civ. P. 4(d) to be served upon Defendants at no cost to Plaintiff. The report required herein shall be filed no later than sixty (60) days from the date of this Order, and the answer shall be filed within thirty (30) days following the receipt of that report by counsel for Defendants or the date set forth in the waiver of summons, whichever is later. The clerk of the court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the Martinez Report. Upon the filing of that report, KDOC may move for termination from this action. Signed by U.S. Senior District Judge Sam A. Crow on 01/26/18. Mailed to pro se party Deron McCoy, Jr. by regular mail. (smnd) (Entered: 01/26/2018) |
| 01/26/2018 | <u>7</u> | FIRST AMENDED COMPLAINT filed by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 01/26/2018) |
| 01/29/2018 | | WAIVERS OF SERVICE OF SUMMONS ISSUED as to Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner and (fnu) Patterson. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 01/29/2018) |
| 02/06/2018 | <u>8</u> | NOTICE of Change of Address by DeRon McCoy, Jr #76894: now at Eldorado Correctional Facility, PO Box 311 Eldorado, KS 67042 (daw) (Entered: 02/06/2018) |
| 02/08/2018 | <u>9</u> | MOTION to Amend <u>7</u> First Amended Complaint by Plaintiff DeRon McCoy, Jr. (Attachments: # <u>1</u> Second Amended Complaint) (smnd) (Entered: 02/08/2018) |
| 02/08/2018 | <u>10</u> | WAIVER OF SERVICE OF SUMMONS Returned Executed by Defendant (fnu) Patterson; waiver sent on 1/29/2018, answer due 3/30/2018 (smnd) (Entered: 02/12/2018) |
| 02/13/2018 | <u>11</u> | WAIVER OF SERVICE OF SUMMONS Returned Executed by Defendant James Heimgartner; waiver sent on 1/29/2018, answer due 3/30/2018 (smnd) (Entered: 02/13/2018) |
| 02/13/2018 | <u>12</u> | ORDER ENTERED: Plaintiff's Motion to Amend <u>9</u> is granted. The Clerk is directed to docket Plaintiff's Second Amended Complaint at Doc. 9−1. The clerk of court shall prepare a waiver of service form pursuant to Fed. R. Civ. P. 4(d) to be served upon Defendant CO Riddle at no cost to Plaintiff. Signed by U.S. Senior District Judge Sam A. Crow on 02/13/18. Mailed to pro se party Deron McCoy, Jr. by regular mail. (smnd) (Entered: 02/15/2018) |
| 02/13/2018 | <u>13</u> | SECOND AMENDED COMPLAINT filed by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 02/15/2018) |
| 02/15/2018 | | WAIVER OF SERVICE OF SUMMONS ISSUED as to Defendant (fnu) Riddle. (This is a TEXT ENTRY ONLY. There is no.pdf document associated |

| | | |
|---|---|---|
| | | with this entry.) (smnd) (Entered: 02/15/2018) |
| 02/20/2018 | 14 | WAIVER OF SERVICE OF SUMMONS Returned Executed by Defendant (fnu) Goad; waiver sent on 1/29/2018, answer due 3/30/2018 (smnd) (Entered: 02/20/2018) |
| 02/26/2018 | 15 | WAIVER OF SERVICE OF SUMMONS Returned Executed by Defendant (fnu) Carrell; waiver sent on 1/29/2018, answer due 3/30/2018 (smnd) (Entered: 02/26/2018) |
| 02/26/2018 | 16 | WAIVER OF SERVICE OF SUMMONS Returned Executed by Defendant (fnu) Riddle; waiver sent on 2/15/2018, answer due 4/16/2018 (smnd) (Entered: 02/26/2018) |
| 03/23/2018 | 17 | SEALED MOTION for Leave to File Under Seal by Interested Party Kansas Department of Corrections (Attachments: # 1 Proposed Sealed Document B Cell House Post Orders, # 2 Proposed Sealed Document A&D Post Orders, # 3 Proposed Sealed Document PREA record, # 4 Proposed Sealed Document Medical Records 1−214, # 5 Proposed Sealed Document Medical Records 215−431, # 6 Proposed Sealed Document Medical Records 432−633, # 7 Proposed Sealed Document Medical Record 634−822)(Cole, Joni) Corrected motion event on 3/26/2018 (msb). (Entered: 03/23/2018) |
| 03/27/2018 | 18 | ORDER ENTERED: Interested Party Kansas Department of Corrections' motion 17 for leave to file certain documents under seal is granted. Counsel is directed to file forthwith requested document(s) with an event from the SEALED DOCUMENTS category. The clerk shall grant access to sealed document(s) to counsel of record. Signed by U.S. Senior District Judge Sam A. Crow on 03/27/18. Mailed to pro se party DeRon McCoy, Jr. by regular mail. (smnd) (Entered: 03/27/2018) |
| 03/27/2018 | 19 | MARTINEZ REPORT by Interested Party Kansas Department of Corrections re 13 Amended Complaint. (Attachments: # 1 Exhibit Kasper sheet, # 2 Exhibit Transport Order, # 3 Exhibit Filed underseal, # 4 Exhibit IMPP 12−103D Security and Control, # 5 Exhibit Disciplinary Report, # 6 Exhibit A&D Security Staff, # 7 Exhibit Grievance, # 8 Exhibit PREA Forms, # 9 Exhibit Medical Records)(Cole, Joni) (Entered: 03/27/2018) |
| 03/28/2018 | 20 | MOTION for Extension of Time to File Answer as to 13 Amended Complaint by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle (Depew, Dennis) Corrected motion event on 3/29/2018 (msb). (Entered: 03/28/2018) |
| 03/28/2018 | 21 | SEALED EXHIBIT(S) re 19 Martinez Report, (Attachments: # 1 Exhibit B Cell House Post Orders, # 2 Exhibit Admissions and Discharge post order, # 3 Exhibit PREA log, # 4 Exhibit Medical Records 1−214, # 5 Exhibit Medical Records, # 6 Exhibit Medical Records, # 7 Exhibit medical Records)(Cole, Joni) (Entered: 03/28/2018) |
| 03/29/2018 | 22 | ORDER ENTERED: Defendants' Motion for Extension of Time to Answer or Otherwise Plead 20 is granted and their responsive pleading shall be filed on or before April 30, 2018. Signed by U.S. Senior District Judge Sam A. Crow on 03/29/18. Mailed to pro se party DeRon McCoy, Jr. by regular mail. (smnd) (Entered: 03/29/2018) |

| 04/27/2018 | 23 | | Second MOTION for Extension of Time as to 22 Order on Motion for Extension of Time to Answer, by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle (Depew, Dennis) (Entered: 04/27/2018) |
|---|---|---|---|
| 04/27/2018 | 24 | | ORDER ENTERED: Defendants' Second Motion for Extension of Time to Answer or Otherwise Plead 23 is granted and their responsive pleading shall be filed on or before May 10, 2018. Signed by U.S. Senior District Judge Sam A. Crow on 04/27/18. Mailed to pro se party Deron McCoy, Jr. by regular mail. (smnd) (Entered: 04/27/2018) |
| 05/07/2018 | 28 | | RETURN mail received re 24 Order addressed to DeRon McCoy, Jr. (Return to Sender/Not at this Address); Remailed to Plaintiff McCoy at El Dorado Correctional Facility (Address Confirmed by KASPER/KDOC) (smnd) (Entered: 05/08/2018) |
| 05/08/2018 | 25 | | MOTION to Dismiss *or in the Alternative*, MOTION for Summary Judgment (Response deadline 5/29/2018) by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle. (Depew, Dennis) (Entered: 05/08/2018) |
| 05/08/2018 | 26 | | MEMORANDUM IN SUPPORT of 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle(Depew, Dennis) (Entered: 05/08/2018) |
| 05/08/2018 | 27 | | MINUTE ORDER REASSIGNING CASE: Case reassigned to District Judge John W. Broomes and Magistrate Judge K. Gary Sebelius for all further proceedings. U.S. Senior District Judge Sam A. Crow no longer assigned to case. Entered by Deputy Clerk on 05/08/18. Mailed to pro se party DeRon McCoy, Jr. by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 05/08/2018) |
| 05/09/2018 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment . The motion will be resolved by the District Judge.(bh)** (Entered: 05/09/2018) |
| 05/17/2018 | 29 | | MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 05/17/2018) |
| 05/17/2018 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 29 MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment . The motion will be resolved by the District Judge.(bh)** (Entered: 05/17/2018) |
| 05/23/2018 | 30 | | RESPONSE by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle re 29 MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment (Depew, Dennis) (Entered: 05/23/2018) |
| 05/23/2018 | 31 | | ORDER granting 29 Motion for Extension of Time to File Response re 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment. Plaintiff's Response to Defendants' Motion to Dismiss or in the Alternative |

| | | | |
|---|---|---|---|
| | | | Motion for Summary Judgment is due 6/18/2018. Entered by District Judge John W. Broomes on 05/23/2018.Mailed to pro se party DeRon McCoy by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 05/23/2018) |
| 06/19/2018 | 32 | | MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 06/19/2018) |
| 06/19/2018 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 32 MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment . The motion will be resolved by the District Judge.(bh)** (Entered: 06/19/2018) |
| 06/21/2018 | 33 | | RESPONSE by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle re 32 MOTION for Extension of Time to File Response as to 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment (Depew, Dennis) (Entered: 06/21/2018) |
| 06/21/2018 | 34 | | ORDER granting 32 Motion for Extension of Time to File Response re 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment Response deadline 7/18/2018. Entered by District Judge John W. Broomes on 06/21/2018.Mailed to pro se party DeRon McCoy, Jr. by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 06/21/2018) |
| 07/13/2018 | 35 | | MOTION for Court Ordered Joint Protective Order or, in the Alternative, Order the Defendants to Produce Sealed Exhibits to Plaintiff by Plaintiff DeRon McCoy, Jr. (referred to Magistrate Judge K. Gary Sebelius) (smnd) (Entered: 07/13/2018) |
| 07/13/2018 | 36 | | EXHIBITS B−D IN SUPPORT of 13 Second Amended Complaint by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 07/13/2018) |
| 07/18/2018 | 37 | | EXHIBIT D (signature page) IN SUPPORT of 13 Second Amended Complaint by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 07/18/2018) |
| 07/18/2018 | 38 | | RESPONSE by Plaintiff DeRon McCoy, Jr. re 25 MOTION to Dismiss or, in the Alternative, MOTION for Summary Judgment (smnd) (Entered: 07/18/2018) |
| 07/26/2018 | 39 | | MOTION for Extension of Time to File Reply as to 38 Response to Motion by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle (Depew, Dennis) (Entered: 07/26/2018) |
| 07/26/2018 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 39 MOTION for Extension of Time to File Reply as to 38 Response to Motion . The motion will be resolved by the District Judge.(bh)** (Entered: 07/26/2018) |
| 07/26/2018 | 40 | | ORDER granting 39 Motion for Extension of Time to File Reply re 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment. Reply deadline 8/31/2018. Entered by District Judge John W. Broomes on 07/26/2018. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 07/26/2018) |

| | | | |
|---|---|---|---|
| 07/31/2018 | 41 | | MOTION for Copies of Sealed Documents by Plaintiff DeRon McCoy, Jr. (referred to Magistrate Judge K. Gary Sebelius) (smnd) (Entered: 07/31/2018) |
| 07/31/2018 | 42 | | MOTION to Appoint Counsel by Plaintiff DeRon McCoy, Jr. (referred to Magistrate Judge K. Gary Sebelius) (smnd) (Entered: 07/31/2018) |
| 08/03/2018 | 43 | | ORDER TO SHOW CAUSE. The KDOC shall show cause in writing to the magistrate judge by August 10, 2018, why plaintiff should not be served with copies of the sealed exhibits to the Martinez report—specifically, Exhibits C, F, H, and I. The KDOC shall address each exhibit separately and shall also explain whether these materials could be provided to plaintiff in redacted form. Signed by Magistrate Judge K. Gary Sebelius on 8/3/18. A copy of this order was mailed to plaintiff at the address listed on the docket. (bh) (Additional attachment(s) added on 8/3/2018: # 1 Corrected Document Attached) (smnd). (Entered: 08/03/2018) |
| 08/08/2018 | 44 | | ORDER denying without prejudice 42 Motion to Appoint Counsel. Signed by Magistrate Judge K. Gary Sebelius on 8/8/18. A copy of this order was mailed to plaintiff at the address listed on the docket. (bh) (Entered: 08/08/2018) |
| 08/10/2018 | 45 | | MOTION for Protective Order by Interested Party Kansas Department of Corrections (referred to Magistrate Judge K. Gary Sebelius) (Cole, Joni) Modified motion event 8/13/2018 (msb). (Entered: 08/10/2018) |
| 08/10/2018 | 46 | | RESPONSE to 43 Order to Show Cause by Interested Party Kansas Department of Corrections. (Duplicate entry to Docket Entry 45. Filed as 2nd part of a two−part pleading)(msb) (Entered: 08/13/2018) |
| 08/30/2018 | 47 | | REPLY TO RESPONSE TO MOTION by Defendants (fnu) Carrell, (fnu) Goad, James Heimgartner, (fnu) Patterson, (fnu) Riddle re: 25 MOTION to Dismiss *or in the Alternative* MOTION for Summary Judgment (Carter, Natasha) (Entered: 08/30/2018) |
| 09/11/2018 | 48 | | MEMORANDUM AND ORDER granting in part and denying without prejudice in part 35 , 41 motions for service of sealed exhibits; denying without prejudice 45 Motion for Protective Order. Signed by Magistrate Judge K. Gary Sebelius on 9/11/18. A copy of this order was mailed to plaintiff at the address listed on the docket. (bh) (Entered: 09/11/2018) |
| 09/24/2018 | 49 | | RESPONSE by Plaintiff DeRon McCoy, Jr. re 48 Memorandum and Order (smnd) (Entered: 09/24/2018) |
| 09/25/2018 | 50 | | MOTION for extension of time by Interested Party Kansas Department of Corrections (referred to Magistrate Judge K. Gary Sebelius) (Cole, Joni) (Entered: 09/25/2018) |
| 09/26/2018 | 51 | | ORDER Regarding 49 Plaintiff's Notice. Plaintiff states that he has not received a copy of 48 the Memorandum and Order or the documents that were ordered to be produced. The court will mail another copy of the Memorandum and Order. By October 1, 2018, the KDOC must file a status report that updates the court on whether it has complied with the portions of the order requiring it to provide plaintiff with a copy of Exhibit H and whether it has made Exhibit I available to plaintiff for viewing. Signed by Magistrate Judge K. Gary Sebelius on 9/26/18. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) A copy of this text entry was mailed to plaintiff at the address listed on |

| | | | |
|---|---|---|---|
| | | | the docket.(bh) (Entered: 09/26/2018) |
| 09/26/2018 | 52 | | ORDER granting 50 Motion for Extension of Time to File Renewed Motion for Protective Order. The KDOC has up to and including October 5, 2018, to file its renewed motion for a protective order. No further extensions will be granted. Signed by Magistrate Judge K. Gary Sebelius on 9/25/18. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) A copy of this text entry was mailed to plaintiff at the address listed on the docket.(bh) (Entered: 09/26/2018) |
| 10/04/2018 | 53 | | STATUS REPORT by Kansas Department of Corrections. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Cole, Joni) (Entered: 10/04/2018) |
| 10/05/2018 | 54 | | MEMORANDUM IN SUPPORT of 55 MOTION for Protective Order by Interested Party Kansas Department of Corrections(Cole, Joni) Modified link on 10/9/2018 (msb). (Entered: 10/05/2018) |
| 10/05/2018 | 55 | | MOTION for Protective Order by Interested Party Kansas Department of Corrections (referred to Magistrate Judge K. Gary Sebelius) (Attachments: # 1 Exhibit)(Cole, Joni) (Entered: 10/05/2018) |
| 10/05/2018 | 56 | | STIPULATED PROTECTIVE ORDER. The parties shall abide by the terms of the attached order. Signed by Magistrate Judge K. Gary Sebelius on 10/5/18. A copy of this order was mailed to plaintiff at the address listed on the docket. (bh) (Additional attachment(s) added on 10/9/2018: # 1 Corrected Protective Order) (msb). (Entered: 10/05/2018) |
| 10/09/2018 | 57 | | DOCKET ANNOTATION: Please be advised that the date on docket entry 56 Order on Motion for Protective Order was incorrect and that it has been corrected and the attached corrected order is for noticing purposes only. The corrected order has also been attached to docket entry 56. (msb) (Entered: 10/09/2018) |
| 10/31/2018 | 58 | | MEMORANDUM AND ORDER regarding 25 Motion for Summary Judgment. As Plaintiff did not have access to the exhibits that were referred to and relied on in the motion and the court has determined that it will treat the motion as one for summary judgment, the court must give Plaintiff an opportunity to file a supplemental brief. Accordingly, Plaintiff is granted 30 days after the filing of this order to file a supplemental response brief and any exhibits. Defendants' supplemental reply will be due 14 days after service of Plaintiff's response. Signed by District Judge John W. Broomes on 10/30/2018. Mailed to pro se party DeRon McCoy, Jr. at EL DORADO Correctional Facility−Central by regular mail. (aa) (Entered: 10/31/2018) |
| 01/07/2019 | 59 | | MEMORANDUM AND ORDER granting 25 Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Signed by District Judge John W. Broomes on 1/7/2019. Mailed to pro se party Deron McCoy, Jr. at the El Dorado Correctional Facility by regular mail. (mam) (Entered: 01/07/2019) |
| 01/07/2019 | 60 | | JUDGMENT. Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 25 ) is GRANTED. Heimgartner's motion for summary judgment on the basis of qualified immunity is granted. The remaining claims against Defendants in their official capacities are dismissed as Plaintiff failed to show a constitutional violation on those claims. Signed by deputy clerk on 1/7/2019. Mailed to pro se party Deron McCoy, Jr. at the El |

| | | | Dorado Correctional Facility by regular mail. (mam) (Entered: 01/07/2019) |
|------------|----|---|---|
| 01/29/2019 | 61 | | NOTICE OF APPEAL as to 59 Memorandum and Order and 60 Judgment by Plaintiff DeRon McCoy, Jr. (smnd) (Entered: 01/29/2019) |
| 01/29/2019 | | | APPEAL FEE STATUS: filing fee not paid re: Notice of Appeal − Final Judgment 61 on behalf of Plaintiff DeRon McCoy, Jr. (THIS IS A TEXT ONLY ENTRY−NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION.) (smnd) (Entered: 01/29/2019) |

Deron McCoy II #76894
P.O. Box 311
ElDorado KS 67042

United States District Court
For the District of Kansas

Deron McCoy II          )
        Plaintiff       )
                        )
   V.                   )  Case No. 17-3139-JWB
                        )
James Heimgartner, et al. )
        Defendants      )
                        )
                        )

## Notice of Appeal

Notice is hereby given that the plaintiff Deron McCoy II appeals any and all adverse decisions from the decessions of the Court in the above captioned case #. 17-3139-JWB

Respectfully Submitted,
Deron McCoy II

## certificate of service

I hereby certify that on this 29th day of January, 2019 I submitted the foregoing to E.D.C.F staff for e-filing the same.

_s/Deron McCoy II_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DERON MCCOY, JR.,

       Plaintiff,

v.                                    Case No. 17-3139-JWB

JAMES HEIMGARTNER, et al.,

       Defendants.

**MEMORANDUM AND ORDER**

    This case comes before the court on Defendants' motion to dismiss, or in the alternative motion for summary judgment. (Doc. 25.)  The motion has been fully briefed and is ripe for decision.  (Docs. 26, 38, 47.)  Defendants' motion is GRANTED for the reasons stated herein.

**I.**      **Facts and Procedural History[1]**

    Plaintiff Deron McCoy, Jr. is an inmate in the custody of the Kansas Secretary of Corrections.   On October 27, 2016, Plaintiff was housed at El Dorado Correctional Facility ("EDCF").  At the times relevant to this action, Plaintiff was housed in cell house B-1, which is the restricted housing (RH) cell house.  Currently, Plaintiff is housed in general population.  (Doc. 38 at 4.)  Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983.  The court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff names as Defendants: James Heimgartner, EDCF Warden; SORT Member Austin Goad; First Sergeant Jonethen Patterson; First Sergeant Troy Carrell; and Correctional Officer William Riddle.  Plaintiff sues each Defendant in their individual and official capacities.  Plaintiff seeks relief in the form of nominal

---

[1] The facts stated herein are uncontroverted unless specifically noted as controverted.

damages, compensatory damages, punitive damages, a declaratory judgment, and a permanent injunction directing Defendant Heimgartner and/or KDOC officials to amend the KDOC strip search policy.

EDCF has several written policies regarding the transfer of inmates both within the facility and transferring out of the facility.  Plaintiff is very familiar with the strip search procedure as he is subjected to frequent strip searches due to previously being housed in the RH cell house.  Plaintiff states that he was strip searched each time he went outside to the segregation yard and returned to the RH cell house from the yard.  The strip search policy requires all inmates leaving and entering the RH cell house to be strip searched.  While housed at EDCF, Plaintiff's record shows a lengthy history of disciplinary issues.  It includes, but is not limited to, the following disciplinary reports: having dangerous contraband, having less dangerous contraband, disobeying orders, insubordination, fighting, battery, possessing sexually explicit materials, unauthorized dealing or trade, use of stimulants, threatening or intimidation of other persons, and interference with cell operator's visibility.  (Doc. 19, Exh. 1.)

On October 27, 2016, pursuant to a court order, Plaintiff was to be transported to Reno County for court proceedings.  The EDCF policy required Plaintiff to be strip searched as he was leaving the RH cell house.  (Doc. 19, Exh. C.)  Defendant Goad took Plaintiff to a strip out cage.  Goad searched Plaintiff's clothes after they were removed.  Plaintiff's body parts were inspected pursuant to the policy.  Part of the strip out procedure is for inmates to bend down, squat, spread their buttocks and then cough.  (Doc. 19, Exhibit D, p. D-5).  The policy does not indicate the depth an inmate is required to squat for successful completion of the search.  Plaintiff attempted to perform this part of the search.  After doing so, Plaintiff stood up and Goad stated that his squat was not good enough and that he needed to squat further down.  Goad directed Plaintiff to redo

2

the squat.  Plaintiff attempted to do it again and immediately felt a sharp pain in his lower back.

Goad again told Plaintiff that he had not squatted low enough and needed to squat down to the

floor.  Plaintiff informed Goad that "that's not right" and that he couldn't squat as low as Goad

wanted him since he had a back injury.  (Doc. 38 at 7.)  Plaintiff allegedly described the extent of

his back injury.  Defendant Patterson had been observing the strip search from outside the door.

Plaintiff asked for assistance from Patterson in resolving the problem.  Patterson stepped close to

the door and Plaintiff explained his medical condition that kept him from squatting low to the

ground.  Patterson did not respond.  Goad then instructed Plaintiff to perform the squat again.

Plaintiff again attempted to squat down.  While Plaintiff was squatting down, Plaintiff alleges that

Patterson stated, "come on you can drop it further than that."  Plaintiff immediately straightened

and allegedly observed Patterson and Goad smiling.  (Docs. 26 at 4-5; 38 at 5-9.)

       Plaintiff started yelling that he was being sexually harassed in the cell.  Plaintiff requested

a grievance form and a pencil.  Patterson gave him a form.  Plaintiff allegedly stated that he was

going to write a grievance on Patterson and Goad.  Defendant Carrell then arrived and asked what

the problem was.  Plaintiff explained that he had a preexisting back injury and could not squat

fully to the ground.  Carrell left the area and spoke with medical staff.  Carrell verified that Plaintiff

had a back injury and "medical restrictions."  (Doc. 38 at 11.)  The record reflects that Plaintiff's

medical restriction states that he cannot climb stairs.  (Doc. 36, Exh. C.)  Carrell told Plaintiff that

he would be required to perform the squat as far as he could go down.  At that time, Defendants

Goad and Patterson did not consider the strip search completed due to Plaintiff's failure to comply

with the squat portion of the search.[2]  (Doc. 19, p. 2).  Goad stated that Plaintiff barely bent his knees during the strip search.  (Doc. 19 at 2.)

Plaintiff complied with Carrell's request to again squat during the strip search and again felt extreme pain.  Plaintiff was then transferred by Carrell and an unnamed officer to the Admissions & Discharge ("A&D") area of EDCF to be transported to Reno County.  Plaintiff was locked in a single man holding cell in the A&D area.  Carrell and the unnamed officer then left.  Plaintiff states that the cell only contained a single bench seat and that there was "never an opportunity to obtain any contraband or any inmate around that could give [him] any contraband."  (Doc. 38 at 12.)  About 20 to 30 minutes later, Defendant Riddle, who works in the A&D area of EDCF, came by the holding cell.  Riddle told Plaintiff to submit to the strip search in accordance with EDCF policy.  EDCF policy requires all inmates being transferred from A&D to another facility to be strip searched before leaving the facility.  Plaintiff informed Riddle that he had already been subject to a strip search and that he had been under constant observation and isolated from other inmates in the interim.  Riddle told Plaintiff that it was EDCF policy and that he must be strip searched.  Plaintiff then complied with Riddle's request and does not allege any additional back pain associated with having to squat during this strip search.  (Docs. 26 at 6; 38 at 10-13.)

From October 27, 2016 to November 17, 2017, Plaintiff alleges he suffered extreme shooting pains in his lower back that extended down his legs to his feet as well as tingling numbness in his legs.  Plaintiff also alleges that he began to experience severe anxiety requiring treatment in the form of counseling and anti-anxiety medication.

---

[2] Plaintiff attempts to controvert this fact by stating that he fully performed the strip search on the first attempt. However, Plaintiff's affidavit states that he performed the squat as much as he could due to his back injury.  (Doc. 38 at 8.)  Plaintiff has not controverted the fact that Goad and Patterson did not consider the strip search completed.

4

On October 27, Goad filled out a disciplinary report stating that Plaintiff disobeyed orders and interfered with official duties after failing to comply with the strip search. Goad stated that Plaintiff "refused to give a full squat by barely bending his knees. This is an insufficient [sic] to the proper strip search procedure and creates a security risk if he were to be escorted." (Doc. 19, Exh. E at 1.) Plaintiff was served with a copy of the disciplinary report on November 21, 2016. (Doc. 19, Exh. E at 4.) A hearing on the disciplinary violation was held on November 28, 2016. Plaintiff testified that he "did squat as far as I could." (Id. at 14.) After hearing the testimony, the hearing officer found Plaintiff not guilty of the violations. The hearing officer stated as follows: "Based on testimony from the SST supervisor and the offender did attempt 3 or more times to perform the deep knee bend and squat. This hearing officer finds offender not guilty of the charges of disobeying orders. Offender not guilty of interference of official duties as the strip out process did [not] cause any substantiated delay." (Id.; see also Docs. 26 at 8; 38 at 13-14.)

Plaintiff's medical records show that Plaintiff had a pre-existing back condition that was diagnosed in 2014. Plaintiff was taking lipoic acid, Tylenol, and Ibuprofen for that condition. Plaintiff's medical records also show that Plaintiff had serious mental health issues including anxiety that existed before October 2016.[3] On November 1, 2016, Plaintiff denied any injuries. (Doc. 19, Sealed Exhibit I, p. I-236). The medical records further show that on November 2, 2016, Plaintiff reported no concerns or needs during a medical rounds visit. (Doc. 21, Sealed Exhibit I, p. I-238). On November 8, 2016, Plaintiff refused treatment for his chronic conditions. (Doc. 21, Sealed Exhibit I, p. I-240). On November 10, 2016 and November 14, 2016, Plaintiff reported no concerns or needs during the medical rounds visits. (Doc. 21, Sealed Exhibit I, pp. I-242 and I-245).

---

[3] Plaintiff attempts to controvert this statement by stating that his condition was in remission. Plaintiff does not cite to any medical records to support this medical statement.

Plaintiff attempts to controvert this medical evidence by asserting that he had sick calls for back and shoulder pain.  Those calls, however, were allegedly made beginning January 26, 2017. (Doc. 38 at 3.)

On March 10, 2017, Plaintiff filed a sexual abuse grievance relating to the October 27, 2016 incident.  Plaintiff's grievance was determined to be unfounded.  On May 8, 2017, Plaintiff's grievance was reviewed by Defendant Heimgartner who determined that no further action is necessary.  On May 21, 2017, Plaintiff appealed to the Secretary of Corrections.  On May 30, 2017, the appeal was denied.  (Doc. 13, Exh. A.)

Plaintiff filed this action on August 15, 2017.  (Doc. 1.)  Judge Crow screened Plaintiff's complaint and entered an order requiring Plaintiff to show cause why the complaint should not be dismissed as it failed to state a claim.  (Doc. 4.)  Alternatively, Judge Crow allowed Plaintiff to amend.  Plaintiff filed an amended complaint and later received authorization to file a second amended complaint.  (Doc. 12, 13.)  The court ordered the Kansas Department of Corrections to file a *Martinez* report regarding the allegations in Plaintiff's amended complaint.  (Doc. 6.)  On March 27, 2018, the *Martinez* report was filed.  (Doc. 19.)

On May 8, Defendants moved to dismiss or, in the alternative, for summary judgment. (Doc. 25.)  Plaintiff filed a response brief on July 18, after receiving an extension.  (Doc. 38.) Additionally, Plaintiff filed exhibits in support of his second amended complaint.  (Doc. 36, 37.) The exhibits include sick call requests, Plaintiff's medical restriction regarding stair climbing, and an affidavit.  (Doc. 36.)  The affidavit is essentially a verbatim recitation of the facts set forth in Plaintiff's response.  (Doc. 36, 38.)  Defendants filed a reply brief on August 30.

On October 31, this court notified the parties that it was treating the motion as one for summary judgment as both parties referenced materials outside the pleadings.  (Doc. 58.)  The

court provided Plaintiff with an opportunity to amend his response and include additional exhibits. Plaintiff did not file a supplemental brief in response to the court's order.   Therefore, the motion is now ripe for decision.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986)).  The nonmovant must then bring forth specific facts showing a genuine issue for trial.  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

As noted previously, Plaintiff is proceeding pro se.  A pro se litigant's pleadings are to be liberally construed and held to a less stringent standard than pleadings by represented parties.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the court does not become an advocate for the pro se litigant, and "will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  "Plaintiff's pro se status, in and of itself, does not prevent this Court from granting summary judgment."  *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214-15 (D. Kan. 2006) (citing *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

### III.    Analysis

Plaintiff's second amended complaint sets forth several claims against Defendants under 42 U.S.C. § 1983.  Plaintiff alleges that Defendants' actions violated his Fourth Amendment rights to be free from unreasonable searches, his Eighth Amendment right to be free from cruel and unusual punishment, his First Amendment rights by retaliating against him for filing a grievance, and the Equal Protection Clause for different treatment of prisoners.

Defendants move for summary judgment on all claims.  The arguments will be addressed in turn.

### A.  Exhaustion

Prisoners are required to exhaust administrative remedies before bringing suit.  42 U.S.C. § 1997e(a).  Exhaustion pursuant to § 1997e(a) requires "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim ... for failure to exhaust his administrative remedies."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  There are two aspects of the exhaustion requirement. They are: (1) "the administrative grievance must have alleged the same facts as the court complaint;" and (2) "the plaintiff must follow the prison's grievance procedures." *Williams v. Wilkinson*, 659 F. App'x. 512, 514 (10th Cir. 2016) (citing *Woodford*, 548 U.S. at 90–91).

Defendants claim that Plaintiff has failed to exhaust his claims because his grievance was filed pursuant to Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 *et seq*., and did not raise the issues that are set forth in his second amended complaint. (Doc. 26 at 12.) The KDOC requires that all inmates avail themselves of the grievance procedure set forth in K.A.R. § 44-15-102 which includes four steps.  First, an inmate must attempt informal resolution.  Second, the inmate submits

a grievance report to the team member.  Third, the inmate then submits the grievance to the warden.

Finally, the inmate appeals to the Secretary of Corrections.  *Barnett v. Kansas*, No. 16-3008-SAC-

DJW, 2016 WL 3618655, at *3 (D. Kan. July 6, 2016).  Defendants argue that Plaintiff's grievance

was a PREA complaint and that such a complaint does not satisfy the prison grievance process.

(Doc. 47 at 5.)  Defendants cite to *Howard v. Rodgers*, No. 17-3019-DDC-TJJ, 2018 WL 3122175,

at *4 (D. Kan. June 26, 2018), in support of their position.  In *Howard*, the court determined that

although the plaintiff argued that he followed procedures under PREA, the plaintiff failed to

establish those facts.  The court also cited other decisions that stated PREA's procedures do not

excuse the failure to exhaust.  *See id.*

In this case, although Plaintiff filed a grievance that he indicated was a "sexual abuse

grievance", the uncontroverted facts show that he fully exhausted that grievance as set forth in

K.A.R. § 44-15-102.[4]  Plaintiff's grievance was submitted to the team member, submitted to the

warden and then appealed to the Secretary of Corrections.  Therefore, the court finds that Plaintiff's

grievance filed in March 2017 has been fully exhausted as required under the regulation.

In addition to that grievance, Plaintiff alleges that he filed a grievance in October 2016.

Plaintiff, however, has not established that he fully exhausted that grievance as he has only alleged

that he submitted an initial grievance.  Therefore, the allegations in the October 2016 grievance[5],

to the extent they were different than the allegations in the March 2017 grievance, have not been

exhausted.

Defendants also argue that Plaintiff did not raise the claims at issue in this action in his

grievance submitted in March 2017.  As stated, the grievance must have alleged the same facts as

---

[4] Plaintiff utilized the regular grievance forms in filing his grievance.  Plaintiff, however, hand wrote "sexual abuse grievance" on the top of the Kansas Department of Corrections Inmate Grievance Form.  (Doc. 19, Exh. G at 5.)
[5] Plaintiff makes no attempt to set forth the contents of the grievance allegedly filed in October 2016.

the complaint. *Williams*, 659 F. App'x. at 514. Plaintiff's grievance sets forth all of the allegations regarding the strip searches on October 26, 2017. Plaintiff's grievance, however, does not allege that the disciplinary action initiated by Goad was done in retaliation for his grievance. Therefore, EDCF was never on notice that Plaintiff believed that the disciplinary action was done in retaliation for filing his grievance. *See Cleveland v. Harvanek*, 607 F. App'x 770, 772–73 (10th Cir. 2015). Plaintiff's First Amendment retaliation claim against Goad is therefore subject to dismissal for failing to exhaust his administrative remedies.

Defendants' motion for summary judgment on Plaintiff's First Amendment claim is granted for failure to exhaust administrative remedies. The court finds that all other claims alleged in the second amended complaint have been exhausted.

### B. Qualified Immunity

Defendants move for summary judgment on the basis that they are entitled to qualified immunity on Plaintiff's constitutional claims. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

10

### i.      Fourth Amendment

Plaintiff alleges that the strip searches violated his Fourth Amendment right to be free from unreasonable searches.  A strip search of an inmate may implicate both "Fourth Amendment privacy interests and Eighth Amendment Cruel and Unusual Punishment concerns."  *Harris v. Rocchio*, 1997 WL 787185, \*2 (10th Cir. Dec. 24, 1997); *see also Hayes v. Marriott*, 70 F.3d 1144, 1146-47 (10th Cir. 1995).  Plaintiff has alleged claims under both Amendments.

Plaintiff contends that Defendants Goad, Patterson and Carrell violated his Fourth Amendment right to be free from unreasonable searches by requiring Plaintiff to complete multiple strip searches.  Plaintiff further contends that Defendant Riddle violated Plaintiff's Fourth Amendment right by strip searching him again in A&D.

Although the Supreme Court has foreclosed any Fourth Amendment challenge to the search of a prison cell, the court "has recognized a qualitative difference between property searches and searches of a prisoner's person."  *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989).  The traditional Fourth Amendment prohibition against unreasonable searches extends to personal body searches of inmates.  *Cameron v. Hendricks*, 942 F. Supp. 499, 502 (D. Kan. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search of a pretrial detainee in *Bell*.[6]  Factors to be considered in the balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted.  *Bell*, 441 U.S. at 559.  In *Bell*, the Supreme Court held that visual body-cavity strip searches without probable cause were reasonable in light of correctional security needs.  *Id.* at 559; *see also Leek v. Miller*, 698 F.

---

[6]  This court has utilized the *Bell* test in evaluating strip searches of convicted prisoners.  *See Noriega v. Cummings*, No. 95-3292-JTM, 1998 WL 289055, at \*6–7 (D. Kan. May 7, 1998).

App'x 922, 926 (10th Cir. 2017). "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 322–23 (2012).

Search at RH cell house. Plaintiff's first claim under the Fourth Amendment asserts that the strip search at the RH cell house was unconstitutional because Plaintiff was required to perform the search four times. Plaintiff does not argue that a strip search upon his leaving the facility was unnecessary or unjustified. *See Noriega v. Cummings*, No. 95-3292-JTM, 1998 WL 289055, at *6–7 (D. Kan. May 7, 1998) (finding prison policy subjecting prisoners to strip search upon leaving and entering segregation to be reasonable based on legitimate penological interests.) Nor does he argue that the squat and cough policy is somehow unreasonable. The Supreme Court has recently acknowledged that this type of procedure is reasonable and designed to uncover contraband:

> Petitioner acknowledges that correctional officers must be allowed to conduct an effective search during the intake process and that this will require at least some detainees to lift their genitals or cough in a squatting petition. These procedures, similar to the ones upheld in *Bell*, are designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.

*Florence*, 132 S. Ct. at 1520.

Plaintiff, however, contends that Goad and Patterson's actions in making him repeat the strip search procedure were unreasonable. The record, however, clearly shows that Goad and Patterson had grounds to believe that Plaintiff had not properly complied with the strip search procedure because he did not squat to the proper depth. Turning to the factors, the court finds that the search was reasonable. With respect to conducting the search, Plaintiff was being searched as he was leaving the RH unit, which was a secured housing unit. Clearly, there is a security interest in ensuring that prisoners who are being transferred to another unit do not have contraband.

12

Plaintiff's disciplinary record shows that Plaintiff has been found to have "dangerous contraband" on prior occasions. (Doc. 19, Exh. A at 5.) Moreover, the search was conducted by a male prison guard. Other than the presence of a second male guard, there is no indication that the searches were performed in public. Rather, Plaintiff was in a cell that was specifically designated as a strip out cage. Therefore, the remaining issue is whether repeated requests to squat render the search unreasonable.

> The Supreme Court has emphasized that
>
> preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of convicted prisoners… Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel…Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee...the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (internal citations omitted).

Therefore, with respect to issues involving "internal order and discipline" or "institutional security," courts should accord "wide-ranging deference" to prison officials, unless there is "substantial evidence in the record to indicate the officials have exaggerated their response." *Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 547–48) (internal citations omitted). Based on the uncontroverted facts, Goad and Patterson did not believe that Plaintiff had properly completed the search. Plaintiff does not properly dispute this fact. Plaintiff contends that he had a medical excuse that prevented him from complying with Goad's requests. The record shows that Goad was requiring Plaintiff to "squat parallel to [the] ground" in order to comply with the strip search and to alleviate security concerns. (*See* Doc. 19, Exh. E at 1, 14.) Plaintiff does not state that he squatted to the depth required by Goad but instead continues to offer medical excuses as to why he could not comply. (*See* Doc. 19, Exh. E (disciplinary testimony) and G (grievance)). Moreover,

although Plaintiff claimed that he had a back injury, there is no evidence to support a finding that Plaintiff had a medical restriction regarding his ability to squat. The only medical restriction pertained to climbing stairs. (Doc. 36, Exh. C.) The Supreme Court has held that it is reasonable to require prisoners "to expose their body cavities for visual inspection as a part of a strip search…" *Bell*, 441 U.S. at 558. Therefore, the decision to require Plaintiff to properly complete the strip search procedure to ensure legitimate safety concerns was reasonable. Contrary to Plaintiff's assertions, Plaintiff was not subjected to four strip searches but only one strip search in this particular instance. In completing that single search, Plaintiff was required to repeat the squat maneuver several times because he failed to perform it properly.

Defendant Carrell's actions also did not violate Plaintiff's Fourth Amendment rights. At the time Carrell arrived, he was informed that Plaintiff had not properly completed the squat. Carrell verified Plaintiff's medical records and then asked Plaintiff to complete the squat as far as he was able to. This request was reasonable in light of legitimate penological interests of ensuring that the prisoners have been sufficiently searched prior to leaving the facility.

Moreover, even if the actions violated Plaintiff's Fourth Amendment rights, Plaintiff has not shown that this right is clearly established. Plaintiff has failed to identify any authority from the Tenth Circuit or the Supreme Court that states that an officer has violated a prisoner's Fourth Amendment right by requiring the prisoner to repeat a search until it is completed correctly . *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018) ("Ordinarily, to establish that a proposition of law is clearly established in this circuit, the plaintiff must rely on an on-point precedent of this court or the Supreme Court or a clear consensus of a significant number of fellow circuit courts.")

Therefore, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim pertaining to the searches conducted upon leaving the RH cell house is granted.

14

Search at A&D.  Plaintiff also challenges the strip search performed by Riddle when Plaintiff left A&D.  KDOC's policy requires inmates to be searched upon leaving A&D.  Essentially, Plaintiff claims that being subjected to two searches, one leaving the RH cell house and another one leaving A&D, is unreasonable and violates his Fourth Amendment rights.  Plaintiff brings this claim against Riddle and Heimgartner.  Plaintiff's claim against Heimgartner is based upon his role as a supervisor and will be addressed separately.

Defendants argue that the strip search at A&D was reasonable because it was done according to the policy and that the prison has a legitimate penological interest in security.  Plaintiff does not dispute that there is a legitimate interest in security concerning prisoners who are transferred but contends that the second search was not reasonable because he had already been searched and had been under constant supervision at A&D or confined in a single cell.  Therefore, according to Plaintiff's reasoning, that justification is not sufficient to warrant a second strip search as the concerns regarding security would have been addressed in the first search.  It is also important to note that the second search was conducted in a single cell in the presence of Riddle.  There are no facts to suggest that any other inmate witnessed the strip search.  Nor do the facts suggest that the search was improper in the way it was performed.

A regulation, or policy, is valid if it is reasonably related to legitimate penological interests.  *Dunn*, 880 F.2d at 1194.  The maintenance of institutional security is an "essential goal[] that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees."  *Bell*, 441 U.S. at 546.  The argument here is whether the policy, as applied to Plaintiff who was already subjected to one search, is "an unnecessary or unjustified response to problems of jail security."  *Florence*, 566 U.S. at 323.  Plaintiff has failed to introduce any facts in the record that would support a finding that Riddle's enforcement of the policy is an unnecessary

15

or unjustified response to a legitimate interest in security concerns.  There is no dispute that the prison has an interest in security when transporting a prisoner to another facility.  *See Shapiro v. Rynek*, 212 F. Supp. 3d 990, 996 (D. Colo. 2016) ("the Court does not doubt the particular need for safety when transporting prisoners outside the walls of the prison."); *see also Daughtery v. Harris*, 476 F.2d 292 (10th Cir. 1973).

The question is whether that legitimate interest is eliminated when an inmate has been subjected to a search and then searched a second time after being transported to a different building in the prison.  Riddle was not involved in the first search and there are no facts that support a finding that Riddle had a discussion with any of the defendants involved in the first search.  Riddle did not come into contact with Plaintiff until after Plaintiff had been left in the cell by Carrell.  Plaintiff's statement of facts state that he was in the cell for 20 or 30 minutes after this occurred.  The uncontroverted facts do not support a finding that an objective officer in Riddle's position knew that Plaintiff could not have obtained contraband.  Plaintiff's statement merely stated that he told Riddle that he had been isolated from other inmates.  This court must "must defer to the judgment of correctional officials unless the record contains **substantial evidence** showing their policies are an unnecessary or unjustified response to problems of jail security."  *Florence*, 566 U.S. at 323.  Given the facts here, the court finds that the second strip search did not violate Plaintiff's constitutional rights.  The search was conducted privately and not in the view of other inmates.  There is no evidence that Riddle physically touched Plaintiff or abused him.  There is no evidence that Riddle had knowledge that Plaintiff could not have obtained contraband at some point between the two searches.  Therefore, the second strip search was not an unnecessary response to the legitimate interest of security at the prison and in transferring Plaintiff to another facility.

16

What Plaintiff is really suggesting is that the prison's search policy should be re-written to preclude repeated searches when a prisoner has not been in contact with other inmates or sources of contraband.  While that might be a reasonable policy, it would place substantially higher burdens on prison staff to monitor inmates between searches to ensure that no potential existed for the inmate to obtain contraband.  It would also place additional burdens on prison staff to inquire of other staff members to determine whether a search is required or excused by lack of opportunity to acquire contraband.  Plaintiff has failed to meet his burden to show that the policies at issue in this case are so unnecessary or unjustified as to overcome the deference due correctional officials in ensuring the safety and security of the prison.

Moreover, even if the second strip search violated Plaintiff's Fourth Amendment rights, the court finds that Plaintiff has not shown the right to be clearly established.  In order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) (quoting *V–1 Oil Co. v. Means*, 94 F.3d 1420, 1423 (10th Cir.1996)).

Defendants cite to *Jones v. Harrison*, 864 F. Supp. 166, 169 (D. Kan. 1994), for the proposition that a second strip search is reasonable when conducted pursuant to regulation and related to the need to maintain order.  (Doc. 26 at 20.)  *Jones* is somewhat different from this case. In *Jones*, the prisoner was strip searched once prior to leaving one facility.  The prisoner was then transported to another facility.  While at that new facility, the prisoner was strip searched prior to being placed in segregation.  Additionally, the prisoner had "a leadership role in planning a

17

potentially violent prison disruption, and he had been transferred with a number of inmates." *Id.* The facts in *Jones* are not sufficiently similar to this case as there were additional facts in the record beyond a general interest in maintaining security.  However, *Jones* would not put an officer on notice that more than one strip search is an unreasonable response to a prison's legitimate interest in security concerns under the circumstances of the instant case.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Murrell v. Sch. Dist. No. 1, Denver, Colo*., 186 F.3d 1238, 1251 (10th Cir. 1999) (quotations omitted).  The right at issue here is whether a prisoner may be subjected to more than one strip search, conducted in private, which is based on security concerns when being transferred between different housing units and to a different facility, when the officer is informed by the prisoner that he was in isolation in the intervening time period.

Plaintiff has identified one case, *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012), in support of his position that this right is clearly established.  The facts in *Jean-Laurent* involved both strip searches and the use of excessive force, not a policy of strip searching due to transfers. Moreover, the case does not support a finding that the right at issue in this case was clearly established in this Circuit.  The Tenth Circuit has previously held that a strip search prior to releasing prisoners to the United States Marshal did not violate the prisoners' Fourth Amendment rights because of the security concerns at the penitentiary.  *Daughtery*, 476 F.2d at 294-95.

18

Although this case was pre-*Bell*, it was cited with approval in *Bell*.  *Bell*, 441 U.S. at 560 n.41.

The Tenth Circuit has also held that a prisoner may not be subjected to a non-private strip search

without sufficient security justification and a justification for a public search.  *Farmer v. Perrill*,

288 F.3d 1254, 1260 (10th Cir. 2002).  The Tenth Circuit has also held that "a detainee who is not

placed in the general prison population cannot be strip searched if the searching officer does not

at least have reasonable suspicion that the detainee possesses concealed weapons, drugs, or

contraband."  *Archuleta v. Wagner*, 523 F.3d 1278, 1286 (10th Cir. 2008).

Plaintiff has cited no authority to show that it would be clear to an officer in Riddle's

position that his conduct was unlawful in conducting the strip search.  *See Olsen v. Layton Hills

Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (When a § 1983 defendant raises the defense of

qualified immunity on summary judgment, plaintiff has the burden of showing that the official

violated a constitutional or statutory right; and that the constitutional or statutory right was clearly

established when the alleged violation occurred.)  None of the authority cited above would have

put Riddle on notice that subjecting Plaintiff to a second strip search was unlawful.  The search

was conducted in private, Plaintiff is a prisoner and not a detainee, the prison has a legitimate

interest in security concerns when transferring prisoners, and Riddle's only information

concerning whether Plaintiff had interacted with other prisoners came from Plaintiff himself.

Therefore, Riddle's motion for summary judgment on the basis of qualified immunity is

granted.

### ii.    Eighth Amendment

Plaintiff also alleges that Defendants violated his right to be free from cruel and unusual

punishment when they required him to repeatedly attempt the squat maneuver during his strip

searches at the RH cell house.  Plaintiff contends that Defendants were deliberately indifferent to

19

his medical needs and the searches resulted in additional injury to his back and caused anxiety. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).  At this time, the undisputed facts show that Plaintiff did have a preexisting low back injury that required medication and treatment.

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id.* (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1304-05 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).  The test requires that Defendants "possess an actual consciousness of a risk to prisoner health and safety." *Toevs v. Milyard,* 563 F. App'x 640, 645 (10th Cir. 2014).

20

The undisputed facts show that Defendants did not have knowledge of an excessive risk to Plaintiff's health.  The facts clearly show that Plaintiff did not have a medical restriction limiting his ability to squat.  Moreover, there is no indication in the record that Plaintiff's injury was so obvious that Defendants were aware of the risk to his health during the strip search.  Although Plaintiff complained that he had a back injury, Plaintiff has failed to introduce any evidence that he in fact had a restriction that limited him from squatting.  The only restriction in the record indicated that he was limited in stair climbing.  Once Plaintiff's back injury was confirmed by Carrell, Plaintiff was only required to squat as low as he could go.  Additionally, the record clearly shows that Plaintiff made no medical complaint in the few months following the strip search.

An Eighth Amendment claim must "involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  These allegations do not rise to the level of a claim of cruel and unusual punishment under the Eighth Amendment.  *See Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986) (to violate the Eighth Amendment, strip search must involve abuse or unnecessary force).  Plaintiff has failed to show that Defendants acted with the requisite state of mind.

Plaintiff also asserts an Eighth Amendment claim based on the perceived "sexual innuendo" resulting from Defendant Patterson stating, "come on you can drop it further than that." Plaintiff contends that the statement, in connection with the repeated requests to squat, are sexual harassment in violation of the Eighth Amendment.  "Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alavarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats

and verbal taunts do not violate the Eighth Amendment."); *Ragland v. Romer*, <u>1996 WL 1797</u>, *2 (10th Cir. Jan. 3, 1996), *cert. denied*, <u>518 U.S. 1025</u> (1996) ("Courts have consistently held that acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").  Plaintiff's allegations do not suggest a show of deadly force, thus failing to create "terror of instant and unexpected death."

Even if Plaintiff could show that Patterson's conduct was objectively serious enough to constitute an Eighth Amendment violation, Plaintiff has failed to show that such violation was clearly established in this Circuit.  *See Smith v. Trapp*, No. 14-3220-JAR-JPO, <u>2018 WL 587230</u>, at *5 (D. Kan. Jan. 29, 2018), *reconsideration denied*, No. 14-3220-JAR-JPO, <u>2018 WL 3145429</u> (D. Kan. June 27, 2018) (Plaintiff failed to show that verbal abuse during a strip search without physical contact constituted an Eighth Amendment violation.)

**iii.     Equal Protection**

With respect to Plaintiff's Equal Protection claim, Plaintiff contends that Heimgartner has violated his rights by treating prisoners housed in restrictive housing different than those prisoners housed in restrictive housing at other KDOC facilities.  Essentially, Plaintiff argues that he has been housed at other KDOC facilities at different times.  During those times, Plaintiff was only subjected to a single strip search when he was moved from the restrictive housing unit to the A&D unit before transport. (<u>Doc. 38 at 16</u>.)  Plaintiff argues that by treating prisoners at other facilities differently, Heimgartner, who drafted the policies, has violated his Equal Protection rights.

Heimgartner contends that he is entitled to qualified immunity on this claim as Plaintiff has failed to establish that he has any control over the other KDOC facilities.  While Plaintiff has set forth facts supporting different treatment at other facilities, Plaintiff has failed to allege any facts in his second amended complaint or in his response to Defendants' motion that Heimgartner has

authority in other KDOC facilities.   In the absence of allegations that Heimgartner had any authority over strip search procedures in other KDOC facilities, Heimgartner cannot have violated the Equal Protection clause.  *Leatherwood v. Rios*, 705 F. App'x 735, 738–39 (10th Cir. 2017).

Therefore, Defendants' motion for summary judgment on Plaintiff's Equal Protection claim is granted.

### C.  Heimgartner

Heimgartner moves for summary judgment on the basis that he was not personally involved in the strip searches.

A plaintiff may succeed in a § 1983 suit against a defendant-supervisor by showing the following: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199–1200.   Because the court has determined that Plaintiff's constitutional rights were not violated by the prison's policies allegedly implemented by Heimgartner, Plaintiff cannot establish the last two elements.

Therefore, Heimgartner's motion for summary judgment on the basis of qualified immunity is granted.

### D.  Official Capacity Claims

Defendants move for dismissal of the official capacity claims on the basis that the claims are barred by the Eleventh Amendment.   Claims for monetary damages against a state official in his official capacity are construed as claims against the State and are therefore barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   The remaining claims

against Defendants in their official capacities are dismissed as Plaintiff failed to show a constitutional violation on those claims.

### IV.      Conclusion

Defendants' Motion to Dismiss, or in the alternative motion for summary judgment. (Doc. 25) is GRANTED.

**IT IS SO ORDERED** this 7th day of January, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

24

# United States District Court

------------------------- DISTRICT OF KANSAS----------------------------

DERON MCCOY, JR.,

                     **Plaintiff,**

v.                                       Case No:  17-3139-JWB-KGS

JAMES HEIMGARTNER,
(fnu) GOAD,
(fnu) PATTERSON,
(fnu) CARRELL,
(fnu) RIDDLE,

                     **Defendants,**

## JUDGMENT IN A CIVIL CASE

☐       Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒       Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

Defendants' Motion to Dismiss, or in the alternative motion for summary judgment. (Doc. 25) is

GRANTED.   Heimgartner's motion for summary judgment on the basis of qualified immunity is

granted.  The remaining claims against Defendants in their official capacities are dismissed as

Plaintiff failed to show a constitutional violation on those claims.


  January 7, 2019                          TIMOTHY M. O'BRIEN
           Date                               CLERK OF THE DISTRICT COURT

                                           by:     s/ Joyce Roach            
                                                      Deputy Clerk

36